**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DAWN PIERCE,<br><br>              Plaintiff<br>   v.<br><br>TOWN OF GOLDEN MEADOW, MAYOR<br>JOEY BOUZIGA, POLICE CHIEF MICHELLE<br>LAFONT, and OFFICER TRISTIN GASPARD,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)   Case No.  2:25-cv-2178<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

### I.    INTRODUCTION

1.    This case arises out of the false arrest and imprisonment of Lafourche Parish resident Dawn Pierce. In short: Golden Meadow officials lied to a judge to obtain a warrant to arrest Ms. Pierce for something that was not a crime.

2.    Mrs. Pierce and her husband live just outside Golden Meadow, Louisiana. They have a strained relationship with Mrs. Pierce's nephew, Dylan Rousse, and his fiancée, Amber Sibley, but have loaned them money from time to time.

3.    Despite this generosity, earlier this year, Ms. Sibley chose to antagonize and insult Ms. Pierce on social media.

4.    In turn, Ms. Pierce responded by sharing information and content that Ms. Sibley herself had made public – specifically, lingerie photos that Ms. Sibley had posted on publicly-accessible webpages to advertise Sibley's subscription-based OnlyFans erotic content business.[1]

---

[1] OnlyFans is an online platform "that enables creators, who are largely women, to provide subscription access to pornographic content to users, who are largely men." *In re Cintron,* 265 Md. App. 481 (Ct. App. Md., May 6, 2025)

5.  Sharing Ms. Sibley's publicly-available lingerie photos was not in any way a crime.

6.  However, Mr. Rousse, who worked with Golden Meadow Mayor Joey Bouziga, pressed Mayor Bouziga and Golden Meadow Police Department Chief Michelle Lafont to arrest Mrs. Pierce.

7.  Initially, Chief Lafont declined to arrest Mrs. Pierce because she understood that Mrs. Pierce had not committed any crime. Chief Lafont texted another officer that she "didn't know if there was anything I could charge [Pierce] with."

8.  But Mr. Rousse continued to pressure Mayor Bouziga, and, ultimately, Mayor Bouziga directed Chief Lafont to illegally arrest Mrs. Pierce.

9.  Mayor Bouziga and Chief Lafont conspired to charge Mrs. Pierce with a felony she did not commit.

10.  Chief Lafont submitted false statements under oath to obtain a warrant to arrest Mrs. Pierce for conduct that was not criminal.

11.  In front of her young children, Defendants arrested Mrs. Pierce for a crime she did not commit and then falsely imprisoned her.

12.  Mrs. Pierce seeks accountability for these violations of her constitutional rights, including her First Amendment and Fourth Amendment rights.

13.  Mrs. Pierce's complaint also raises state law claims of assault, battery, false imprisonment, abuse of process, intentional and negligent infliction of emotional distress, as well as state constitutional claims.

## II.    JURISDICTION

14.     Plaintiff's claims arise under the laws of the United States and Louisiana. This Court has jurisdiction over Plaintiff's claims of federal rights violations. This Court has supplemental jurisdiction over Plaintiff's Louisiana state law claims in accordance with 28 U.S.C. § 1367.

15.     The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Lafourche Parish, situated in the Eastern District of Louisiana.

## III.    THE PARTIES

16.     Plaintiff **DAWN PIERCE** is of suitable age and capacity to file this suit. At all relevant time during this suit, she was a resident of Lafourche Parish in the Eastern District of Louisiana.

17.     Defendant **TOWN OF GOLDEN MEADOW** is a political subdivision of the State of Louisiana. It operates the Golden Meadow Police Department, a law enforcement agency operating in the Eastern District of Louisiana which employed and controlled the Officer-Defendants in this case. The Town of Golden Meadow, through the Golden Meadow Police Department, also created, instituted, and oversaw enforcing the policies and procedures at issue in this case.

18.     Defendant **MAYOR JOEY BOUZIGA**, who upon information and belief, is an individual of the age of majority, a resident of Lafourche Parish and a citizen of the State of Louisiana. He is sued in both his individual and official capacities.

19.     Defendant **POLICE CHIEF MICHELLE LAFONT**, who upon information and belief, is an individual of the age of majority, a resident of Lafourche Parish and a citizen of the State of Louisiana. She is sued in both her individual and official capacities. In her official capacity, Chief Lafont is the decision maker and highest authority as Chief of the Golden Meadow Police Department.

20.     Chief Lafont is the chief policymaker for the Golden Meadow Police Department.

21.     Defendant **OFFICER TRISTIN GASPARD,** who upon information and belief, is an individual of the age of majority, a resident of Lafourche and a citizen of the State of Louisiana. He is sued in both his individual and official capacities.

22.     Defendants **XYZ INSURANCE COMPANIES 1-10** are not-yet-identified insurance companies that hold policies that cover any or all of the co-Defendants for their actions alleged herein.

## IV.    FACTS

23.     Plaintiff Dawn Pierce lives in Larose, Louisiana.

24.     Mrs. Pierce has a rocky relationship with her nephew Dylan Rousse and his fiancée Amber Sibley, who live in Golden Meadow.

25.     Mrs. Pierce and her husband care for Mr. Rousse and his child, and have loaned them money at times.

26.     But they also have had conflict with Mr. Rousse and Ms. Sibley.

### A.  The Unlawful Arrest and Imprisonment of Mrs. Pierce.

27.     In early 2025, Mrs. Pierce and Ms. Sibley exchanged a series of unpleasant posts on Facebook.

28.     Ms. Sibley called Mrs. Pierce "nasty and evil" and "childish."

4

29.    Mrs. Pierce said unpleasant things back.

30.    Mrs. Pierce was particularly offended when Ms. Sibley called Mrs. Pierce's aunt a "hag."

31.    A friend of Mrs. Pierce's approached her and showed her photos that Ms. Sibley had posted publicly online.

32.    The screenshots depicted Ms. Sibley in lingerie on the publicly-available parts of Twitter and OnlyFans, inviting people to subscribe to see more risqué photos.

33.    The lingerie in the photos is not see-through.

34.    It is clear that the photos depict publicly-available content because they say "SUBSCRIBE TO SEE USER'S POSTS" – indicating that what is visible is not behind a paywall.

35.    Mrs. Pierce thought these photos were contrary to the way Ms. Sibley presented herself on Facebook, and so she checked online to see that they were publicly available.

36.    After Mrs. Pierce did that, she shared the publicly-available photos on Facebook, with a caption: "Just wanting to help out her business so she doesn't call anyone begging for money anymore. How disgusting and you claim to be a Christian! This just so happened to fall in my lap. Be careful who you spread lies about karma is a bitch!"

37.    Mr. Rousse became angry, and he asked Mrs. Pierce to take down the photos.

38.    When Mrs. Pierce declined, Mr. Rousse texted that it was a "felony charge" and that "you have something coming your way."

39.    On July 8, 2025, Mr. Rousse texted that he "already talked to joey:"

i already talked to joey

40.    Mrs. Pierce understood the reference to "joey" to mean Golden Meadow Mayor Joey Bouziga, who Mr. Rousse worked with at Edison Chouest Offshore.

41.    Mr. Rousse also exchanged texts with Mrs. Pierce's husband Louis.

42.    Mr. Rousse told Louis that Mrs. Pierce should "leave [the photos] up" because the Facebook posts were "only bringing us more money [right now]" and "trust me your wife did enough for my pockets today":

 

43.    Most relevant to the subject Complaint, Mr. Rousse told Louis that he'd "been talking to joey we got something cooking":



44. Some of Mr. Rousse's text messages indicated that he believed that if Mrs. Pierce were arrested, her children could no longer go to private school because she would not be able to pick them up.

45. Also on July 8, 2025, Mr. Rousse called the Golden Meadow police.

46. Mr. Rousse told the police that Ms. Sibley had an Only Fans page, and someone "took screen shots of her pic/page and posted it online on a social media platform."

47. The dispatcher contacted Chief Michelle Lafont of the Golden Meadow Police Department, who "advised she is handling this and the male caller needs to give her a chance to get with [detective] to find out if charges can be pressed."

48. A few hours later, Mr. Rousse called the police again and said that the "Mayor of [Golden Meadow] told him to call it in to LPSO to handle because the person sharing lives outside of the town."

49. Chief Lafont reviewed the post made by Mrs. Pierce, including the publicly-available photos.

50. Chief Lafont had correctly concluded that she didn't know of anything she could charge Mrs. Pierce with – because what Mrs. Pierce had done was not a crime.

51. Chief Lafont told that to Mr. Rousse.

52. Chief Lafont also texted GMPD Officer Tristin Gaspard that "I didn't know if there was anything I could charge [Pierce] with."

53.    However, Mr. Rousse refused to accept this and he again called Mayor Bouziga. This is reflected in the Chief's text messages with Officer Tristin Gaspard:



8

54.    At 2:47pm on July 8, 2025, someone texted Chief Lafont about the situation. Chief Lafont responded that "I'm dealing with this and told her I was. This woman needs to chill."

Tue, Jul 8 at 2:47 PM

Dawn Friel is posted nudes on Facebook of her godson Dylan Rousse's fiancé from her only fans page because she is mad at them. I transferred him to dispatch because Dawn doesn't live in town but Dylan and the fiance live at 1703 N Bayou Dr. he is offshore but the fiance is home. Young family members (minors) on Facebook are seeing all of it. And of course all friends and family.

I'm dealing with this and told her I was. This woman needs to chill.

That was Dylan that called

Yeah. I just talked to her again.

55.    At 3:00pm, Mr. Rousse texted Mayor Bouziga and told him that he had spoken to Chief Lafont.

56.    But Mr. Rousse wasn't satisfied: he told Mayor Bouziga he wanted to know "what can be done faster."

57.    Upon information and belief, Mayor Bouziga's intervened and directed Chief Lafont to take action.

58.    Chief Lafont obtained a warrant and directed Officer Tristin Gaspard to arrest Mrs. Pierce.

59.    However, Mrs. Pierce did not live within Golden Meadow Police Department's jurisdiction.

60.    So Chief Lafont called Lafouche Parish Sheriff's Office and had them send a deputy to provide cover for an out-of-jurisdiction arrest.

61.    A little after 8:00 p.m., Officer Gaspard and LPSO Sgt. Michael Kreamer arrested Dawn at her home, in front of her children.

62.    Later, Chief Lafont and Officer Gaspard continued to joke about the arrest, noting that the situation was "ridiculous."



it's never ending

OMGGGGG!!!!

It's going to be the complaint that will last forever!!! This is ridiculous!!!!

63.    Mrs. Pierce was released that evening, but only after a $10,000 bond was paid.

64.    On August 4, 2025, the district attorney declined all charges.

65.    This arrest and imprisonment was enormously distressing to Mrs. Pierce.

66.    Mrs. Pierce had no criminal history and had never been arrested before.

67.    Mrs. Pierce's teenage child could hardly sleep for some time, worried about the police coming back.

68.    Mrs. Pierce has a remote work job. Job opportunities have come up that Mrs. Pierce has not applied for, because she knows that they will do background check and she now has a criminal arrest on her record.

69.    The stress from this event took a toll on Mrs. Pierce's physical health as well.

10

70.    Mrs. Pierce is a diabetic, and after the arrest her A1C went from 8.4 to 11.6, requiring her to now take daily insulin injections.

71.    The day she went to court, Mrs. Pierce's continuous glucose monitor showed that her blood sugar spiked to 400 – an indication of her stress.

**B. The Municipal Policies and Practices of the Town of Golden Meadow and The Golden Meadow Police Department Caused the Violations of Plaintiff Dawn Pierce's Constitutional Rights.**

72.    Chief Lafont had Mrs. Pierce arrested for an alleged violation of R.S. 14:283.2, which criminalizes the "nonconsensual disclosure of a private image."

73.    This felony statute is purposefully narrow.

74.    For the sharing of an image to violate R.S. 14:283.2, a set of mandatory criteria must be met, including:

1)    The image must show a person "either whose intimate parts are exposed in whole or in part or who is engaged in sexual conduct."

2)    The image must have been obtained "through unauthorized access or under circumstances in which a reasonable person would know or understand that the image        was        to        remain        private."

75.    Intimate parts are defined as the "fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, or anus," or nipples for a woman.

76.    Sexual conduct is defined as "actual or simulated vaginal, anal, or oral sexual intercourse; deviant sexual intercourse; sexual bestiality; masturbation; sadomasochistic abuse; or exhibition of the genitals."

77.     To prevail on a 42 U.S.C. 1983 false arrest claim, a plaintiff must show that the arresting officers "did not have probable cause to arrest" the person.[2]

78.     False arrest is decided on an objective standard; it is not necessary for defendants to be subjectively aware that an arrest is unconstitutional to be liable.[3]

79.     Here, the photos of Ms. Sibley did not even remotely meet the mandatory requirements of R.S. 14:283.2. First, because they do not depict "intimate parts" or "sexual conduct."

80.     Although they are lingerie photos, none of the photos shows any of Ms. Sibley's fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, anus, or nipples. Nor does any photo show any sexual conduct as defined by the statute.

81.     Also, the photos were obviously not private.

82.     The photos say "SUBSCRIBE TO SEE USER'S POSTS" which indicates that they were not private intimate photos, but rather *advertisements* for Ms. Sibley's commercial enterprise of selling photos and videos.

83.     Even taking Chief Lafont's police report at its word shows that *she knew* the pictures did not meet the statutory criteria.

84.     In her report, Chief Lafont quoted the text of RS 14:283.2 (2), limiting criminal liability to a "person who discloses the image obtained it through unauthorized access or under

---

[2] *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see also Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (internal quotation marks omitted) ("The constitutional tort of false arrest ... require[s] a showing of no probable cause.").

[3] *Whren v. United States*, 517 U.S. 806 (1996). *See also Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir.) (in determining whether there was probable cause to arrest, courts consider the "facts within the officer's knowledge-- not whether the officer was aware of the legal consequences of the facts."), *cert. denied*, 131 S. Ct. 507 (2010); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1060 (8th Cir. 2013) ("... the existence of probable cause or arguable probable cause depends on the viewpoint of an objectively reasonable officer, not on the viewpoint of the particular arresting officer.")

circumstances in which a reasonable person would know or understand that the image was to remain private."

85. Chief Lafont then wrote "After reading the law and finding that the OnlyFans page is a subscribe account and the pictures were obtained from someone who had an account that is private we felt the charge was appropriate for Ms. Pierce's actions."

86. But if under her theory, the "pictures were obtained from someone who had an account" that would show that they were not obtained through "unauthorized access" – they were obtained through an authorized user. And the reference to a OnlyFans page and a "subscribe account" shows that Lafont understood that these were photos that Ms. Sibley was selling online – indicating that they were not intended to be private.

87. What Ms. Pierce did was not illegal, and Chief Lafont knew it. That's why she initially told Mr. Rousse and Officer Gaspard that "I didn't know if there was anything I could charge her with."

88. But Chief Lafont arrested Mrs. Pierce nonetheless.

89. Chief Lafont perpetrated a false arrest because the images Mrs. Pierce posted did not meet the statutory criteria for R.S. 14:283.2.

90. Additionally, Chief Lafont engaged in perjury to obtain a warrant for Mrs. Pierce's arrest.

91. To obtain a warrant, Chief Lafont executed an affidavit under penalty of perjury. The affidavit contained multiple falsehoods.

92. First, the affidavit says that "at 1243 hours, I, Chief Michelle Lafont received a complaint from Amber Silbey."

13

93.     That is false – 1243 was the time that Amber spoke to dispatcher Ben Constant, not Ms. Sibley.

94.     Second, and more significantly, Chief Lafont swore that the pictures were "private images."

95.     But they were not: the photos said "SUBSCRIBE TO SEE USER'S POSTS" indicating that they were not private – but the Chief withheld that information from Judge Robichaux.

96.     And third, Chief Lafont swore under oath that the photos show Ms. Sibley in "see through negligees" and "see through underwear."

97.     But that is false: none of the photos show Ms. Sibley's nipples, genitalia, or pubic hair in any way, indicating that the clothing was not "see through."

98.     Based on these material falsehoods, Chief Lafont obtained the arrest warrant.

99.     Golden Meadow has a documented problem with its chiefs of police.

100.    Chief Lafont's predecessor Chief Dufrene has been arrested for the destruction of public records. Dufrene's predecessor Chief Pitre had to resign after it was discovered that he assaulted a citizen, lied about it, and then committed perjury.

101.    Now it appears that Golden Meadow's third police chief in a row has engaged in serious crimes and or constitutional violations.

## V.      CLAIMS FOR RELIEF

### *First Cause of Action -* **Violation of the First Amendment**
### *Against All Defendants*

102.    Ms. Pierce incorporates the allegations in each preceding and following paragraph.

103.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. Amend I.  The First Amendment has applied to states

14

and state actors by the Fourteenth Amendment and 42 U.S.C. § 1983.

104. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).

105. Mrs. Pierce sought to exercise her fundamental constitutional right to speak by sharing information and content on her own social media page that Ms. Sibley herself had publicly disseminated online.

106. The information and content re-shared by Ms. Pierce was not in violation of any law.

107. As a result, the Court should rule that Defendants actions violated the Plaintiff's First Amendment rights.

108. Defendants' arrest and imprisonment of Mrs. Pierce was intended to deter and chill her exercise of First Amendment Rights.

109. As a direct and proximate result of Defendants' actions, Mrs. Pierce's First Amendment exercise was chilled.

### *Second Cause of Action* - **False Arrest and Imprisonment** ### *Against All Defendants*

110. Plaintiff incorporates the allegations in each preceding and following paragraph.

111. Mrs. Pierce was arrested without probable cause or due process of law.

112. The Affidavit of Probable Cause signed by Chief Lafont was perjured and fabricated.

113. Mayor Bouziga caused a false arrest when he instructed Chief Lafont to arrest Dawn Pierce for an alleged violation of felony statute R.S. 14:283.2, which criminalizes the "nonconsensual disclosure of a private image."

114.   Chief Lafont caused a false arrest when she acted on Mayor Bouziga's illegal order by lying under oath on a warrant application to obtain a warrant for Mrs. Pierce's arrest.

115.   Officer Gaspard caused a false arrest when he carried out Mayor Bouziga and Chief Lafont's illegal order to arrest Mrs. Pierce.

116.   It is true that a neutral magistrate signed a warrant for Dawn Pierce's arrest. However, "[t]he fact that a neutral magistrate issues a warrant is *not* dispositive of whether an officer's underlying actions were objectively reasonable." *Winfrey v. San Jacinto Cnty.*, 481 Fed. App'x 969, 978 (5th Cir. 2012) (emphasis added); see also *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) ("[T]he fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into [an officer's] objective reasonableness."). "Qualified immunity will not attach if a 'reasonably well-trained officer in the officer's position would have known that his affidavit failed to establish probable cause.'" *Winfrey*, 481 Fed. App'x at 978 (*quoting Malley v. Briggs*, 475 U.S. 335, 345 (1986)); *see also Messerschmidt*, 565 U.S. at 547 (*quoting Malley*, 475 U.S. at 341) (observing that a warrant will not shield an officer from suit where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue"). *See also Anderson v. Sheriff Larpenter*, 16-cv-13733-LMA-JVM, p.26 (E.D. La. July 19, 2017).

117.   Here, the warrant does not immunize Defendants from liability because Chief Lafont made material misstatements to obtain the warrant, and also because no reasonably competent officer would have sought the warrant because Ms. Pierce's actions did not meet the statutory criteria.

16

### *Third Cause of Action* - Violation of Fourth Amendment Rights to be Free from Unlawful Search and Seizure
### *Against All Defendants*

118.    Plaintiff incorporates the allegations in each preceding and following paragraph.

119.    Plaintiff has a right under the Fourth Amendment to be free from unreasonable searches and seizures.

120.    Defendants violated these rights when they arrested Ms. Pierce, detained her, and used force on her without probable cause.

121.    Mayor Bouziga caused an illegal seizure when he caused the Golden Meadow Police Department to seize Mrs. Pierce for a felony crime she did not commit.

122.    Chief Lafont caused an illegal seizure when she acted on Mayor Bouziga's illegal order and made false statements under oath to obtain a warrant for Mrs. Pierce's arrest.

123.    Officer Gaspard caused an illegal seizure when he carried out Mayor Bouziga and Chief Lafont's illegal order.

124.    This was an illegal seizure because the arrest had no probable cause and Mrs. Pierce committed no crime.

125.    Defendants engaged in these actions willfully and knowingly, acting with deliberate indifference to Plaintiff's Fourth Amendment Rights.

### *Fourth Cause of Action* - Civil Conspiracy to Violate Civil Rights
### *Against All Individual Defendants*

126.    Plaintiff incorporates the allegations in each preceding and following paragraph.

127.    Each of the individual Defendants, acting in concert with one another and other yet-unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

17

128.    Each of the individual Defendants took concrete steps to enter into an agreement in on July 8, 2025 to unlawfully detain, arrest, and imprison the Mrs. Pierce, knowing they lacked probable cause to do so, and for the purpose of impeding Ms. Pierce from exercising her First Amendment right.

129.    In furtherance of this conspiracy, each of the Defendants committed specific overt acts, misusing their police powers for the purpose of unlawfully silencing the Mrs. Pierce. They accomplished this goal by using force to unlawfully effect the arrest of Ms. Pierce, fabricating evidence against Ms. Pierce, and approving trumped up charges against her, which resulted in her unlawful imprisonment.

130.    In the implementation of the conspiracy, the officers led by Defendant Chief Michelle Lafont and at the direction of Defendant Mayor Joey Bouziga employed the customs and policies set forth above.

131.    As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered damages, including pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

132.     Each individual Defendant is therefore liable for the violation of Plaintiff's rights by any other individual Defendant.

### *Fifth Cause of Action* – **Municipal Liability for Police Misconduct (***Monell*** Claim)** *Against Defendant Town of Golden Meadow*

133.    Plaintiff incorporates the allegations in each preceding and following paragraph.

134.    To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy."[4]

---

[4] *See Monell,* 436 U.S. at 691.

18

A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[5]

135.    *Monell* is generally invoked because there is no *respondeat superior* liability in a Section 1983 claim. The *Monell* doctrine, however, allows for municipal liability for the actions of subordinates when there is a pattern or practice of conduct so widespread as to constitute the de facto policy of the city.

136.    A plaintiff can establish *Monell* liability for constitutional violations by showing any of at least eight different things:

> i.    An express policy;[6]
> ii.    A violation by the final policymaker herself;[7]
> iii.    Deficient hiring practices;[8]
> iv.    Deficient retention practices;[9]
> v.    Deficient supervision and discipline;[10]
> vi.    Deficient training;[11]
> vii.    A pattern of misconduct;[12] or
> viii.    Ratification by the final policymaker.[13]

137.    But where the final policymaker *themself* violated a plaintiff's constitutional right, the *Monell* claim is established. *See, e.g., Anderson v. Larpenter*, 2017 WL 3064805 (E.D. La. July

---

[5] *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002).
[6] *Monell*, 436 U.S. at 660–61.
[7] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).
[8] The government entity's will be liable when its failure to screen, train, or supervise its employees is inadequate to the point that it is "likely to result in the violation of constitutional rights, [such] that the policymaker … can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021).
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).
[13] *Allen v. Hays*, 21-20337 (5th Cir. 2023) at *15.

19, 2017) (*Monell* established where "the action of the policymaker itself violated a constitutional right"), *citing Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) ("Where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right," the "'official policy' requirement" is met.)

138.    Thus, "a plaintiff may establish a custom or policy based on a single isolated decision made in the context of a particular situation if the decision was made by an authorized policy maker in whom final authority rested regarding the action ordered."[14]

139.    That is the case here. Joey Bouziga, in his official capacity as Mayor of Golden Meadow, and Michelle Lafont, in her official capacity as Chief of the Golden Meadow Police Department, were municipal policymakers, and were the final policymakers with regard to enforcement of the law. Thus, there is no need to resort to "de facto" final policymaking authority.[15]

140.    Municipal liability under § 1983 attached to Mayor Bouziga's deliberate choice to direct Chief Lafont to arrest Mrs. Pierce under an inapplicable felony statute, even after Chief Lafont had determined that Mrs. Pierce's actions were not criminal.

141.     Municipal liability under § 1983 attached to Chief Lafont's deliberate choice to lie under oath by submitting false statements in a warrant application to obtain a warrant to arrest Mrs. Pierce under the inapplicable felony statute, and to Chief Lafont's deliberate choice to order Officer Gaspard to make a false arrest using the warrant she obtained through perjury.

142.    Defendants had a range of alternative options. They could have simply refused Mr.

---

[14] *Victoria W. v. Larpenter,* 205 F.Supp.2d 580 (E.D. La. 2002); *see also Brown v. Bryan County, Oklahoma*, 67 F.3d 1174, 1183 (5th Cir.1995); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25, 108 S.Ct. 915 (1988). This is true even if a policy to the contrary already exists. *Gonzalez v. Ysleta Independent School District*, 996 F.2d 745, 754 (5th Cir.1993).
[15] *See Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 616 n. 2 (5th Cir.1999) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Rousse's request to arrest Mrs. Pierce, as Chief Lafont did initially. They could have acknowledged that Mrs. Pierce did not violate the law, but offered to have themselves or Officer Gaspard meet and mediate with her privately as part of their duty to keep the peace. Instead, these final policymakers chose the most extreme, outrageous, and unlawful action – to falsely arrest and imprison Mrs. Pierce.

143.    Defendants' decisions were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

144.    Defendants named in this Count, acting individually and together, under color of law, acted to violate Plaintiff's rights as set forth in the preceding claims.

145.    Policymaker Defendants had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 U.S.C. § 1983.

146.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiff's First and Fourth Amendment rights, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

147.    Moreover, the actions of all Defendants were directed, condoned, and/or ratified by Policymaker Defendants.

### *Sixth Cause of Action* - **Violation of the Louisiana Constitution**
### *Against All Defendants*

148.    Plaintiff incorporates the allegations in each preceding and following paragraph.

149.    Defendants' actions in conducting and causing the seizing, detaining, and arresting Plaintiff as described above interfered with her exercise of fundamental rights as guaranteed by Article 1, §7 of Louisiana's Constitution.

*Seventh Cause of Action –* **State Torts of Assault and Battery**
*Against all Defendants*

150.   Plaintiff incorporates and reassert the allegations in each preceding and following paragraphs of this Complaint.

151.   Defendant Gaspard attempted by an intentional act, or by a show of force or violence, to cause an offensive or harmful physical contact with Ms. Pierce when he arrested her in front of her children, placed her in handcuffs, and forced her into a police vehicle.

152.   Ms. Pierce was placed in reasonable apprehension of an imminent threat of physical injury.

153.   Defendant Gaspard had the present ability to cause the offensive or harmful contact with Ms. Pierce.

154.   Defendants Gaspard committed a battery when he unlawfully arrested Ms. Pierce, grabbing her arms, handcuffing her wrists, and pushing her into a police vehicle.

155.   Ms. Pierce was injured as a result of this assault and battery, which occurred in front of her children.

156.   Defendant Gaspard's assault and battery of Ms. Pierce was made possible by the authority of the position he held as an officer with the Golden Meadow Police Department.

*Eighth Cause of Action –* **State Torts of Negligence**
**and Negligent Infliction of Emotional Distress**
*Against all Defendants*

157.   Plaintiff incorporates and reasserts the allegations in each preceding and following paragraphs of this Complaint.

158.   Under duty-risk analysis for determining liability, a plaintiff must prove (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of

22

care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

159. Defendants' actions were the cause-in-fact of Ms. Pierce's injury and emotional distress, and the risk of injuring Ms. Pierce was within the scope of duty that was breached by Defendants' violation of Ms. Pierce's constitutional rights.

160. Police officers owe the public the duty of maintaining peace and order, preventing and detecting crime, and enforcing laws. *Zeagler v. Town of Jena,* 556 So.2d 978 (La. App. 3 Cir.).

161. Defendants Bouziga, Lafont, and the Town of Golden Meadows assumed a particular duty to take care with regard to their investigation of allegations made by Mr. Rousse against Plaintiff.

162. Defendants breached the duty owed to Ms. Pierce by fabricating evidence to obtain an arrest warrant, and violating her constitutional rights by unlawfully detaining, arresting, and imprisoning her.

163. No officer intervened or attempted to stop the breach of duty.

164. The Town of Golden Meadow is vicariously liable for the acts of Defendant Gaspard and all employees involved in the unlawful arrest and imprisonment of Ms. Pierce.

165. Defendants' conduct was extreme and outrageous; knowing that the emotional distress suffered by Plaintiff Dawn Pierce was severe and ongoing; and Defendants desired or acted with recklessness to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

166. Defendants' decision to obtain an arrest warrant through perjury and fabricated evidence was substantially certain to result in harm.

167.    Defendants' actions were the cause-in-fact of Plaintiff Dawn Pierce's injuries.

### *Ninth Cause of Action* – **State Tort of Intentional Infliction of Emotional Distress**
### *Against all Defendants*

168.    Plaintiff incorporates and reassert the allegations in each preceding and following paragraphs of this Complaint.

169.    In abusing their positions of power as Mayor and Police Chief of the Town of Golden Meadow to have Ms. Pierce unlawfully arrested and imprisoned, Defendants Bouziga and Lafont desired to inflict severe emotional distress, or were substantially certain that severe emotional distress would occur.

170.    In making an arrest he knew to be unlawful, Defendant Gaspard desired to inflict severe emotional distress, or was substantially certain that severe emotional distress would occur.

171.    Defendants' conduct was extreme and outrageous behavior beyond the toleration of reasonable members of society.

172.    Defendants' actions caused and continue to cause Ms. Pierce severe emotional distress.

173.    Defendant Bouziga and Lafont's infliction of emotional distress on Ms. Pierce was made possible by their position of authority as the Mayor and Police of the Town of Golden Meadow.

174.    Defendant Gaspard's infliction of emotional distress on Ms. Pierce was made possible the authority of the position he held as an officer with the Town of Golden Meadow.

### *Tenth Cause of Action* – **State Tort of False Imprisonment**
### *Against all Defendants*

175.    Plaintiff incorporates and reasserts the allegations in each preceding and following paragraphs of this Complaint.

176.    Defendants intended to confine Plaintiff Dawn Pierce, or were substantially certain should would be confined, when they directed, ordered, and executed her arrest.

177.    Defendant Gaspard intended to confine Mrs. Pierce or was substantially certain Ms. Pierce would be confined when he handcuffed her and locked her inside his law enforcement vehicle.

178.    Defendant Gaspard locked the doors of his law enforcement vehicle for the purpose of confining Mrs. Pierce inside and transporting her to the jail.

179.    Defendants intended to confine Mrs. Pierce, or were substantially certain Mrs. Pierce would be confined when they directed, ordered, and transported her to the jail.

180.    Mrs. Pierce had no reasonable means of escape from the locked law enforcement vehicle or from the jail.

181.    Defendant Bouziga and Lafont's false imprisonment of Ms. Pierce was made possible by their position of authority as the Mayor and Police of the Town of Golden Meadow.

182.    Defendant Gaspard's false imprisonment of Ms. Pierce was made possible the authority of the position he held as an officer with the Town of Golden Meadow.

### *Eleventh Cause of Action* – State Tort of Abuse of Process
*Against Chief Lafont and Mayor Bouziga*

183.    "The requirements for abuse of process and for malicious prosecution are distinguishable and distinguished." *Succession of Cutrer v. Curtis*, 341 So.2d 1209 (La.App. 1 Cir.1976).

184.    An abuse of process claim has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *Waguespack, Seago and Charmichael v. Lincoln*, 99–2016 (La.App. 1 Cir. 9/22/00), 768 So.2d 287, 290–91.

185.    Ulterior motive is presumed when there is a finding of an irregular use of process. *See Weldon v. Republic Bank,* 414 So.2d 1361 (La.App. 2nd Cir.1982).

186.    Mayor Joey Bougziga committed an abuse of process when he knowingly transmitted an order to Police Chief Lafont to seek a warrant using an inapplicable criminal code article to arrest Mrs. Pierce.

187.    Police Chief Lafont committed an abuse of process when she knowingly lied under oath by making false statements in the warrant application to have Plaintiff Dawn Pierce arrested.

188.    Basing a probable cause affidavit on false information is abuse of process.

*Twelfth Cause of Action* – **Vicarious Liability**
*Against Defendant Town of Golden Meadow*

189.    Plaintiff incorporates and reasserts the allegations in each preceding and following paragraphs of this Complaint.

190.    Under Louisiana Civil Code article 2320, employers are liable for damages caused by their employees who are "in the exercise of the functions in which they are employed."

191.    An employee acts within the scope of their employment when their conduct is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests."[16]

192.    At all times relevant to this Complaint, Officer Gaspard, and employees of the jail were acting within the scope of their employment with the Town of Golden Meadow or the Town of Golden Meadow Police Department.

193.    The investigation of crimes, and arrest and imprisonment of individuals falls within

---

[16] *LeBrane v. Lewis*, 292 So.2d 216 (La.1974).

the scope of employment as it is a function specifically within the scope of employment and in furtherance of the Town of Golden Meadow and Golden Meadow Police Department's goals.

194. All Supervisor-Defendants and the Town of Golden Meadow are liable to Plaintiff Dawn Pierce for the constitutional violations as well as the negligent and intentional acts and omissions of those under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.

### *Thirteenth Cause of Action* – **Indemnity**
### *Against the Town of Golden Meadow*

195. Plaintiff incorporates and reasserts the allegations in each preceding and following paragraphs of this Complaint.

196. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

197. The Town of Golden Meadow operates the Golden Meadow Police Department, a law enforcement agency which employed and controlled the Officer-Defendants in this case, and was responsible for the hiring, training, and discipline of the officers.

198. While committing the misconduct alleged herein, some Defendants were employees, members, and agents of the Town of Golden Meadow within the scope of their employment.

199. The Town of Golden Meadow is therefore obligated by Louisiana statute to pay any judgment entered against their employees, Officer-Defendants and Supervisor-Defendants.

## VI.    RELIEF REQUESTED

Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

a.  Declaratory relief;

b.  Judgment against Defendants for Plaintiff's asserted causes of action;

c.  Award of compensatory damages;

d.  Award of special damages;

e.  Award costs and attorney's fees;

f.  Interest;

g.  Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Hope Phelps*
**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 500-7974
Email: hopeaphelps@outlook.com
***Counsel for Plaintiff, Dawn Pierce***

28