UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAWN PIERCE, <br><br> Plaintiff <br> v. <br><br> TOWN OF GOLDEN MEADOW, et al. <br><br> Defendants. | Case No. 25-cv-02178-WJC-DPC |

**Memorandum in Support of Motion to Compel Compliance with Subpoena**

In this false arrest case, Plaintiff served subpoenas for records on two third-party witnesses: Dylan Rousse and Amber Sibley. Those two witnesses are central to Plaintiff's claims, as they were the people who contacted the Golden Meadow police and mayor to precipitate Plaintiff's arrest.

In meeting and conferring, both Mr. Rousse and Ms. Sibley agreed to provide all but one category of documents requested by the subpoenas. But despite receiving two extensions of time, neither Mr. Rousse nor Ms. Sibley provided any responsive documents at all.

Plaintiff filed a motion to compel. The Court denied the motion to compel because the subpoenas called for production to an email address, rather than a physical address. R. Doc. 11 at pg. 3. The Court noted that "Plaintiff may, of course, re-issue valid subpoenas to obtain relevant information and seek enforcement of the valid subpoenas should the recipients fail to comply." *Id.*

Plaintiff re-issued the subpoenas calling for production to a physical address. Mr. Rousse and Ms. Sibley still did not produce any responsive documents. Accordingly, Plaintiff moves to compel.

**A.    Factual and Procedural Background**

This case is about the false arrest and imprisonment Plaintiff Dawn Pierce. The background is that she has long had a rocky relationship with her nephew Dylan Rousse and his fiancée Amber

1

Sibley. R. Doc. 1 at ¶ 2. After an argument, Ms. Pierce shared on Facebook a set of publicly-available lingerie photos of Ms. Sibley, which Ms. Sibley herself had posted online in an effort to advertise her OnlyFans business. *Id.* at ¶ 4. Ms. Pierce shared the publicly-available photos to show the discrepancy between the way Ms. Sibley described herself and the reality.

Mr. Rousse and Ms. Sibley responded by asking the Mayor and Police Chief of Golden Meadow to arrest Ms. Pierce. *Id.* at ¶¶ 6-8. Initially, the police chief was reluctant to execute the arrest, texting that she did not "know if there was anything I could charge [Ms. Pierce] with." *Id.* at ¶ 7. After pressure from the mayor, however, the chief relented. The chief then provided false information to a judge to obtain a warrant for Ms. Pierce's arrest for "nonconsensual disclosure of a private image," even though (1) the images were public, not private; (2) the images would not meet the statutory criteria even if they were private, and (3) Ms. Pierce did not live in Golden Meadow. *Id.* at ¶¶ 72-101. Ms. Pierce was arrested and imprisoned shortly thereafter. The District Attorney refused all charges.

On October 22, 2025, Ms. Pierce filed suit against the Town of Golden Meadow and its officials. R. Doc. 1. On November 21, 2025, the parties held a Fed. R. Civ. Proc. 26(f) conference, opening discovery.

B.  **Plaintiff's Subpoenas and Efforts to Meet-and-Confer**

On November 24, 2025, Plaintiff propounded subpoenas on Mr. Rousse and Ms. Sibley. R. Docs. 7-2, 7-3. A process server personally served the subpoenas on November 30, 2025. R. Doc. 7-4. December 23, 2025 was the return date for the subpoenas. R. Docs. 7-2, 7-3. The subpoenas requested:

- All emails, text messages, Facebook messages, Twitter DMs, or other forms of social media communication or other forms of written communication with Michelle Lafont, Joey Bouziga, Michael Kreamer, and/or Tristin Gaspard from

2

December 1, 2024 to the present.

- All documents reflecting income or payments from OnlyFans.

- All emails, text messages, Facebook messages, Twitter DMs, or other forms of social media communication or other written communication containing any of the following non-case sensitive search terms: "got something cooking", "onlyfans", "dawn", "pierce", "friel", "arrest", "images", "bond", "joey", "bouziga", "mayor", "lafont", "private image". For any responsive text messages, provide the entire text thread that day: *i.e.*, all text messages in that chain from that day.

- All cellphone or other call history from January 7 to 10, 2025.

R. Docs. 7-2, 7-3.

On December 8, 2025, Mr. Rousse responded by email. He provided only a single screenshot of text messages that were not responsive to the subpoena, claimed to not possess other documents that "relate to the case" because they had changed their phone numbers, and refused to provide the requested OnlyFans documents. R. Doc. 7-5 at 5-6.[1] Ms. Sibley did not respond at all.

Plaintiff's counsel responded with a meet-and-confer email, explaining the requirements of the subpoena and that Mr. Rousse and Ms. Sibley might have to contact their phone providers if they changed phone numbers. *Id.* at 4-5.

When Mr. Rousse did not respond, Plaintiff's counsel sent another email on December 23, 2025, expressing the intent to file a motion to compel. *Id.* at 4. Shortly thereafter, Mr. Rousse provided his phone number. Plaintiff's counsel met and conferred with both Mr. Rousse and Ms. Sibley by telephone. R. Doc. 7-7 at ¶ 4. They agreed to provide all the subpoenaed documents, other than the OnlyFans documents, and agreed to obtain the documents from their phone

---

[1] In the email, Mr. Rousse referred to having "spoken to our lawyer." But he never provided any information about that lawyer, and in a subsequent phone call he confirmed that they are not represented by counsel in this matter. R. Doc. 7-7 at ¶ 4.

3

provider if necessary. R. Doc. 7-7 at ¶ 4, Ex. E at 1. Plaintiff's counsel agreed to a one-week extension of the deadline. *Id.* Mr. Rousse responded with one image – a screenshot of Ms. Sibley's Twitter bio, with red scribbling on it. R. Doc. 7-6 at 1. This screenshot was not responsive to the subpoena.

On December 31, 2025, Plaintiff's counsel wrote: "You told me that you would provide any requested documents you have access to, other than the OnlyFans documents, by yesterday. You did not send me any of them. We consider all objections to be waived. Please provide all the documents by Monday to avoid court intervention." R. Doc. 7-5 at 1. Neither Mr. Rousse nor Ms. Sibley responded.

On January 6, 2026, Plaintiff filed a motion to compel. R. Doc. 7. On January 21, 2026, the Court denied the motion to compel because the subpoenas called for production to an email address, rather than a physical address. R. Doc. 11 at pg. 3. The Court noted that "Plaintiff may, of course, re-issue valid subpoenas to obtain relevant information and seek enforcement of the valid subpoenas should the recipients fail to comply." *Id.*

On February 4, 2026, Plaintiff's counsel re-issued the subpoenas, this time with a physical address for production. Ex. A, B. Ms. Sibley was personally served on February 10, 2026, and Mr. Rousse was served via domiciliary service that same day. Ex. G.

On February 10, 2026, Ms. Sibley wrote to Plaintiff's counsel in an email with a skull emoji (💀) as the subject line. Ex. C at 1. She wrote "How many more of these are you going to send us before you get it through your head that we have NOTHING. There is nothing to be produced. I mean good lord." *Id.* She told Plaintiff's counsel that "you don't seem very bright" and that she wanted "nothing to do with you, that pathetic client of yours, or this law suite [*sic*]. LEAVE US ALONE!" *Id.*

4

Despite saying she had "NOTHING," she gave no indication that she had run the keyword searches or looked through her records for responsive documents. *Id.* So Plaintiff's counsel responded by pointing out that "you will need to contact your phone provider for some of the items. For the others, you will have to download items from OnlyFans or your bank, and run keyword searches through your emails, text messages, Facebook messages, Twitter DMs, or other forms of social media communication." *Id.* at 3.

Ms. Sibley responded by calling the Plaintiff "a freaking joke" and asking about the relevance of certain items. *Id.* at 5. Her question may have been rhetorical, because she closed with a request that Plaintiff's counsel not "respond to this email as I do not care to entertain this matter any further. We will see you in June. Other than that, you will not hear from us. 🫶 💁‍♀️." *Id.*[2]

On March 27, 2026, the deadline for production of responsive documents passed. Ex. A, B. No documents were produced, so Plaintiff's counsel wrote one more time to request that Ms. Sibley and Mr. Rousse "[p]lease contact me immediately if you wish to comply with the subpoena. If not, we will request a court order. If you engage a lawyer to assist you with this, please let me know and I will speak with them." Ex. D.

To date, neither Mr. Rousse nor Ms. Sibley have provided any responsive documents. Ex. E at ¶ 9. Mr. Rousse has provided two screenshots, but neither is responsive to the subpoena. *Id.* Ms. Sibley has provided nothing at all. *Id.*

**C.    This Court should order Mr. Rousse and Ms. Sibley to produce the subpoenaed Records.**

Regarding a non-party witness, Federal Rule of Civil Procedure 45(g) provides that a noticing party "may hold in contempt a person who, having been served, fails without adequate

---

[2] The "Woman Tipping Hand Emoji" is "commonly used to express sassiness or sarcasm." See https://emojipedia.org/woman-tipping-hand

excuse to obey the subpoena or an order related to it." And although "the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions." Notes of Advisory Committee on Rule 45, *citing Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.*, 893 F.2d 605 (3d Cir. 1990); *Fisher v. Marubent Cotton Corp.*, 526 F.2d 1338, 1340 (8th Cir. 1975); *Young v. United States ex rel Vuitton et Fils S.A.*, 481 U.S. 787, 821 (1987) (Scalia, J., concurring).

So powerful is the subpoena, that a "non-party might be guilty of contempt for refusing to obey a subpoena even though the subpoena manifestly overreaches the appropriate limits of the subpoena power." *Id.*, *citing Walker v. City of Birmingham*, 388 U.S. 307 (1967). A party may seek to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. Proc. 45(g). Before seeking a motion to compel, the movant must confer in good faith. Fed. R. Civ. Proc. 37(a)(1).

Here, Mr. Rousse and Ms. Sibley were properly served with subpoenas for documents. The requested documents are crucial to this case. The evidence already in Plaintiff's possession indicates that Mr. Rousse conspired with Defendant Bouziga false charges to bring against Ms. Pierce regarding Ms. Sibley's photos. *See* R. Doc. 1 at ¶ 43 (Mr. Rousse boasting that "been talking to joey we got something cooking"). Accordingly, the requests for communications between Mr. Rousse, Ms. Sibley, and the Defendants are vital. Furthermore, Mr. Rousse and Ms. Sibley may be the only sources of these documents. That is because Defendants have confirmed that the images of Ms. Sibley were transmitted to the Golden Meadow Police Department electronically, but Defendants cannot locate those communications. Ex. F.[3]

---

[3] This is astonishing. Defendant Chief of Police Lafont's predecessor was <u>arrested for deleting public records</u> only last year. See Piper Hutchinson, *Former Golden Meadow police chief arrested for deleting*

And the requests for documents reflecting income or payments from OnlyFans – the only documents that Mr. Rousse and Ms. Sibley objected to providing – are important to show the jury the true nature of the photos: that they were not intimate, private photographs to be shared between spouses, but rather public advertisements for Ms. Sibley's online erotic content business. *See* R. Doc. 1 at ¶ 4. If Ms. Sibley wishes, Plaintiff is willing to hold the income documents confidential pursuant to a standard confidentiality protective order.

In meeting-and-conferring, Mr. Rousse and Ms. Sibley oscillated between agreeable (agreeing to provide most of the requested documents) and taunting (sending skull emojis and insulting Plaintiff and Plaintiff's counsel). They have not, however, provided <u>a single page of responsive documents</u>, agreeing to do so, being granted an extension, and being subpoenaed twice.

Plaintiff is not seeking sanctions or a finding of contempt of subpoena at this time – only a court order to produce the subpoenaed documents. That is because Mr. Rousse and Ms. Sibley are unrepresented third-party witnesses, and also members of Plaintiff's family (however hostile). Accordingly, Plaintiff is only asking at this juncture that the Court order Mr. Rousse and Ms. Sibley to produce the subpoenaed documents. Only if they fail to do so after a direct court order will Plaintiff resort to a request for contempt and/or sanctions.

**D.    Conclusion**

Plaintiff respectfully asks the Court to issue an order directing Mr. Rousse and Ms. Sibley to provide the subpoenaed documents.

Respectfully submitted,

*/s/ William Most*
**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
Most & Associates

---

*department records*, Illuminator (Aug. 7, 2025). But despite that, Chief Lafont's department appears to be <u>continuing</u> to delete departmental records. This may be the subject of a subsequent spoliation motion.

> 201 St. Charles Ave., Ste. 2500, #9685
> New Orleans, LA 70170
> Tel: (504) 500-7974
> Email: hopeaphelps@outlook.com
> ***Counsel for Plaintiff, Dawn Pierce***

<u>Certificate of Service</u>

I certify that on the date marked by EM/ECF above (March 9, 2026), I caused the above to be served on all parties by EM/ECF, and on Dylan Rousse and Amber Sibley by U.S. Mail and email.

> */s/ William Most*
> WILLIAM MOST (La. Bar No. 36914)