UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| _____ )<br>DAWN PIERCE,                                                    )<br>                                                               )<br>                               Plaintiff          )<br>        v.                                                     )<br>                                                               )<br>TOWN OF GOLDEN MEADOW, et al.          )<br>                                                               )<br>                               Defendants.      )<br>_____ ) | Case No. 25-cv-02178-WJC-DPC |

**Memorandum in Support of Motion to Determine Conflict-Free Counsel**

In this Section 1983 false arrest case, all four defendants – the Town of Golden Meadow, the Mayor, the Police Chief, and a police officer – are represented by the same lawyer.

But the nature of this case creates a structural potential conflict of interest between the defendants. That is because a "section 1983 claim under _Monell v. Department of Social Services_, 436 U.S. 658 (1978), creates a potential conflict of interest between [an employer], and the employee defendants in their individual capacities."[1] And an unaddressed conflict threatens the integrity of the proceedings, and puts a successful Plaintiff's verdict at risk on appeal.[2] That potential conflict is particularly acute where – as is the situation in this case – the municipality has explicitly chosen <u>not</u> to fully indemnify the individual defendants.

To ensure the integrity of the case, these actual or potential conflicts should be addressed before this case proceeds to trial. According to this Court's practice, one of two things should

---

[1] _Nagle v. Gusman_, No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015)

[2] _See, e.g., Dunton v County of Suffolk_, 729 F.2d 903 (2nd Cir. 1984), _amended in part on other grounds_, 748 F.2d 69 (2nd Cir. 1984) (reversing plaintiffs' verdict against police officer in a civil rights case where the same attorneys represented the officer and municipality); _Shadid v. Jackson_, 521 F. Supp. 87 (E.D. Tex 1981) (finding joint representation of police officer and city by same attorney was conflict of interest, and that in the circumstances, the "potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants").

1

happen. Either (1) the defendants should obtain separate counsel or (2) the conflict should be eliminated through the *Lou* process ordered by this Court in a range of cases, in which defendants provided affidavits regarding indemnification and conflict waiver if they wish to all retain the same counsel.[3]

## A.    Legal Standard

"Ideally, conflict of interest problems should be settled between the attorney and his client . . . [however,] it is generally proper for an opposing party to bring conflict of interest matters to the attention of the court."[4] That is because an unaddressed conflict threatens the integrity of the proceedings, and puts a successful Plaintiff's verdict at risk on appeal.[5]

Federal courts assessing conflicts of interest apply local ethical rules, although ultimately the issue is one of federal law.[6] The United States District Court for the Eastern District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association.[7] The applicable Louisiana Rule of Professional Conduct governing conflicts of interest is Rule 1.7 which states:

> (a)    Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

[3] *Lou v. Lopinto,* Case No. 21-80, R. Doc. 58 (E.D. La. Apr. 13, 2022); *see also Rogers v. Smith,* 20-cv-00517-JTM-JVM, R. Doc. 274 (E.D. La. Nov. 21, 2023).
[4] *U.F.D.I.C. v. U.S. Fire. Ins. Co.*, 50 F.3d 1304, 1315 (5th Cir. 1995)); *see also U.S. vs. Ryan,* 20-cr-00065-EEF-KWR (E.D. La. Apr. 11, 2022) (disqualifying counsel on adverse party's motion, because paramount "to the Court's empathy to any particular party is its obligation to apply the law evenhandedly and enforce ethical lawyering.").
[5] *See, e.g., Dunton v County of Suffolk*, 729 F.2d 903 (2nd Cir. 1984), *amended in part on other grounds*, 748 F.2d 69 (2nd Cir. 1984) (reversing plaintiffs' verdict against police officer in a civil rights case where the same attorneys represented the officer and municipality); *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex 1981) (finding joint representation of police officer and city by same attorney was conflict of interest, and that in the circumstances, the "potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants").
[6] *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).
[7] *See* Local Civil Rules of the U.S. District Court for the Eastern District, Rule 83.2.3.

(1)    the representation of one client will be directly adverse to another client; or

(2)    there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

(b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)    the representation is not prohibited by law;

(3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)    each affected client gives informed consent, confirmed in writing.

Louisiana's rule is identical to the ABA Model Rule of Professional Conduct 1.7 (2002).

The Comments to the ABA Model Rule 1.7 further explain that, with respect to concurrent

representation of codefendants, "A conflict may exist by reason of substantial discrepancy in the

parties' testimony, incompatibility in positions in relation to an opposing party or the fact that

there are substantially different possibilities of settlement of the claims or liabilities in question."

The ABA's Model Code also addresses concurrent conflicts of interest. It provides, in

relevant part:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who *may* have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Ethical Canon 5–14 (emphasis added). The Code states the duty of an attorney in this situation:

3

If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, *he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided* if he accepts or continues the employment. *He should resolve all doubts against the propriety of the representation.* A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.[8]

Even after an attorney representing clients with potentially differing interests has weighed the risks and determined that representation may continue, he or she nevertheless owes each client a full explanation of the issues involved.[9]

In sum, both the applicable rules and the Model Code suggest that concurrent representation of clients with potentially conflicting interests may continue only if (1) the attorneys reasonably believe that they can provide competent, diligent, and unimpaired representation to all clients and (2) the clients have given their informed consent. Moreover, the rules require that this consent be "confirmed in writing."[10]

## B.    Factual and Procedural Background

In this case, one lawyer – Keith Detweiler – represents all four defendants. The Answer that he filed for all defendants suggested potential conflicts of interest. For example, it denied that any individual defendant's actions could "warrant a finding of vicarious liability on the part of the Town of Golden Meadow" but also that each defendant's actions were "done for legitimate governmental reasons"[11] and also that the individual defendants could not "be liable to the Plaintiff

---

[8] Ethical Canon 5–15 (emphasis added).
[9] Ethical Canon 5–16.
[10] Rules of Professional Conduct, Rule 1.7(b)(4).
[11] R. Doc. 6 at pg. 6.

in any way other than in their official capacity as an employee of the Town of Golden Meadow as opposed to their status as a private individual."[12]

Accordingly, Plaintiff propounded discovery to probe whether a potential conflict of interest might exist. Plaintiff propounded a request for admission, asking whether the "Town of Golden Meadow will fully indemnify each individual Defendant for all relief obtained through this litigation."[13] Defendants responded with an objection on the ground that the request "is vague and ambiguous and cannot be admitted or denied as written."[14]

On January 23, 2026, the parties met and conferred. Plaintiff's counsel explained that "Defendants' refusal to answer the indemnification question raises a necessary conflict" under *Nagle,* and suggested that the parties "follow the procedure laid out in *Lou v. Lopinto*." Ex. B at 1. Defense counsel agreed to confer with his clients about it and report back within two weeks. On February 12, 2026, Defense counsel reported that he was still "conferring" with his clients about it. Ex. C at 11.

On March 11, 2026, Defense counsel reported that the Town had decided <u>not</u> to fully indemnify the individual defendants, and agreed to provide the *Lou v. Lopinto* affidavits within three weeks. Ex. C at 6-7. When no affidavits were provided within that time period, Plaintiff's counsel followed up again, asking for the affidavits by April 13. Ex. C at 3. Defense counsel responded that he was "preparing the affidavits." *Id.* at 2. By phone, he asked to have until April 20, 2026 to provide them.

---

[12] *Id.* at 25.
[13] Ex. A at 13.
[14] *Id.*

5

As of today, no *Lou* affidavits have been produced. Defense counsel has given no indication when they will be provided. And the parties have been meeting-and-conferring about the issue for three months without resolution. Accordingly, Plaintiff files this motion.

**C.    Concurrent representation all defendants results in a structural potential conflict of interest, as well as an actual conflict because the Town has declined to fully indemnify the individual defendants.**

The interests of the Town of Golden Meadow and the interests of its employees can be adverse to one another. As the Fifth Circuit explained in *Van Ooteghem v. Gray*,[15] after the Supreme Court's decision in *Monell* allowed suits against local governmental entities, a "serious problem of conflict of interest could exist" in cases where "one attorney represents both a county and a county official individually," due to the parties' adverse interest.  The Second Circuit, relying on *Van Ooteghem*, explained why those interests may be adverse in *Dunton v. Suffolk County*:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality.[16]

In *Dunton*, a similar situation as here was present: thesame counsel represented both an individual defendant and the governmental body. After the trial ended in a jury verdict for plaintiffs, the Second Circuit reversed the jury verdict based on the inherent conflict of interest between the individual Defendants and the municipality. The County had pursued a defense which was in *its* interest, that the individual officer was acting outside the scope of his duties, but

---

[15] 628 F.2d 488, 495 n.7 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir. 1981) *(en banc) (per curiam).*
[16] 729 F.2d 903, 907 (2nd Cir. 1984)

failed to present a good-faith defense on the individual officer's behalf: "This was a good defense for the county, which eventually was dismissed from the action. However, it was not in the best interest of Pfeiffer, who was ultimately found liable in his individual capacity."[17] The County indemnified the individual for compensatory damages, but because the jury had also imposed punitive damages which the County did not indemnify, a new trial was required.[18]

In addition to the Fifth Circuit decision in *Van Ooteghem*, a range of courts within the Fifth Circuit have also recognized this conflict. In *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex. 1981), the parties raised the conflicts issue before trial. The District Court recognized that there was an "obvious potential for conflict of interest" where the same counsel represented an individual police officer and the city.[19] "It is in the interests of this individual defendant to contend that if the events alleged did in fact occur, he was acting at all times in good faith within the scope of his lawful, official duties. Conversely, the City of Clarksville might try to avoid liability by proving that this police officer was acting without authority and outside the scope of his employment."[20] The Court held that the individual officers and municipality must be represented by separate counsel, because "an attorney seeking to represent both of these defendants with utmost zeal might find himself in an untenable position."[21]

Multiple sections of this Court have agreed. Judge Sarah Vance of this district addressed a Motion for Conflict Free Counsel in *Nagle v. Gusman,* holding that "plaintiffs' section 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), creates a potential

---

[17] *Id.*
[18] *Id.* at 909–10.
[19] *Id.* at 88–89.
[20] *Id.*
[21] *Id.* at 89.

7

conflict of interest between Sheriff Gusman in his official capacity, and the employee defendants in their individual capacities."[22]

Judge Triche Milazzo of this district concurred, noting that "Plaintiff correctly points out that 'in section 1983 cases, the interests of a municipality and the interests of its employees are adverse to one another.'"[23]

Judge Eldon Fallon agreed, holding that the "Court agrees with the Plaintiffs that the interests of a municipality and the interests of its employees may be adverse to one another in section 1983 cases such as the one here."[24] He pointed out that even if the defendants' positions appear aligned before trial, "there is nothing that restricts the City's ability to change its theory of defense and shift the blame to [the officer.]"[25]

Here, there are clear potential conflicts. It would be in the Town and Mayor's interest to contend that Chief Lafont was acting on her own without approval, and outside the course and scope of her employment. It would be in the Chief's interest to contend that she had discussed the matter and received approval from the Mayor. And it would be in Officer Gaspard's interest to argue he was only following orders, and had no knowledge of the illegality of arresting plaintiff.

Thus, the conflict identified in *Van Ooteghem*, *Dunton*, *Shadid*, *Nagle*, *Lou*, *Rogers,* and *Brown* is present here, and if not addressed, has the potential to negatively affect a future verdict. Plaintiff has a claim against the Town, as well as claims against individual employees who served under the Town at its will.

---

[22] No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015).
[23] *Rogers v. Smith,* 20-cv-00517-JTM-JVM, R. Doc. 274 *(*E.D. La., Nov. 21, 2023).
[24] *Brown v. Burmaster,* 22-cv-00847-EEF-KWR, R. Doc. 202 at *3 (E.D. La., Apr. 4, 2025).
[25] Id. at *4.

**D.    The problem can be resolved by defendants either (1) obtaining separate counsel; or (2) following the *Lou* procedure.**

These problems can be solved in one of two ways. First, defendants could obtain separate counsel. Second, the defendants could follow the procedure laid out in *Lou v. Lopinto*.[26] In that case, as here, the plaintiffs moved for a determination of conflict-free counsel given the inherent conflicts between a sheriff and deputies. Judge Currault found that the conflict could be eliminated through confirmation "that the individual officers were acting in the scope of their official duties, the Sheriff Office's agreement to indemnify the individual officers from liability for compensatory and punitive damages, and defense counsel's confirmation that all parties are in alignment on their defenses."[27] She ordered that such confirmation occur as follows:

> IT IS ORDERED that, within 14 days, counsel for Defendants file a separate Affidavit by each Defendant to establish informed consent has been provided, which Affidavit should confirm that counsel (a) met with the defendant; (b) explained the litigation, the claims against the defendant, and the ways in which the defendant's interest is potentially adverse to the interests of other defendants represented by the same counsel; (c) explained the ramifications of the potential conflicts and the ways in which counsel's representation of the defendant may be limited by its obligations to other defendants; (d) explained the effect of the indemnification agreement and the waiver of potential conflicts; (e) confirmed that the defendant was notified that the Sheriff's Office would pay for separate counsel, if necessary; and (f) confirmed that the defendant was offered an opportunity to consult with separate counsel regarding the waiver of potential conflicts before waiving same. If anything contained in these Affidavits contain confidential client information or information subject to the attorney-client privilege or work product doctrine, the Affidavit(s) may be filed UNDER SEAL;
>
> IT IS FURTHER ORDERED that, within 14 days, defense counsel provide his own affidavit averring (a) that he reasonably believes that he will be able to provide competent and diligent representation to each defendant; (b) that the Sheriff's Office has agreed to indemnify the individual defendants for compensatory and punitive damages, costs, and attorneys' fees; and (c) that counsel has met with each defendant and (1) explained the litigation, the claims against the defendant, and the ways in which the defendant's interest is potentially adverse to the interests of other

---

[26] *Lou v. Lopinto*, Case No. 21-80, R. Doc. 58 (E.D. La. Apr. 13, 2022),

[27] *Id.* at 1-2.

defendants represented by the same counsel; (2) explained the ramifications of the potential conflicts and the ways in which counsel's representation of the defendant may be limited by its obligations to other defendants; (3) explained the effect of the indemnification agreement and the waiver of potential conflicts; (4) confirmed that the defendant was notified that the Sheriff's Office would pay for separate counsel, if necessary; and (5) confirmed that the defendant was offered an opportunity to consult with separate counsel regarding the waiver of potential conflicts before waiving same. If anything contained in the Affidavit contains confidential client information or information subject to the attorney-client privilege or work product doctrine, the Affidavit may be filed UNDER SEAL;[28]

So too in *Rogers v. Smith.* In that case, which involved one set of lawyers seeking to represent both the Sheriff and his deputies, the Court noted the adverse interests, and set a hearing to determine conflict-free counsel.[29] At that hearing, the Court questioned each defendant about potential conflicts (including whether the Sheriff would pay for both compensatory and punitive damages if the jury so awarded), and then ordered the defendants to file affidavits under seal.[30] The Court ordered that "I'm going to issue, basically, the same order that Judge Currault did in the Lopinto case so that you file the affidavits under seal in the record, even though we've had a brief conversation, but there are specific questions that need to be answered."[31]

After reviewing the affidavits, the Court determined that it was "satisfied that Defendants have been informed about any potential conflict, that they have waived that conflict, and that the Sheriff has agreed to indemnify the Deputy Defendants and pay for separate counsel if necessary."[32]

Plaintiffs proffer that following Judge Currault's procedure from *Lou v. Lopinto*, which was followed by Judge Milazzo in *Rogers v. Smith,* would solve the problem here.

---

[28] *Id.* at 2-3.

[29] *Rogers v. Smith,* 20-cv-00517-JTM-JVM, R. Doc. 274 *(*E.D. La. Nov. 21, 2023).

[30] *Id.* at R. Doc. 277.

[31] Transcript at pg. 11, found at *Brown v. Burmaster,* 22-cv-847, R. Doc. 183-2.

[32] *Rogers* at R. Doc. 289.

**CONCLUSION**

For the reasons above, Plaintiff asks that this motion be granted.

Respectfully submitted,

*/s/ William Most*
HOPE PHELPS (La. Bar No. 37259)
WILLIAM MOST (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 500-7974
Email: hopeaphelps@outlook.com
*Counsel for Plaintiff, Dawn Pierce*

11