UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAWN PIERCE | * | CIVIL ACTION |
| VERSUS | * | NO. 25-2178 |
| TOWN OF GOLDEN MEADOW, ET AL. | * | SECTION "C" (2) |

**ORDER AND REASONS**

Pending before me is Plaintiff Dawn Pierce's "Motion to Determine Conflict-Free Counsel." ECF No. 20. Defendants Town of Golden Meadow, its Mayor Joey Bouziga, Police Chief Michelle Lafont, and Officer Tristan Gaspard timely filed an Opposition Memorandum, and Plaintiff timely filed a Reply Memorandum. ECF Nos. 21, 22. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Motion is **DENIED WITHOUT PREJUDICE** for the reasons stated herein.

## I.   BACKGROUND

Plaintiff Dawn Pierce filed this § 1983 action against Mayor Joey Bouziga, Police Chief Michelle Lafont, and Officer Tristan Gaspard in their respective official and personal capacities and a *Monell* claim[1] against the Town of Golden Meadow (the "Town") after her arrest for sharing publicly available lingerie photographs of her nephew's fiancée. ECF No. 1 ¶¶ 18, 19, 21, 110-17, 133-147. She also asserts state tort claims and asserts the Town is vicariously liable for same under LA. CIV. Code art. 2320. *Id.* ¶¶ 157-167, 175-182, 189-194. In their Answer, Defendants concede that Mayor Bouziga, Chief Lafont, and Officer Gaspard were employees of the Town at

---

[1] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978).

1

all relevant times acting in their official capacities.  ECF No. 6 at 3-4 (¶¶ 18-19, 21).  Defendants assert, among other defenses, that none of the acts by the individual defendants support a valid *Monell* claim; that none of the individual defendants' actions warrant a finding of vicarious liability on part of the Town and do not support a theory of *respondeat superior* under state law; and that all of their actions were done for legitimate governmental reasons.  *Id.* at 21-22 (¶¶ 8, 11-12).  No Scheduling Order has been issued.

Defendants are all represented by Keith Detweiler.  Plaintiff requested that Defendants admit the Town "will fully indemnify each individual Defendant for all relief obtained" through the litigation.  ECF No. 20-2 at 13.  Defendants initially objected to the Request for Admission. *Id.*  However, according to Plaintiff's counsel's March 11, 2026, email memorializing a meet-and-confer conference, Detweiler reported that the Town has decided not to fully indemnify the individual defendants and, at Plaintiff's suggestion, agreed to provide affidavits in accordance with the requirements this Court ordered in *Lou v. Lopinto* ("*Lou* affidavit").  ECF No. 20-4 at 5-6; *see* Civ. No. 21-80, ECF No. 58 (E.D. La. Apr. 13, 2022).[2]  Detweiler's April 9, 2026, email indicates that he was preparing the "affidavits as discussed."  ECF No. 20-4 at 2.  As of April 21, 2026, however, Plaintiff had not received *Lou* affidavits, and thus, filed this motion.  ECF No. 20-4 at 2.

## II.    THE PENDING MOTION

Plaintiff now files this "Motion to Determine Conflict-Free Counsel" asking the Court to disqualify Detweiler from representing both the individual defendants and the Town in the absence of *Lou* affidavits.  ECF No. 20.  While unclear, Plaintiff suggests that Detweiler's simultaneous representation of the individual defendants and the Town raises a material limitation conflict under Rule 1.7(a)(2) of the Louisiana Rules of Professional Conduct ("LRPC") and the American Bar

---

[2] In *Lou*, the Court addressed a virtually identical conflict of interest issue by requiring both defendants and their counsel provide separate affidavits to establish the defendants' informed consent.  Civ. No. 21-80, ECF No. 58.

Association's ("ABA") Model Rules of Professional Conduct.  ECF No. 20-1 at 2-3 (quoting

MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 23, which states that "simultaneous representation"

is governed by Rule 1.7(a)(2)).  Plaintiff asserts that this conflict "threatens the integrity of the

proceedings" and discusses  cases from district courts in the Fifth Circuit that have found a material

limitation conflict arises when a municipality and its employees are represented by the same

counsel and a plaintiff's § 1983 action asserts both a *Monell* claim against the municipality and

personal capacity claims against the employees.  *Id.* at 2, 7-8 (discussing *Shadid v. Jackson*, 521

F. Supp. 87 (E.D. Tex. 1981); *Nagle v. Gusman*, No. 12-1910, 2015 WL 1525827 (E.D. La. Apr.

2, 2015) (Vance, J.); *Rogers v. Smith*, No. 20-517, ECF No. 274 (E.D. La. Nov. 21, 2023) (Milazzo,

J.); *Brown v. Burmaster*, No. 22-847, 2025 WL 1019399 (E.D. La. Apr. 4, 2025) (Fallon, J.)).

In Opposition, Defendants assert that, at this early stage, "there is no obvious conflict of

interest," directly adverse conflict, or material limitation conflict.  ECF No. 24 at 2-3 (discussing

*Breaud v. Cantrell*, No. 24-1865, 2025 WL 2646113 (E.D. La. Sept. 15, 2025) (Brown, J.)).  Even

if there were a material limitation conflict, Defendants state that they are willing to waive it

because they are aligned in their defenses and not likely to change their positions.  *Id.* at 2.

In Reply, Plaintiff asserts Defendants' current stance on alignment does not ameliorate the

conflict because § 1983 cases involving *Monell* and individual capacity claims present a structural

conflict.  ECF No. 25 at 1-2.  Plaintiff also asserts Defendants misunderstand *Breaud* as to whether

this conflict is "open and obvious" and its factual similarity to this case.  *Id.* at 1-3.

## III.    <u>APPLICABLE LAW</u>

### A.  <u>Standard for Disqualification</u>

Although a "'district court is obliged to take measures against unethical conduct occurring

in connection with any proceeding before it[,]' it must not impose the sanction of disqualification

3

'cavalierly.'"[3]  A motion to disqualify counsel is a substantive motion affecting the rights of the parties and is determined by applying standards developed under federal law.[4]  They are "'generally disfavored' and 'require a high standard of proof' so as to not deprive a party of its chosen counsel."[5]  Conflict of interests are generally best-settled between the client and his attorney,[6] and the party moving for disqualification is burdened with showing an actual conflict exists.[7]  "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[8]

Disqualification cases are governed by state and national ethical standards adopted by the court.[9]  When considering attorney disqualification, the court considers (1) the district's local rules; (2) the ABA's Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct.[10]  Local and national ethical canons are useful guides, but they are not controlling.[11]  Nor are they mechanically applied.[12]  Applying an exacting standard for a motion to disqualify is necessary to protect a party's right to counsel of choice and

---

[3] *Nagle*, 2015 WL 1525827, at *4 (alterations in original) (quoting *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299–300 (5th Cir. 2009) ("[D]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.")).

[4] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311-12 (5th Cir. 1995); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

[5] *Mose v. Keybank Nat'l Ass'n*, No. 11-162, 2011 WL 2790199, at *1 (M.D. La. July 14, 2011) (citing *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304 (5th Cir. 1995); *In re Katrina Canal Breches Consol. Litig.*, 2008 WL 3845228, at *3 (E.D. La. Aug. 13, 2008)).

[6] *F.D.I.C.*, 50 F.3d at 1315.

[7] *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 559 F. Supp. 3d 530, 535 (E.D. La. 2021) (Morgan, J.) (citing *United States v. DeCay*, 406 F. Supp. 2d 679, 683 (E.D. La. 2005)); *Galderma Lab'ys, L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 398 (N.D. Tex. 2013) ("[Movant] must establish that there is a conflict of interest under the applicable ethics standards and if so, that disqualification is the proper remedy." (citing *Forsyth v. Barr*, 19 F.3d 1527, 1546 (5th Cir. 1994) (placing the burden of establishing a conflict on the client seeking disqualification))); *Mose*, 2011 WL 2790199, at *2.

[8] *F.D.I.C.*, 50 F.3d at 1314.

[9] *Id.* at 1311–12 (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).

[10] *Id.* at 1312; *Horaist v. Dr.'s Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).

[11] *F.D.I.C.*, 50 F.3d at 1314.

[12] *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th. Cir. 1989); *Church of Scientology of Cal. v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980).

to discourage the use of such motions as a trial tactic.[13]  The court must be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, such as the right of a party to counsel of choice and an attorney's right to freely practice law.[14]

When considering a motion to disqualify, a court should first look to its local rules.[15]  Local Civil Rule 83.2.3 of this district adopts the LRPC as its rules of conduct.[16]  The relevant LRPC is virtually identical to its counterpart under the Model Rules,[17] and the "Fifth Circuit has recognized the . . . Model Rules . . . as the national standards to consider in reviewing motions to disqualify."[18]  Thus, the Court considers both the LRPC and Model Rules in this analysis.[19]

### A. Disqualification Under Rule 1.7(a)(2)

Rules 1.7 of the LPRC and Model Rules govern concurrent conflicts of interest, including material limitation conflicts.  Rule 1.7 in pertinent part states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>> . . .
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibility to another client, a former client, or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

---

[13] *F.D.I.C.*, 50 F.3d at 1315 (finding a tortured justification for disqualification based on a possible conflict reflected a tactic to delay and harass rather than a conscientious professional concern).

[14] *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)); *see also F.D.I.C.*, 50 F.3d at 1313 (citing *Woods*, 537 F.2d at 813).

[15] *ProEducation Int'l*, 587 F.3d at 299 (quoting *F.D.I.C.*, 50 F.3d at 1312).

[16] E.D. La. L.R. 83.2.3 (adopting the Rules of Professional Conduct of the Louisiana State Bar Association).

[17] *Compare* LA. RULES OF PRO. CONDUCT r. 1.7, *with* MODEL RULES OF PRO. CONDUCT r. 1.7 (AM. BAR ASS'N 2025). *See CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623, 2010 WL 2773116, at *2 & n.12 (E.D. La. July 9, 2010) (Africk, J.) (finding, among others, LRPC 1.7 identical to Model Rule 1.7 (citing *Lange v. Orleans Levee Dist.*, No. 97-987, 1997 WL 668216, at *2 (E.D. La. Oct. 23, 1997) (Clement, J.))).

[18] *W. Bankers Cap., Inc. v. Kirton McConkie, P.C.*, No. 23-5124, 2025 WL 522542, at *3 (E.D. La. Feb. 18, 2025) (Long, J.) (quoting *ProEducation Int'l*, 587 F.3d at 299).

[19] *Id.* (citing *ProEducation Int'l*, 587 F.3d at 299).  Because the relevant rules under the LRPC and Model Rules are virtually identical, the Court interchangeably refers to them.

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.[20]

A material limitation conflict exists when there is a significant risk that the representation of one client will be materially limited by the lawyer's responsibilities to another client.[21] Simultaneous representation of codefendants in litigation is governed by Rule 1.7(a)(2).[22] As Comment 8 of Model Rule 1.7 explains, a material limitation "conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."[23] "The conflict in effect forecloses alternatives that would otherwise be available to the client"; however, the possibility of future harm "does not itself require disclosure or consent."[24] The court considers "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client."[25]

Notwithstanding a conflict under Rule 1.7(a), clients may consent to representation if all four conditions of paragraph (b) are met. However, "some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the

---

[20] LA. RULES OF PRO. CONDUCT r. 1.7; MODEL RULES OF PRO. CONDUCT r. 1.7.

[21] LA. RULES OF PRO. CONDUCT r. 1.7(a)(2); MODEL RULES OF PRO. CONDUCT r. 1.7(a)(2); *Johnson v. Clark Gin Serv. Inc.*, No. 15-3290, 2016 WL 7017267, at *9 (E.D. La. Dec. 1, 2016) (Brown, J.).

[22] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 23.

[23] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 8.

[24] *Id.*

[25] *Id.*

basis of a client's consent."[26]  These prohibited representations exist in the absence of any one of the first three conditions of Rule 1.7(b):  (1) the lawyer reasonably believes he will be able to provide competent and diligent representation to the each affected client; (2) the representation is not illegal; and; (3) the representation does not involve the assertion of a client by one client against another of the lawyer in the same litigation or other proceeding.[27]  When multiple clients are involved, the question of whether consent is permissible must be resolved as to each client.[28]

Even when the representation is subject to consent, each affected client must give "informed consent, confirmed in writing."[29]  "Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the [their] interests."[30]  "When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved."[31]  While the movant bears the burden of proving a disqualifying conflict of interest, "the attorney asserting the excuse of informed consent has the burden of showing that his . . . client has given informed consent."[32]

## IV.  ANALYSIS

### A.  Standing

Cognizant that motions to disqualify may be used as tactical weapons in litigation, courts are reluctant to disqualify an attorney based on an alleged conflict of interest raised by opposing

---

[26] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 14.

[27] *Id.* at cmts. 15-17.

[28] *Id.* at cmt. 14.

[29] *Id.* at 1.7(b)(4).

[30] *Id.* at cmt. 18.  The information required depends on the nature of the conflict and risks involved.  *Id.*

[31] *Id.*

[32] *Waneck v. CSX Corp.*, No. 17-106, 2017 WL 11695758, at *8 n.3 (S.D. Miss. Aug. 25, 2017) (citing *Galderma Lab'ys,* 927 F. Supp. 2d at 398; *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 879 (W.D. Mich. 2007)), *R.&R. adopted*, 2017 WL 5157394 (S.D. Miss. Nov. 7, 2017).

counsel rather than a former client.[33]  This requirement, sometimes referred to as standing,[34] is subject to narrow exceptions when unethical conduct is "manifest and glaring" or "open and obvious" such that the court has a plain duty to act.[35]  Even when the movant is not the former client, a federal court "is obliged to take measures against unethical conduct occurring in connection with any proceeding before it,"[36] including alleged conflicts of interest.[37]  Such duty is self-imposed by the court's authority "to determine who may practice before [it] and to regulate the conduct of those who do" that is within the court's inherent judicial power.[38]

Defendants challenge Plaintiff's standing to seek disqualification, asserting there is no "obvious" conflict.  ECF No. 24 at 3.  However, Plaintiff has invoked the Court's inherent power.  *See* ECF No. 20-1 at 2.  Further, as the court explained in *Breaud*, there is an "open and obvious" potential conflict of interest when the same attorney represents both a municipality and its employees in a § 1983 action.[39]  Thus both that exception and the Court's duty to regulate attorney conduct require it to address the merits of Plaintiff's motion.

### B. Conflict Arising from Simultaneous Representation in § 1983 Action

#### 1. Claims Under § 1983

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

---

[33] *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 88, 90 (5th Cir. 1976).

[34] Although the Fifth Circuit has used the term "standing," this "standing" is not to be confused with the Article III requirement of standing.  *Id.* at 88; *In re Pressman-Gutman Co.*, 459 F.3d 383, 402 n.20 (3d Cir. 2006).

[35] *Nagle*, 2015 WL 1525827, at *3 (citation modified) (quoting *Yarn Processing*, 530 F.2d at 88-89); *see also In re Andry*, No. 15-2478, 2020 WL 5982898, at *10 n.116 (E.D. La. Oct. 8, 2020) (Morgan, J.); *Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*, No. 24-38, 2024 WL 5424896, at *3 (N.D. Tex. Nov. 19, 2024).

[36] *Woods*, 537 F.2d at 810.

[37] *United States v. Roark*, 288 F. App'x 182, 186 (5th Cir. 2008) ("We have recognized a district court's inherent authority to take measures against conflicts of interest when they arise 'in connection with any proceeding before it.'" (quoting *Woods*, 537 F.2d at 510)).

[38] *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976)).

[39] 2025 WL 2646113, at *4 (quoting *Nagle*, 2015 WL 1525827, at *8).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[40]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[41]

Generally, a plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.[42]

Section 1983 claims may be brought against persons in their personal or official capacity or against a governmental entity, such as a municipality.[43] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."[44] It is only the "performance of official duties" that creates the liability for a personal capacity claim,[45] which is why a plaintiff must show that an official, "acting under color of state law, caused the deprivation of a federal right" to establish personal liability in a § 1983 action.[46] Their private actions are not actions "under color of state law" and thus not actionable under § 1983,[47] because neither § 1983 nor the Fourteenth Amendment protects against private acts.[48] Available to an

---

[40] 42 U.S.C. § 1983.

[41] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[42] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[43] *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997))*.

[44] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[45] *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).

[46] *Graham*, 473 U.S. at 166; *see also Gomez v. Galman*, 18 F.4th 769, 776 (5th Cir. 2021) (per curiam) ("Generally, if an officer is performing their official duties, their acts 'are included [within the meaning of under color of state law] whether they hew to the line of their authority or overstep it' though 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945))).

[47] *See Tyson v. Sabine*, 42 F.4th 508, 523 (5th Cir. 2022) (quoting *Bustos v. Martini Club Inc.*, 599 F.3d 458, 465 (5th Cir. 2010)); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *Harris v. Rhodes,* 94 F.3d 196, 197 (5th Cir. 1996)).

[48] *See Lindke v. Freed*, 601 U.S. 187, 194 (2024).

official sued in his personal capacity are personal immunity defenses, such as qualified or "good faith" immunity for his performance of discretionary functions.[49]  Should a plaintiff succeed on her personal capacity claim, that victory is against the individual defendant and not the entity that employs him; there is no imposition of fee liability on the latter.[50]

To hold a municipality liable under § 1983 for its employee's conduct, it is insufficient to rely on theories of *respondeat superior* or vicarious liability.[51]  Rather, the plaintiff must show the "the municipality *itself* cause[d] the constitutional violation at issue" through the "execution of the government's policy or custom" by that employee.[52]  She must establish three elements: "(1) a policymaker; (2) an official policy; and (3) a 'violation of constitutional rights whose moving force is the policy or custom.'"[53]  Unlike individuals sued in their private capacity, "municipalities have no immunity from damages liability flowing from their constitutional violations."[54]

Because a municipality is only liable under § 1983 "when the entity itself is a moving force behind" the constitution deprivation,[55] a plaintiff must show the employee's conduct was a performance of his official duties," i.e. action under color of law.[56]  A municipality is not liable if

---

[49] *Lucas v. City of Thibodaux*, No. 24-1943, 2026 WL 570415, at *9 (E.D. La. Mar. 2, 2026) (Long, J.) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[50] *Graham*, 473 U.S. at 167-68.

[51] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95).

[52] *Id.* (emphasis in original) (citations omitted); *see also Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell*, 436 U.S. at 690-91).

[53] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694)).

[54] *Trent v. Wade*, 776 F.3d 368, 388 (5th Cir. 2015) (quoting *Owens v. City of Independence,* 445 U.S. 622, 657 (1980); and citing *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999) ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983."); *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d 745, 759 (5th Cir. 1993) ("While qualified immunity shields a city's officers from damages caused by their transgression of rights not 'clearly established' at the time of their conduct, the city itself is 'strictly liable' for all constitutional violations committed pursuant to its policies.")).

[55] *Graham*, 473 U.S. at 166 (citation modified).

[56] *See Turner*, 229 F.3d at 478 ("The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality.").

the conduct at issue is private conduct because there is no constitutional injury that it caused.[57]

### 2. Potential for Conflict of Interest in § 1983 Action

In the § 1983 context, conflicts may arise in two different ways: (1) an employee may be able to transfer some liability to the municipality by demonstrating that his actions were taken in accordance with an official policy; and (2) the municipality might try to avoid liability by arguing that the employee was acting outside the scope of their official duties.[58] Although the Fifth Circuit has not provided a binding rule on whether a material limitation conflict exists when an attorney simultaneously represents a municipality and an individual government official in a § 1983 action,[59] it has warned that "a serious problem of conflict of interest could exist in . . . 1983 actions in which one attorney represents both a county and a county official individually."[60] Thus, there is a "need for sensitivity" to the potential for conflicts in this situation.[61]

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.[62]

Courts within the Fifth Circuit follow this logic in analyzing this issue.[63]

---

[57] *See Bustos*, 599 F.3d at 467 (noting "a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer'" and affirming dismissal of plaintiff's *Monell* claim based on officers' private conduct (quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986))).

[58] *Brown*, 2025 WL 1019399 at *2 (citation omitted); *see also Breaud*, 2025 WL 2646113 at *4; *Nagle*, 2015 WL 1525827, at *1.

[59] *Breaud*, 2025 WL 2646113, at *4.

[60] *Van Ooteghem v. Gray*, 628 F.2d 488, 495 n.7 (5th Cir. 1980), *reh'g en banc granted, opinion vacated on other grounds*, 640 F.2d 12 (5th Cir. 1981), *and on reh'g en banc*, 654 F.2d 304 (5th Cir. 1981).

[61] *Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 494 (10th Cir. 1996) (quoting *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986)).

[62] *Dunton v. Suffolk County*, 729 F.2d 903, 907 (2d Cir.) (relying on *Gray,* 628 F.2d at 495 n.7), *amended by*, 748 F.2d 69 (2d Cir. 1984).

[63] *See Nagle*, 2015 WL 1525827, at *1; *Brown*, 2025 WL 1019399, at *2; *Breaud*, 2025 WL 2646113, at *4; *Moore v. LaSalle Corr. Inc.*, No. 16-1007, 2025 WL 2055746, at *2 (W.D. La. July 22, 2025); *Surratt v. McClaran*, 234 F.

Despite Plaintiff's assertion to the contrary, there is no *per se* "structural" conflict rule that requires a finding of a material limitation conflict in every §1983 action involving simultaneous representation of a municipality and its employees sued in their personal capacity.[64]  Indeed, a *per se* rule would be contrary to the Fifth Circuit's requirement that courts should consider "*all* of the facts particular to a case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights" when addressing a motion to disqualify.[65]

The Answer makes clear that the Town and individual defendants have stated that, at all relevant times, the latter were employees of the former and acted in their respective official capacity.  ECF No. 6 at 3-4 (¶¶ 18-19, 21).  The individual defendants in fact assert as a defense that they acted in their respective official capacity and acted within the course and scope of their employment.  *Id.* at 25 (¶ 27).  While the individual defendants do assert qualified immunity, (*Id.* at 23 (¶ 20)), such assertion does not alone establish a conflict of interest between a municipality and its individual officer.[66]  And the Town joins the individual defendants in asserting LA. REV. STAT. § 9:2798.1(B) as a defense, which is only available for acts that are "within the course and scope of [the latter's] lawful powers and duties." *Id.* at 20 (¶ 2).  Thus, there is no inherent conflict

---

Supp. 3d 815, 822-23 (E.D. Tex. 2016) (distinguishing *Dunton*), *aff'd sub nom.*, *Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017); *see also Rogers*, ECF No. 274 at 1 (relying on *Nagle*'s, and thus *Dunton*'s, discussion of the conflict).

[64] *See Dunton*, 729 F.2d at 908 n.4.

[65] *F.D.I.C.*, 50 F.3d at 1314 (emphasis added).  Other courts likewise apply a case-by-case approach.  *See Johnson*, 85 F.3d at 493; *Gordon*, 788 F.2d at 1197-98; *Coleman v. Smith*, 814 F.2d 1142, 1147-48 (7th Cir. 1987); *see also Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006).

[66] *Griffin v. County of Suffolk*, No. 23-5032, 2024 WL 3675904, at *5 (E.D.N.Y. Aug. 6, 2024) (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (finding that "an improper conflict of interest" did not exist where the City attorney argued that "the officers were acting in their official capacity" and "argued all possible defenses available to them, including the qualified immunity defense"); *Patterson,* 440 F.3d at 115 ("[t]he particular conflict cited in *Dunton* is simply not present here since "[a]t no time did [the attorney who represented all defendants] assert that [he corrections officer] was acting 'outside the scope of his employment' during the January 1999 assault, as the attorney had in *Dunton*."); *accord. Wallace v. Poulos*, No. 08-251, 2008 WL 11367536, at *3 (D. Md. Nov. 24, 2008) (finding "no conflict that prevents . . . counsel from representing [the county and its police officers] in this action at this time" because all defendants "agree that the police officers acted within the scope of their official duties"); *Cupp v. Smith*, No. 20-3456, 2020 WL 5407988, at *14 (N.D. Cal. Sept. 9, 2020) (finding county's position that its employees' conduct arose out of their employment "undermines any suggestion that [c]ounsel has or will litigate this case in a way detrimental" to one of its employees).

12

in both the Town and individual defendants having the unified position that the latter "did nothing illegal and acted in the course and scope of their employment."[67]

Plaintiff's suggestion of adverse interests based on the Town's defense that the individual defendants' actions cannot warrant a finding of vicarious liability pursuant to LA. CIV. Code art. 2320 is unconvincing. *See* ECF No. 20-1 at 4. Under article 2320, "employers are answerable for the damage occasioned by their [employees], in the exercise of the functions in which they are employed." Unlike § 1983 actions, "[m]unicipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."[68] While a municipality's denial of vicarious liability could indicate that its employee was not "acting within the course and scope of his employment,"[69] that is not necessarily true. Rather, it could also mean the municipality asserts that its employee did nothing wrong while acting in the course and scope of his employment.[70] The Answer in this case indicates the Town's position appears to be the latter. *See* ECF No. 6 at 18 (¶ 192) ("It is admitted Officer Gaspard acted at all times pertinent herein in his capacity as an employee . . . ."). Of course, the Town and individual defendants' respective positions may diverge over time.[71] But the fact that they are

---

[67] *Surratt*, 234 F. Supp. 3d at 822; *see also Nolan v. City of New York*, 754 F. Supp. 3d 548, 554 (S.D.N.Y. 2024) ("When [there is] a 'unified theory of defense' . . . , there is no *Dunton* issue." (quoting *Restivo v. Hessemann*, 846 F.3d 547, 581 (2d Cir. 2017))).

[68] *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009) (citing *Brasseaux v. Town of Mamou*, 752 So. 2d 815 (La. 2000)).

[69] *See Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996) (citing *Orgeron v. McDonald,* 639 So. 2d 224, 226 (La. 1994)).

[70] *See, e.g.*, *Frank v. Parnell*, No. 18-978, 2019 WL 2438685, at *9 (W.D. La. May 14, 2019) ("If there is no underlying tort, there can be no basis for the imposition of vicarious liability." (citing *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318 (La. 1994))), *R.&R. adopted*, 2019 WL 2479462 (W.D. La. June 10, 2019).

[71] *See Shadid*, 521 F. Supp. at 90 ("Defendants correctly observe that 'no conflict can exist so long as these defendants make common cause.' but there is no way of knowing if and when that strategic posture may change."); *Breaud*, 2025 WL 2646113, at *5; *Brown*, 2025 WL 1019399, at *2 ("While the Court acknowledges that at this time both Defendants assert the same defense that Burmaster acted as a reasonable police officer when he encountered Apollo on the day in question, they cannot unequivocally guarantee that their 'unified' position will remain unchanged before, during, or after trial. Put simply, there is nothing that restricts the City's ability to change its theory of defense and shift the blame to Burmaster.").

"capable of arguing . . . alternative position[s]" at some later stage is not evidence of a conflict of interest at this stage.[72]

Whether a municipality has agreed to indemnify its officer for claims for which liability can be transferred between them has repeatedly been found to be an indicator that the interests of the municipality and the officer are aligned and not in conflict.[73]   While Plaintiff asserts that Detweiler advised that the Town has decided not to fully indemnify the individual defendants when agreeing to provide *Lou* affidavits (*see* ECF No. 20-4 at 2, 5-6), Plaintiff does not offer any statement, email or other evidence from Defendants setting forth that assertion.   Plaintiff's inference that a conflict exists based on discussions during their meet-and-confer, however, is insufficient to carry the heavy burden of showing an actual material limitation conflict exists in this case at this time.

Consistent with its duty to take measures against unethical conduct, the Court orders Defendants to, within 14 days, notify Plaintiff in writing of the Town's decision regarding indemnifying the individual defendants for claims for which liability can be transferred between them.   Should the Town decide not to fully indemnify, that decision could well establish the existence of a material limitation conflict for the same attorney representing both the Town and

---

[72] *Surratt*, 234 F. Supp. 3d at 822.

[73] *See Griffin*, 2024 WL 3675904, at *4 (citing *Galloway v. Nassau County*, 569 F. Supp. 3d 143, 149 (E.D.N.Y. 2021) ("the Nassau County Police Officer Indemnification Board agreed to indemnify each individual defendant for all damages, including punitive damages, which aligns the parties.");  *Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 33 (E.D.N.Y. 2009) (holding that the interests of Nassau County and its officers were aligned given the final determinations of the Nassau County Police Officer Indemnification Board which found that the officer acted within the scope of their employment); *Breaud*, 2025 WL 2646113, at *5 ("With no documentation asserting the City's plans on indemnifying the individual defendants or showing that the City and the individual defendants are completely aligned in their defense theories, there is a possibility that a conflict of interest could arise in the future."); *Nagle*, 2015 WL 1525827, at *3; *Restivo*, 846 F.3d at 581 (finding as an indicator of alignment that county's position that it would fully indemnify county detective); *see also Moore*, 2025 WL 2055746, at *3 (requiring indemnification agreement to cure conflict); *Brown*, 2025 WL 1019399, at *2 (raising concern that individual defendant had informed consent based on waiver agreement because the agreement had "no mention of the City's indemnification policy – which is contained in an entirely separate document – that significantly limits its ability to pay for [the defendant's] compensatory damages involving certain claims and expressly excludes payment of attorney's fees and legal costs.").

individual defendants in this § 1983 case because representation of one client will be materially limited by his representation of the other. Plaintiff then may reurge her motion to disqualify. Should the Town decide to fully indemnify, Defendants must file *Lou* affidavits within the 14 days.

## V.   CONCLUSION

Accordingly, for the foregoing reasons,

Plaintiff Dawn Pierce's "Motion to Determine Conflict-Free Counsel" is **DENIED WITHOUT PREJUDICE** as stated herein.

**IT IS ORDERED** that Defendants notify Plaintiff in writing of the Town of Golden Meadow's decision regarding fully indemnifying the individual defendants for claims for which liability can be transferred between them within 14 days.

**IT IS FURTHER ORDERED** that, *should* the Town of Golden Meadow agree to full indemnification, within 14 days, counsel for Defendants file a separate Affidavit by each Defendant to establish informed consent has been provided, which Affidavit should confirm that counsel (a) met with the defendant; (b) explained the litigation, the claims against the defendant, and the ways in which the defendant's interest is potentially adverse to the interests of other defendants represented by the same counsel; (c) explained the ramifications of the potential conflicts and the ways in which counsel's representation of the defendant may be limited by its obligations to other defendants; (d) explained the effect of the indemnification agreement and the waiver of potential conflicts; (e) confirmed that the defendant was notified that the Town of Golden Meadow would pay for separate counsel, if necessary; and (f) confirmed that the defendant was offered an opportunity to consult with separate counsel regarding the waiver of potential conflicts before waiving same. If anything contained in these Affidavits contain confidential client

information or information subject to the attorney-client privilege or work product doctrine, the Affidavit(s) may be filed UNDER SEAL;

**IT IS FURTHER ORDERED** that, *should* the Town of Golden Meadow agree to full indemnification, within 14 days, defense counsel provide his own affidavit averring (a) that he reasonably believes that he will be able to provide competent and diligent representation to each defendant; (b) that the Meadow of Town has agreed to indemnify the individual defendants for compensatory damages, costs, and attorneys' fees; and (c) that counsel has met with each defendant and (1) explained the litigation, the claims against the defendant, and the ways in which the defendant's interest is potentially adverse to the interests of other defendants represented by the same counsel; (2) explained the ramifications of the potential conflicts and the ways in which counsel's representation of the defendant may be limited by its obligations to other defendants; (3) explained the effect of the indemnification agreement and the waiver of potential conflicts; (4) confirmed that the defendant was notified that the Town of Golden Meadow would pay for separate counsel, if necessary; and (5) confirmed that the defendant was offered an opportunity to consult with separate counsel regarding the waiver of potential conflicts before waiving same.  If anything contained in the Affidavit contains confidential client information or information subject to the attorney-client privilege or work product doctrine, the Affidavit may be filed UNDER SEAL.

New Orleans, Louisiana, this _____11th_____ day of May, 2026.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

16