**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DAWN PIERCE,<br><br>Plaintiff<br>v.<br><br>TOWN OF GOLDEN MEADOW, et al.<br><br>Defendants. | Case No. 25-cv-02178-WJC-DPC |

**Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment**

Amber Sibley, a woman in Golden Meadow, Louisiana, publicly posted lingerie pictures of herself on Twitter. The pictures were advertisements for her nude photo business.

Later, Amber got into an argument on Faecbook with her fiance's aunt, Plaintiff Dawn Pierce. To show people what Amber does, Dawn re-posted Amber's public photos on Facebook.

Amber and her fiance did not like that. They called the police. Defendant Michelle Lafont, police chief of Golden Meadow, investigated the matter. The Chief had Dawn arrested under R.S. 14:283.2, a revenge pornography statute that criminalizes the sharing of certain kinds of private, explicit images. The Chief did that even though the Chief privately confessed in a text message to an officer that she "didn't know if there was anything" she could charge Dawn with.

That arrest was wrong. The photos were not private; indeed, the Chief produced them in response to a public records request. Nor did they show the body parts that trigger the statute.

Dawn sued Chief Lafont for false arrest, among other claims. Plaintiff now moves for partial summary judgment against Chief Lafont. The premise of this motion is simple:

1. A false arrest is an arrest without probable cause.

2. There is no probable cause if the arrestee's conduct did not violate the statute. Here, Chief Lafont had Dawn arrested under a law that only applies to images that are both (a) private and (b) show specific body parts or sexual conduct.

3. The images were not private and did not show the body parts or sexual conduct.

Of these three points, Defendant Chief Lafont likely will only dispute number three. But there is no dispute of material fact about whether the images were private. Chief Lafont conceded that "if Amber Sibley herself had put these photos up on the Internet, then it wouldn't be legal to arrest Dawn Pierce for sharing them somewhere else." And in her police report, Chief Lafont notes that Amber herself posted the photos on the Internet. She also admitted at deposition that these images were public advertisements, not private photos. And she admitted that the photos were produced in response to a public records request. Thus, there is no genuine dispute that the photos were not private.

Nor is there any genuine dispute of material fact about whether the images show the requisite body parts or sexual conduct. The images were produced in response to a public records request and discovery, and so we can look and see whether the images show the statutory body parts or sexual conduct. They do not. Chief Lafont *says* she sees varying numbers of nipples (sometimes one, sometimes two, sometimes zero) in two of the images. But every other law enforcement officer deposed in this case testified that no such body parts are visible.

And the Court can look at the images directly and see that there are no nipples visible. Per the Supreme Court's directive in *Scott v. Harris,* 550 U.S. 372 (2007), this Court need not credit Chief Lafont's self-serving testimony about the images; the Court can simply look at the images.

Accordingly, this Court should either (1) recognize that these images were in no way private; or (2) review the two images and see that no nipples or genitals are visible; or (3) both. This Court should conclude that the images do not meet the statutory criteria, provided no basis for arrest, and grant summary judgment to Plaintiff on her § 1983 false arrest claim.

## I. BACKGROUND

Plaintiff Dawn Pierce and her family live just outside Golden Meadow, Louisiana. R. Doc. 6 (Answer) at ¶ 23. She has had a rocky relationship with her nephew, Dylan Rousse, and his fiancée, Amber Sibley. *Id.* at ¶ 24.

In July 2025, Dawn and Amber got into an argument on Facebook. *Id.* at ¶ 27. They exchanged unpleasant words. Ex. B (Dep. of Amber Sibley) at 13:12-17. Dawn responded by sharing on Facebook images of Amber that were already public elsewhere on the internet. *Id.* at 14:20-15:4. They were lingerie images that Amber herself had previously made public on publicly-accessible social media. Ex. B at 33:15-34:18 ("Q If you flip through that police report, all these photos that you see in there were on the public, plus section of Twitter, correct? A Yes, sir.")

Amber had used these lingerie images as advertisements, posting them on Twitter and on OnlyFans[1] (but not behind the paywall), inviting people to pay a subscription to her account on OnlyFans to see fully nude photos. Ex. B at 19:21-24 ("Q So these were two of the photos that were posted to your Twitter account to advertise your OnlyFans business, correct? A Correct.")

Mr. Rousse and Amber were angry that Dawn had re-posted these already-public images on Facebook. *Id.* at 14:20-15:4. They called the police. *Id.* at 15:9-12.

---

[1] OnlyFans is an online platform "that enables creators, who are largely women, to provide subscription access to pornographic content to users, who are largely men." *In re Cintron,* 265 Md. App. 481 (Ct. App. Md., May 6, 2025).

Defendant Michelle Lafont, Chief of the Golden Meadow Police Department (GMPD), investigated the matter. Ex. A (Dep. of Chief Lafont) at 15:22-25. Amber sent her screenshots of the lingerie images that Dawn had re-posted to Facebook. *Id.* at 111:4-10. Amber told the Chief that the images were already "public." Ex. B at 14:20-15:8 ("[Q] it's accurate to say that you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . [A] Absolutely. Q And that's what you told the police chief of Golden Meadow, correct? A Correct.")

Amber was also clear with the Chief that <u>she</u> had been the first person to post the photos online. Ex. B at 67:21-25 ("Q You were clear with the chief that you had been the person to post these pictures to OnlyFans? It wasn't like someone stole them from you and posted them? A Correct, yes.") Chief Lafont told Amber that she wasn't even sure if what Dawn did was against the law. Ex. A at 70:12-15 ("Q Right. So at that point you weren't even sure if what Dawn was accused of was even a crime. Correct? A Correct.")

Chief Lafont found the matter "funny" and "a little annoying." Ex. A at 73:24-74:8. She and GMPD Sgt. Tristin Gaspard exchanged texts laughing about the facts and suggesting that Amber "needs to chill." Ex. E (Gaspard Dep.) at 54:18-22.

Although the Chief was not sure Dawn had broken any law, Amber and her fiancé kept following up. The Chief was "frustrated that people were kind of nagging her about this." Ex. B at 26:13-16. Chief Lafont proceeded with a criminal investigation. She consulted with a Lafourche Parish Sheriff's Office lieutenant. She described the photos to him, but did not show them to him. Ex. A at 79:14-16. The lieutenant suggested Chief Lafont look at R.S. 14:283.2, a "revenge porn" statute which criminalizes the "nonconsensual disclosure of a private image." *Id.* at 18:4-11.

The images, however, did not in any way meet the criteria of R.S. 14:283.2. For the sharing of an image to violate R.S. 14:283.2, the image has to both (1) be private and (2) show "intimate parts" or "sexual conduct." Intimate parts are defined as the "fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, or anus," or nipples for a woman. R.S. 14:283.2(C)(4). Sexual conduct is defined as "actual or simulated vaginal, anal, or oral sexual intercourse; deviant sexual intercourse; sexual bestiality; masturbation; sadomasochistic abuse; or exhibition of the genitals." *Id.* at (C)(5).

The images Dawn Pierce shared, however, were not private – Amber Sibley *herself* had posted them to publicly-accessible parts of the internet as advertisements. Ex. B at 17:25-18:4. This was obvious from the face of them. Some of them said "SUBSCRIBE TO SEE USER'S POSTS" indicating they were not behind a paywall. Ex. A at 56:1-8. Others had a button allowing a viewer to "Share this post with anyone, even if they aren't on X yet," also indicating that they were not private. Ex. E at 31:14-32:4. Nor did they show intimate parts or sexual conduct – there are no genitals, pubic area, anus, or nipples visible in the images. Ex. C (Dep. of Lt. Traigle) at 32:8-16.

Despite Dawn's actions not being criminal, Chief Lafont decided to have her arrested. Ex. A (Dep. of Chief Lafont) at 16:1-3 ("Q And you obtained a warrant and then caused her to be arrested. Correct? A Yes, sir.") The Chief falsely told a judge that Dawn had shared "private images of Amber in see through underwear"[2] and obtained a warrant for Dawn's arrest.

[2] Chief Lafont swore under oath that the images show Ms. Sibley in "see through negligees" and "see through underwear." They do not. Chief Lafont admitted that in her deposition. See Ex. A at 27:22-24 ("Q Okay. Because this is not a fully transparent underwear. Correct? A Correct.") Chief Lafont also swore that the pictures were "private images." They were not. Chief Lafont did not show the photos to the judge. Ex. A at 88:11-13. Nor did she tell the judge that the images were "advertisements for Amber's business" – even though Chief Lafont knew that at the time. Ex. A at 98:2-17. See also Ex. E (Gaspard Dep.) at 23:7-9 ("Q So it's not see-through underwear. Right? A Correct."); Ex. D (Kreamer Dep.) at

The Chief then had a GMPD officer, Sgt. Tristin Gaspard, execute a felony arrest of Dawn. Ex. A at 81:8. For an unknown reason, the Chief decided the arrest had to happen "that night." Ex. E at 40:3-6.

Sgt. Gaspard had to seek the assistance of LPSO, because Dawn Pierce did not live in Golden Meadow. Ex. A at 102:3-23. A little after 8:00 p.m., Sgt. Gaspard and LPSO Sgt. Michael Kreamer arrested Dawn at her home (Ex. P at 2) in front of her children. Dawn "did not resist arrest in any way" and was "completely compliant with officer instructions." Ex. D at 21:16-21; Ex. E at 43:14-16.

Dawn Pierce spent time in jail before a family member could obtain the $10,000.00 bond to release her. See Ex. P at 17 (setting $10,000.00 bond).

After Dawn was arrested, Chief Lafont texted Sgt. Gaspard that she "didn't know if there was anything I could charge [Pierce] with." Ex. E at 34:7-17 ("A I'm one hundred percent sure this was after the arrest. Correct."). Sgt. Gaspard testified that this was "a red flag" for him, that the Chief had him "arrest someone and then she said she wasn't sure if there was anything that that person could be charged with." Ex. E at 36:12-16. Gaspard's said his concern was that "if you don't have enough evidence, I mean, you shouldn't, you know, arrest somebody." Ex. E at 36:18-22.

Not long after the arrest, the District Attorney refused the charges. R. Doc. 6 (Answer) at ¶ 64. But the damage was done. Dawn had no criminal history whatsoever prior to this incident. She had a "100 percent clean criminal record." Ex. A at 130:13-19. Now, her NCIC file permanently shows a felony arrest, which will show up on commercial background checks and negatively affect her employment in the future. Ex. A at 130:23-25, 131:17-24.

---

34:4-12 ("Q Okay. But the underwear is not see -- you wouldn't describe it as see-through underwear, right? . . . THE WITNESS: I wouldn't describe that as see-through underwear; you're correct.").

And even knowing everything she knows now, Chief Lafont would *still* arrest Dawn Pierce if faced with the same situation:

> Q Okay. So, knowing everything you know today, would you do all the same things with regards to Dawn Pierce, all over again?
>
> A Absolutely.

Ex. A at 109:14-17.

A summary of the supporting exhibits is as follows:

- Ex. A – Deposition of Chief Michelle Lafont
- Ex. B – Deposition of Amber Sibley
- Ex. C – Deposition of Lt. Ray Traigle, Lafourche Parish Sheriff's Office
- Ex. D – Deposition of Sergeant Michael Kreamer, GMPD
- Ex. E – Deposition of Tristin Gaspard, GMPD
- Ex. F – Deposition of Town of Golden Meadow 30(b)(6) witness Chief Lafont
- Ex. G – Photo circled by Chief Lafont
- Ex. H – Photo circled by Chief Lafont
- Ex. M – Higher resolution version of the photo in Ex. H
- Ex. N – Higher resolution version of the photo in Ex. G
- Ex. P – Chief Lafont's investigatory report
- Ex. ZN – Defendants' answers to discovery requests

## II. LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc., Rule 56(a).

Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). The non-movant must offer "specific facts" rather than "mere allegations or denials" in order to defeat summary judgment. *Id.* The "mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Rogers v. Smith,* 20-cv-517, R. Doc. 195 (E.D. La., May 13, 2022), *quoting Boudreaux v. Banctec, Inc.,* 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

Relevant here, in a false arrest case, when a person is arrested under a law that cannot apply to that fact pattern, courts will grant summary judgment to plaintiff. *Rogers v. Smith,* 20-cv-517, R. Doc. 195 (E.D. La., May 13, 2022) (granting summary judgment to plaintiff arrested under Louisiana's criminal defamation statute, which could not apply to those facts), *affirmed* 2023 U.S. App. LEXIS 20871 (5th Cir. Aug. 9, 2023) (*per curiam, unpub.*), *cert denied* 144 S. Ct. 501 (2023).

## III. DISCUSSION

### A. This Court should grant Plaintiff partial summary judgment on her false arrest claim because Plaintiff's conduct did not violate the statute.

To prevail on a § 1983 false arrest claim, a plaintiff must show that the police "did not have probable cause to arrest" them. *Haggerty v. Tex. S. Univ*., 391 F.3d 653, 655 (5th Cir. 2004). False

arrest is decided on an objective standard; it is not necessary for defendants to be subjectively aware that an arrest is unconstitutional to be liable. *Whren v. United States*, 517 U.S. 806 (1996); *see also Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir.) (in determining whether there was probable cause to arrest, courts consider the "facts within the officer's knowledge-- not whether the officer was aware of the legal consequences of the facts."). There is no probable cause if "the conduct complained of is not a criminally actionable offense." *Rogers v. Smith*, 20-cv-517, R. Doc. 195 at *13 (E.D. La., May 13, 2022); *see also US v. Lopez-Valdez*, 178 F. 3d 282 (5th Cir. 1999) (if actions were "not a violation of state law, there was no objective basis for probable cause justifying the stop."). To determine probable cause, courts compare the arrestee's conduct to the text of the relevant criminal statute. *Club Retro, LLC v. Hilton*, 568 F. 3d 181, 205-206 (5th Cir. 2009) (comparing arrestee's conduct to R.S. 26:371(B) to determine if probable cause existed); *U.S. v. Granado*, 302 F. 3d 421, 423-424 (5th Cir. 2002) (comparing arrestee's conduct to text of Texas Transportation Code).

A warrant can shield an officer from liability in some circumstances, but not where the officer provides false information or omits important information from the judge. *Franks v. Delaware*, 438 U.S. 154 (1978). A warrant will also not shield an officer from a suit where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). And "an officer charged with enforcing Louisiana law[] can be presumed to know that law." *Rykers v. Alford*, 832 F.2d 895, 898 (5th Cir. 1987).

Here, for Dawn's sharing of an image to violate R.S. 14:283.2, the image had to both (1) be private and (2) show "intimate parts" or "sexual conduct." Under the statute, intimate parts for

a woman are defined as the genitals, pubic area, anus, or nipples. Sexual conduct is defined as "actual or simulated vaginal, anal, or oral sexual intercourse; deviant sexual intercourse; sexual bestiality; masturbation; sadomasochistic abuse; or exhibition of the genitals." But as discussed below, the images Chief Lafont had Dawn arrested for were *neither* private *nor* had the requisite visible body parts.

i. The motion should be granted because the images were not remotely "private."

R.S. 14:283.2 only criminalizes sharing certain "private" images. Specifically, an image can only be criminal under the statute if the person who discloses it "obtained it through unauthorized access or under circumstances in which a reasonable person would know or understand that the image was to remain private" and the "person who discloses the image knew or should have known that the person in the image did not consent to the disclosure of the image." R.S. 14:283.2(A)(2)-(3).

Chief Lafont understood that the statute only criminalized the sharing of "private" images. Ex. A at 20:2-8. She agreed that if "if someone takes a picture of themselves and then puts it publicly on the Internet, on, say, Twitter or Instagram or somewhere else, that's not a private image." *Id.* at 20:10-19. Specifically, Chief Lafont agreed that if "an image has been shared on the Internet by the person who it's of, it can't be the basis for an arrest under the statute." *Id.* at 21:16-24. Even *more* specifically, Chief Lafont agreed that "if Amber Sibley herself had put these photos up on the Internet, then it wouldn't be legal to arrest Dawn Pierce for sharing them somewhere else." *Id.* at 53:22-54:4.

Chief Lafont knew Amber had posted these photos online. Amber told her so. Ex. B at 67:21-25. And Chief Lafont admitted it in her police report:

## Primary Narrative By MICHELLE LAFONT, 07/11/25 12:23

On 07/08/2025, at approximately 1243 hours, I Chief Michelle Lafont received a call from headquarters to handle a complaint over the phone with Amber Sibley about photos posted to her OnlyFans page being screenshot and posted on Facebook. I called Amber (W/F, 1503 S. Bayou Dr. Golden Meadow, 985-291-0503) who stated that she and her fiancee made an OnlyFans webpage and posted pictures of her in negligees and her fiance's nanny Dawn Pierce (W/F, 8/17/1973, 200 W 40th St. Larose, 985-677-0205) posted the pictures to her Facebook page. Ms. Sibley stated that a guy who has an account screenshot her pictures and sent them to Ms. Pierce who then posted the pictures on her Facebook page in retaliation for being mad at them. Ms. Sibley wanted her to take the posts down and wanted charges pressed against Ms. Pierce. After reading the law and finding that the OnlyFans page is a subscribe account and the pictures were obtained from someone who had an account that is private we felt the charge was appropriate for Ms. Pierce's actions. See law below:

Ex. P at 1.

There were other indicia that the photos were public. Some of the photos had a button that said "Subscribe to see user's posts," and Chief Lafont understood that this indicated that the photos were "not private" – that they were instead "public posts by Amber Sibley." Ex. A at 56:1-15. Chief Lafont conceded that some of the posts had a button that said "Share this post with anyone, even if they aren't on [Twitter] yet," indicating further that these lingerie photos were not private. Ex. A at 58:5-13. Cf., Ex. P at 9.

Finally, Chief Lafont testified that she understood that Amber Sibley was posting these lingerie photos <u>as public advertisements</u>:

BY MR. MOST:

Q Okay. And so, you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct?

MR. DETWEILER:

Objection.

You can answer.

THE WITNESS:

Yes, sir.

Ex. A at 57:10-19.

Notably, Defendants' conduct suggests they do not seriously contend that these photos are in any way private. Prior to the filing of this lawsuit, they produced them in response to a public records request. Ex. F at 22:6-23:6. As Chief Lafont admitted:

```
Q.   So you thought it was a crime for Dawn
    Pierce to share these photos, correct?
A.   Correct.
Q.   And you arrested her for that crime?
A.   Yes, sir.
Q.   But then you gave them to the City Attorney
    to produce in a Public Records Request?
A.   Yes, sir.
```

Ex. F at 23:7-14.

She also admitted that no party has moved for a protective order in this case, and so "anybody could just file [the photos] into the public record at this point." *Id.* at 33:13-20. And yet she simultaneously contends that it is still illegal to share the photos, and that "anyone who shares those photos should be arrested." *Id.* at 16:19-17:7. She admitted that she has not made any "effort to limit the distribution of these potentially sensitive photos in any way." *Id.* at 37:12-22.

In short, Chief Lafont conceded that it would not be legal to arrest Dawn Pierce if the images were public, or were posted online by Amber Sibley herself. Chief Lafont also conceded that she knew the images were public and were posted online by Amber Sibley herself. The Chief even concedes that she knew that these images were public advertisements, and the Chief handed over the photos in response to a public records request. But she had Dawn Pierce arrested anyway under a statute that cannot, by its own terms, apply to public advertisements or public records.

Summary judgment should issue.

ii. <u>The motion should be granted because the images did not have the requisite visible body parts</u>.

Chief Lafont agrees that under R.S. 14:283.2, if "an image doesn't show any genitals, pubic area, anus, or nipples, then it can't be the basis for an arrest under the statute." Ex. A at 21:11-15.

In discovery, Plaintiff asked Chief Lafont to identify any images she contends violate R.S. 14:283.2. She identified two: the photos with circles provided here as Exhibits G and H. See Ex. ZN (Defendants' Discovery Responses) at 2. She confirmed at deposition that one nipple in each of the two photos was "the basis for the arrest of Dawn Pierce." Ex. A at 53:15-19.

**Exhibit G**




**Exhibit H**




Higher resolution versions of these photos are attached as Exhibits N and M:

**Ex. N**



**Ex. M**



Chief Lafont has reviewed these photos several times, but cannot consistently say what body parts she sees, or how many. For example:

- Sometimes she "sort of" saw nipples in the images.[3] Sometimes she saw two nipples in an image.[4] Sometimes she saw one.[5]

- Sometimes she could see Amber had no pubic hair.[6] Sometimes, just seconds later, looking at the same picture, she could *not* see whether Amber had pubic hair.[7]

[3] Ex. A at 26:8 ("Sort of.").
[4] *Id.* at 26:13 ("I can see nipples."); *see* Ex. G (circling two nipples); Ex. A at 149:1-3 ("Q And then later, when you were doing the circling, you saw two nipples? A Well, I circled what I saw. Yes, sir.").
[5] Ex. A at 28:23-29:1 ("can you see one or more nipples, or no nipples, in this? A. One."); 53:15-19 (Q Okay. But these are the only two body parts, this one nipple in two photographs, that you recall being the basis for the arrest of Dawn Pierce. Correct? A I believe so.").
[6] *Id.* at 27:3-4 ("Q You can tell that she has no pubic hair? A Correct.").
[7] *Id.* at 27:19-21 (agreeing that "you can't tell if she has a lot of pubic hair, a little bit, or none.").

- Sometimes she saw Amber's vagina in an image.[8] Sometimes she did not.[9]
- Sometimes she saw "sexual conduct" in the photos.[10] Sometimes she saw no sexual conduct in the photos.[11]

Chief Lafont even says she saw nipples that other people cannot see:

Q. And you can see nipples that three other officers cannot see?
A. I did, yes, sir.

Ex. F at 19:16-18.

If we did not have a copy of the images, Chief Lafont's implausible testimony might create a material dispute of fact that would defeat summary judgment on this issue. But the Supreme Court has indicated that things are different when a court is able to view a video or image itself.[12] In such a situation, a court need not credit a party's testimony if it is "blatantly contradicted" by the images. Here, Chief Lafont's testimony about a shifting number of visible nipples and vaginas

---

[8] Ex. A at 135:11-16 ("Q You can see the vagina? A You can see the area, yes. Q What do you mean by "the area"? Do you mean the vagina, do you mean the labia? What do you mean? A The vagina."). Significantly, Chief Lafont testified that she could see "the vagina" in one image – but was unable to see whether there were internal or external labia (*id. a*t 135:19-20; 99:7-10), a proposition that is anatomically impossible.

[9] *Id.* at 28:7-9 ("Q So, none of the body parts that violate the statute in her underwear area. Correct? A Correct.").

[10] *Id.* at 133:22-134:2 ("Q Okay. And [in interrogatories] you were asked to identify photos with sexual conduct. Right? A Yes. Q Okay. And you said photos one and two that you circled. Right? A Correct.")

[11] *Id.* at 134:8-12 ("There is no sexual conduct.").

[12] *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (stating that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). Courts have applied the *Scott* rule to both videos and images. *See Ramirez v. Killian*, 113 F. 4th 415, 421 (5th Cir. 2024) ("we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."), *citing Scott v. Harris*; *see also Garrett v. ESPN, Inc.*, 2025 LX 94918, at *16 (D. Mass. May 7, 2025) (applying *Scott* to images); *Munoz v. Bradbury*, 2024 U.S. Dist. LEXIS 6726, at *12 n.4 (N.D. Ill. Jan. 12, 2024) (applying *Scott* to images); *Phillips v. Donahoe*, 2013 U.S. Dist. LEXIS 160537, at *43 (W.D. Pa. Nov. 7, 2013) (applying *Scott* to images).

is blatantly contradicted by the imagery. The Court need only review the images and see that no nipples or vaginas are visible.

Indeed, every other law enforcement officer testified that these images could *not* be the basis for an arrest. Lt. Traigle of LPSO – the officer who Chief Lafont consulted – reviewed the images for the first time at deposition. He testified that he did not see any of the statutorily-defined intimate parts in the images. Ex. C at 25:4-26:1. He agreed that sharing these images "wouldn't be illegal under this statute." *Id.* at 26:3-10. He testified that he would not "be comfortable" with one of his deputies executing an arrest for sharing the photos, because it "might be a false arrest." *Id.* at 33:7-34:7.

Same with Sgt. Tristin Gaspard, the GMPD officer who Chief Lafont directed to have Dawn arrested. At deposition, he reviewed the photos and did not see any intimate parts or sexual conduct as defined in that statute. Ex. E at 21:20-24:12. Looking at Exhibits M and N, he testified that he would not have been able to arrest someone based on those photos. Ex. E at 25:24-26:4.

Sgt. Kreamer – the LPSO officer who helped the arrest – agreed. At deposition, he reviewed the photos for the first time and did not see any intimate parts or sexual conduct as defined in that statute. Ex. D at 30:5-32:19. He testified he would not have been able to arrest anyone based on those photos. *Id.* at 30:15-24; 35:25-36:10.

Chief Lafont is the only law enforcement officer who claims to see nipples in the photos. But what Chief Lafont may have *believed* she saw is irrelevant. That is because the Fourth Amendment is judged on an objective standard, and so an officer's "incorrect belief" about a violation of law is insufficient for probable cause. *U.S. v. Granado*, 302 F. 3d 421, 423 (5th Cir. 2002); *see also U.S. v. Cole*, 444 F. 3d 688, 689 (5th Cir. 2006) ("Our research reveals no case in

this circuit which has relied on the good faith exception to justify a traffic stop when the police officer erroneously believed the conduct he observed was a traffic violation."). The Fifth Circuit has explained that this rule exists in part because of the "boundless" potential for abuse. *U.S. v. Lopez-Valdez*, 178 F. 3d 282, 289 (5th Cir. 1999).

No reasonable jury could view the images and see nipples that are not there. Given that the images confirm that no probable cause existed to arrest Dawn, summary judgment should issue on her Fourth Amendment claim.

**iii.** The motion should be granted just as in *Rogers v. Smith,* in which a section of this Court granted plaintiff's summary judgment when a person was arrested without probable cause.

In many ways, this case is very similar to *Rogers v. Smith,* 20-cv-517 (E.D. La.). In that case, just like this one, plaintiff Jerry Rogers engaged in online communication that some people found unwelcome. Mr. Rogers' communication was reported to law enforcement. Just like here, law enforcement investigated, looked at the law, obtained a warrant, and then caused an arrest of Mr. Rogers. And as here, the law that Mr. Rogers was arrested for (criminal defamation) could not possibly apply to his fact pattern.[13] Mr. Rogers sued and a section of this Court concluded at summary judgment that Mr. Rogers was "entitled to judgment in his favor on his claim for § 1983 false arrest and state law false arrest and false imprisonment" against the officers involved in the investigation and arrest. *Id.* at *13. Defendants appealed. The Fifth Circuit affirmed the grant of summary judgment to Mr. Rogers less than nine hours after oral argument. *Rogers v. Smith*, 2023 U.S. App. LEXIS 20871 (5th Cir. Aug. 9, 2023) (*per curiam, unpub.*) Defendants sought a writ of certiorari. It was denied. *Smith v. Rogers*, 144 S. Ct. 501 (2023).

[13] In Mr. Rogers' case, that was because Louisiana's criminal defamation statute could not apply to defamation against public officials. *Rogers v. Smith,* 20-cv-517, R. Doc. 195 at *12 (E.D. La., May 13, 2022).

The same result should follow here. Dawn engaged in online communication that her nephew and his fiancee found unwelcome. They reported it to the police. Chief Lafont investigated, looked at the law, obtained a warrant, and then caused Dawn to be arrested. The law that she arrested Dawn under, however, could not possibly apply to the fact pattern – both because the images she shared were not private and also because they did not show the statutorily-required body parts or sexual conduct. As a result, there was no probable cause. And so just as in *Rogers v. Smith*, this Court should grant summary judgment to Dawn on her § 1983 false arrest claim.

## CONCLUSION

For the reasons above, Plaintiff asks that this motion be granted. This Court should grant partial summary judgment to Plaintiff on her § 1983 false arrest claim.

Respectfully submitted,

*/s/ William Most*
HOPE PHELPS (La. Bar No. 37259)
WILLIAM MOST (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 500-7974
Email: hopeaphelps@outlook.com
*Counsel for Plaintiff, Dawn Pierce*