EXHIBIT

A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

****************************************************************

| | |
|---|---|
| DAWN PIERCE | CIVIL ACTION<br>NO. 25-2178 |
| VERSUS | SECTION "C"(2)<br>JUNE 17, 2026 |
| GOLDEN MEADOW TOWN, ET AL | |

****************************************************************

TRANSCRIPT OF MOTION HEARING
HEARD BEFORE THE HONORABLE DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| FOR PLAINTIFF: | William B. Most, Esq.<br>MOST & ASSOCIATES<br>201 St. Charles Avenue<br>Suite 2500<br>New Orleans, LA 70170 |
| FOR DEFENDANTS: | Keith M. Detweiler, Esq.<br>NIELSEN & TREAS, LLC<br>3838 N. Causeway Boulevard<br>Suite 2850<br>Metairie, LA 70002 |
| Official Court Reporter: | Alexis A. Vice, RPR, CRR<br>500 Poydras Street, HB-275<br>New Orleans, LA 70130<br>(504) 589-7777<br>*Alexis_Vice@laed.uscourts.gov* |

*PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY. TRANSCRIPT PRODUCED BY COMPUTER.*

OFFICIAL TRANSCRIPT

[signature] 9/17/2026

[signature] 9/17/26

[signature] 9-23-26

P-R-O-C-E-E-D-I-N-G-S

**(JUNE 17, 2026)**

**(MOTION HEARING)**

(The Court was called to order.)

**THE COURT:** Good morning. You may be seated.

**DEPUTY CLERK:** We're here on Civil Action No. 25-2178, *Pierce versus Golden Meadow Town*.

Counsel, please come forward and make your appearance for the record.

**MR. MOST:** William Most for the plaintiff.

**MR. DETWEILER:** Good morning, Your Honor, Keith Detweiler on behalf of the defendants. And present in court are Mayor Bouziga, Chief Lafont, and Officer Gaspard, along with the town attorney Bryce Autin.

**THE COURT:** Okay, perfect, thank you. Thank you for bringing all the clients. You all may be seated.

All right, we are here today in this case, plaintiff filed suit alleging a variety of state and federal claims against the Town of Golden Meadow, Mayor Bouziga, Police Chief Lafont, and Officer Gaspard after she was arrested based on reports by her nephew and his fiancee that the fiancee's private lingerie photos had been posted online by the plaintiff Dawn Pierce. The defendants dispute the allegations and raise numerous defenses.

We're here today on plaintiff's reurged motion to determine conflict-free counsel. The plaintiff argues the defense counsel cannot properly represent both the Town, under *Monell* theories of liability, and the individual defendants in their individual or personal capacities because that creates a conflict of interest.

As you all know, the lawyers certainly know, and I don't know, the clients may know as well, Section 1983 may be brought against town officers in their personal or official capacities or against governmental entities such as the town. Personal capacity suits seek to impose personal liability on the employee or officer for actions taken under color of state law. It's only the performance of official duties that create liability for personal capacity claims under 1983. An employee or an officer's private actions are not under color of state law and thus not actionable under 1983. An officer sued in his personal capacity may have personal immunity defenses such as qualified or good faith immunity for the performance of discretionary functions.

If the plaintiff succeeds on a personal capacity claim, that victory is against the individual defendant and not the entity that employs him. So the individual could be liable to satisfy the judgment, not the town employer.

In contrast, to hold the town liable under 1983 for an officer or an employee's conduct, the plaintiff cannot

simply rely on respondeat superior or vicarious liability. Rather, the plaintiff would have to show that the town itself caused the constitutional violation at issue through a policy or custom carried out by that employee. And unlike officers sued in their individual capacity, towns don't have immunity from damages flowing from their constitutional violations. And because the town is only liable under Section 1983 when the town itself is the moving force behind the constitutional deprivation, the plaintiff must show the officer's conduct was the performance of an official duty. The municipality is not liable if the conduct at issue was private conduct because there would be no constitutional injury that it caused.

So with that kind of background, we have to look at the Rules of Professional Responsibility. Under Rule 1.7, a lawyer shall not represent a client if the representation involves a concurrent conflict which exists because the representation of one client will be directly adverse to another client, or there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client.

Notwithstanding a concurrent conflict of interest, a lawyer may represent a client if, one, the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; two, the representation is not prohibited by law; three, the

representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation; and four, each affected client gives informed consent.

Of course, a person has the right to counsel of their own choosing, and I respect that right, and I'm going to try to honor that. What I need to determine here today is whether or not we have a material limitation conflict in this case that would present a significant risk that representation of one client would be limited by the lawyer's responsibilities to another.

If there's a significant risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for a particular client will be materially limited by that lawyer's obligations to another client, then we have -- that material conflict would foreclose the alternatives that would otherwise be available. The mere possibility of a future harm does not itself require disclosure or consent. The Court has to consider the likelihood that the difference in interests will eventuate, and if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering the alternatives or foreclose of a course of action that reasonably should be pursued on behalf of a client.

Now in the Section 1983 context, the Fifth Circuit

has held that there are conflicts that may arise in certain situations that are open and obvious. So the Court has to even take these up on its own because it's just inherent in this representation. It doesn't mean you can't do it. It only means that I have to be very sensitive to the situation of the potential conflict, and ensure that while respecting a person's right to counsel of their choosing, the representation is still permitted by law.

And the two primary conflicts in a 1983 case is, one, the officer or the employee may be able to transfer liability to the town by demonstrating their actions were taken in accordance with official policy or by asserting a good faith immunity. So those, that avenue benefits the individual clients, potentially to the detriment of the town.

In contrast, the town might want to avoid liability for the officer's conduct by arguing that the officers were acting outside of the scope of their official duties or were unofficial and not pursuant to a policy. That course of action benefits the town to the potential detriment of the individuals. So that's the issue and concerns that we're here today.

Plaintiff's counsel has suggested that defense counsel's representation would be materially limited in this case representing all the defendants; so they can't consent to the conflict.

But in this case, the answer that the Town filed and the defendants assert that the defendants acted in their official capacity, and all invoke Louisiana Revised Statute Title 9, Section 2798.1(B) which only applies to acts committed within the course and scope of the employee's lawful powers and duties. And although the Town has denied vicarious liability, that doesn't necessarily mean that they're denying that the employees acted in the course and scope of their employment. They could simply be having a unified position that the defendants did nothing wrong and acted in the course and scope of their employment. And then it is true the defendants have asserted good faith and qualified immunity which could result to the detriment of the Town.

So when a conflict like this exists, I have to make sure that it is a consent that can be -- it is a conflict that can be consented to and that the consent is knowing and voluntarily waived.

So I'm going to start out first and ask Mr. Detweiler a couple of questions to confirm that he reasonably believes that he can represent all of these clients, the representation isn't prohibited by law, it doesn't involve an assertion of claims against the others. So I need to make sure Mr. Detweiler reasonably believes he can do it, and then I need to confirm all the defendants give informed consent.

Mr. Most, did you have something before I start my

inquiry?

**MR. MOST:** Yeah, just a suggestion, if you don't mind.

**THE COURT:** Certainly.

**MR. MOST:** So, Your Honor, you wrote in R. Doc. 27 in your order that if there is a decision to not fully indemnify the individuals, you wrote, quote, "that decision could well establish the existence of a material limitation conflict."

**THE COURT:** It could.

**MR. MOST:** It could. So I would suggest, if appropriate, I think three questions might be relevant to your inquiry here which is the Town said that it is not fully indemnifying, but it has not yet said whether it is partially indemnifying, right, and that might be relevant.

**THE COURT:** Right, I have some questions about that. Specifically, a couple of my questions I'll be asking is, is there a policy in place on indemnity, or is there a separate written agreement in this case on indemnity. But that's in my colloquy for Mr. Detweiler.

**MR. MOST:** Perfect. And I don't know if it's relevant for you to inquire why there was a change. It seems like there was a change in conduct. The April 9th communication said that they were preparing the affidavits, the *Lou v. Lopinto* affidavits, and then it seems like there was a change. I don't know if that's relevant. You suggested sort of a totality of the circumstances inquiry.

**THE COURT:** Yeah, I mean, I don't think why we got here or how we got here is important. I just want to make sure we're here now and that we have the ability to confirm the conflict is something that can be consented to and waived.

**MR. MOST:** Thank you, Your Honor.

**THE COURT:** You have one more question?

**MR. MOST:** Oh, if it's a partial indemnification for certain things, but not other things, it might be relevant to ask why there's a choice because that question of why may be relevant to the totality.

**THE COURT:** Oh, okay. Well, I think I need to hear what they are first. If Mr. Detweiler says, "We're not indemnifying for punitives," I'm going to say that doesn't surprise me because towns typically can't indemnify for punitives. So that's not going to merit any further discussion, and that in itself would equal a partial indemnification because it's not everything; right?

**MR. MOST:** Yep. Thank you.

**THE COURT:** All right. So let me go ahead, Mr. Detweiler, now I'll turn to you if it's okay. Do you reasonably believe that you can competently and diligently represent each individual defendant as well as the Town in this case?

**MR. DETWEILER:** Absolutely. Judge, I've been doing this for 36 years, and this is probably one of the easiest

decisions on that question.

**THE COURT:** Okay. Have you met with each defendant to explain the litigation, the claims against them, and the ways in which each defendant's interest is potentially adverse to the other defendants or the Town?

**MR. DETWEILER:** Yes.

**THE COURT:** Okay. Because in this case, you have allegations that Officer Gaspard did an arrest. You have allegations that Chief Lafont originally said there's no charges, but then later, after the mayor -- I'm saying allegations. I'm not saying these are facts. That the mayor allegedly called her and said, "I don't care. Get a warrant, and arrest this woman," not such words, but those are the allegations. And then she was arrested.

Have you gone over with each defendant how those conflicts may arise if, let's say, Chief Lafont says, "You're right, I didn't want to arrest this woman, but the mayor made me do it." Not that it's going to happen, but --

**MR. DETWEILER:** Your Honor, those situations will not happen because those are total fabrications. And we have been through the allegations and what actually occurred many, many times; and the allegations are far from what actually occurred.

**THE COURT:** Okay, all right. But you've explained the ramifications of the allegations being made?

**MR. DETWEILER:** Yes.

**THE COURT:** Okay, all right. And you've explained how your obligations to pursue one course of action might be impacted by your obligations to pursue an opposing course of action for another defendant?

**MR. DETWEILER:** We've discussed that. But again, in my experience, I don't see that -- I don't foresee that happening in any way in this case.

**THE COURT:** Okay, all right. Factually on this?

**MR. DETWEILER:** Correct.

**THE COURT:** All right. Have you explained conflict waivers to the clients?

**MR. DETWEILER:** We went into it a bit. Maybe not to the Court's satisfaction. Honestly --

**THE COURT:** Well, I'll ask them some questions too.

**MR. DETWEILER:** -- the question of preparing affidavits is we were drafting affidavits. Once the town council made its decision, not knowing what an ultimate judgment might be, that it couldn't guarantee, then we didn't go through those affidavits the way we might have had there been the decision to just a blanket, full indemnity.

**THE COURT:** Does the Town have a policy on indemnification of defendants, individual defendants in cases such as this?

**MR. DETWEILER:** They have a policy as to like officials where there's indemnification. As to the individual

employee, there is an indemnity coverage policy from Risk Management, Incorporated. It doesn't necessarily cover a finding of individual liability if the person is outside the course and scope of their employment, but it covers any settlements or typically any payments of judgments. I've never seen an instance where they didn't honor that.

**THE COURT:** Okay. It excludes if they're outside the course and scope, but that's not an assertion being made by you in this case?

**MR. DETWEILER:** Correct.

**THE COURT:** All of the defendants agree that the employees were acting within the course and scope of their employment?

**MR. DETWEILER:** Yes.

**THE COURT:** Okay. And are there any limitations on what is indemnified to the elected officials or the employee?

I mentioned punitive damages. Typically, that's not something.

**MR. DETWEILER:** Typically, punitive damages would not be covered.

**THE COURT:** Right. Any other limitations that you're aware of?

**MR. DETWEILER:** Not that I'm aware of as I stated.

**THE COURT:** Have you gone over the policy on indemnification or the insurance policy with each defendant so

that they are aware of what the limitations may be on the indemnity?

**MR. DETWEILER:** I did not go through the policy with them.

**THE COURT:** Okay. But you could do that with them?

**MR. DETWEILER:** Yes.

**THE COURT:** And if any of the individual defendants chose to have separate counsel, is that something the Town would pay for?

**MR. DETWEILER:** Typically, RMI would appoint counsel, and I've talked to them about it. If that's ultimately the decision of the Court that that's something that they need to handle, that's something they usually do.

**THE COURT:** And RMI is the insurer?

**MR. DETWEILER:** Yes. And what they usually -- what they do for every case is go through and if they see a potential conflict, they'll appoint more than one lawyer at that time. And up to this date, they don't see any potential conflict based on what we all know.

**THE COURT:** Okay, all right. So there is the ability for separate counsel paid for through the policy?

**MR. DETWEILER:** Correct.

**THE COURT:** And does that apply both to the elected officials and the employee or just --

**MR. DETWEILER:** Yes.

**THE COURT:** Okay, perfect.

**MR. DETWEILER:** And the Town.

**THE COURT:** And the Town.

**MR. DETWEILER:** Yes, ma'am.

**THE COURT:** Do any of the individual defendants have any questions about the scope of indemnity?

I guess you haven't gone through that with them yet?

**MR. DETWEILER:** I didn't go through the policy, no.

**THE COURT:** What about decisions on how to pursue the case? On defenses to raise or whether to appeal on issues, is that something that all of the parties are consenting to; or is that something that the Town is deciding, and the individuals are accepting the Town's decision?

**MR. DETWEILER:** I mean usually that's something that is in my purview in handling the case and what I recommend to them and what I also recommend to the insurer.

**THE COURT:** And if there's a conflict in those kinds of decisions, what happens if some want to appeal and some don't?

**MR. DETWEILER:** That has never come up in my 36 years.

**THE COURT:** Well, I suggest you can talk about that with your clients --

**MR. DETWEILER:** Sure.

**THE COURT:** -- and decide how y'all want to handle it; so they can understand what may happen because it may

eventuate. There may be a situation where there's a judgment against one of the defendants and not others, and the defendant who has the adverse judgment wants to appeal and the others don't because they don't want a potential risk of having a new trial.

**MR. DETWEILER:** Right.

**THE COURT:** So in any event, that's something that should be discussed.

All right, after having those discussions, other than the need to go over the terms of the indemnity and the potential scope of the indemnity, and assuming that can be done, is it still your belief that you can competently and diligently represent each of the individual defendants as well as the Town without sacrificing one of the client's interests for another?

**MR. DETWEILER:** Yes.

**THE COURT:** All right, thank you, Mr. Detweiler.

**MR. MOST:** Your Honor, if I just may, I believe Mr. Detweiler agreed with you that typically town policies don't cover punitives, but I'm not sure if he said this policy does or doesn't.

**MR. DETWEILER:** It does not.

**THE COURT:** Yeah, I would be shocked if it did.

**MR. MOST:** Right, yeah.

**THE COURT:** That would be completely unusual.

**MR. MOST:** Agreed. I just wanted to make it clear.

**THE COURT:** So now I'm going to -- and the reason I asked for the individuals to come is because we need to make sure that you do all consent, you do have knowing and voluntary waivers of the potential conflict. So if the individuals could come forward, I guess as well as the Town counsel because you're here on the Town's behalf which also has to agree.

So I'll ask you all kind of some questions generally to make sure you're all on the same page, and then I'll just ask you a couple of individual questions.

Are you each aware that the Town will not fully indemnify you for any and all potential claims in this case, Officer Gaspard?

**TRISTIN GASPARD:** Yes, ma'am.

**THE COURT:** And Mayor Bouziga?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** Is it Bouziga?

**JOEY BOUZIGA:** Yes, ma'am. You did good.

**THE COURT:** Okay, thank you. And Chief Lafont?

**MICHELLE LAFONT:** Yes, ma'am.

**THE COURT:** Are you satisfied that Mr. Detweiler has explained to you the nature of this litigation, the particular claims against each of you, and the ways in which your interests may be potentially adverse to other defendants or the Town, Officer Gaspard?

**TRISTIN GASPARD:** Yes, ma'am.
**THE COURT:** Chief Lafont?
**MICHELLE LAFONT:** Yes, ma'am.
**THE COURT:** Mayor Bouziga?
**JOEY BOUZIGA:** Yes, ma'am.
**THE COURT:** And I guess we'll ask the Town too. Has that been explained to you as well?
**BRYCE AUTIN:** Yes, ma'am.
**THE COURT:** Did Mr. Detweiler explain to you how those potential adverse issues may limit his obligations to you or the other defendants, Officer Gaspard?
**TRISTIN GASPARD:** Yes, ma'am.
**THE COURT:** Chief Lafont?
**MICHELLE LAFONT:** Yes, ma'am.
**THE COURT:** Mayor Bouziga?
**JOEY BOUZIGA:** Yes, ma'am.
**THE COURT:** And the Town?
**BRYCE AUTIN:** Yes, ma'am.
**THE COURT:** And were you offered an opportunity to consult with separate counsel to determine whether or not to waive any potential conflicts, Officer Gaspard?
**TRISTIN GASPARD:** Yes, ma'am.
**THE COURT:** Chief Lafont?
**MICHELLE LAFONT:** Yes, ma'am.
**THE COURT:** Mayor Bouziga?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** The Town?

**BRYCE AUTIN:** Yes, ma'am.

**THE COURT:** All right, that answers those questions.

Let me ask just a couple of individual questions. Officer Gaspard, as you heard and when I kind of discussed the general nature of 1983 claims, in this case, Ms. Pierce is alleging that -- I'm sorry. In this case, it may be in your interest to argue at trial that your arrest of Ms. Pierce is the Town's fault because the Town's policymakers, either Chief Lafont or Mayor Bouziga or policy within the Town, directed you to arrest Ms. Pierce regardless of any factual bases to believe a crime had been committed.

I'm not suggesting those facts. Those are the allegations. If successful, then the Town would share liability. It would be to your advantage; so you would not be wholly responsible. You understand that you may have potential defenses like that, that may or may not be raised in the case?

**TRISTIN GASPARD:** Yes, ma'am.

**THE COURT:** And you understand that while there's some indemnification parameters, it's not full indemnification because there are some things the Town can't or won't indemnify you for. You understand that?

**TRISTIN GASPARD:** Yes, ma'am.

**THE COURT:** And as you heard me asking Mr. Detweiler,

there may be some decisions that need to be made; and you may want to do one thing, and the Town may want to do something else. Do you understand that?

**TRISTIN GASPARD:** Yes, ma'am.

**THE COURT:** And if Mr. Detweiler goes with what the Town wants to do, you knowingly accept that?

**TRISTIN GASPARD:** As of now, yes, ma'am.

**THE COURT:** Okay, all right. Let me ask a similar series of questions to Chief Lafont. Chief Lafont, similar series of questions, and I don't mean to suggest any fact findings. I'm just trying to present the hypotheticals.

**MICHELLE LAFONT:** Correct.

**THE COURT:** In this case, it might be in your best interest to argue that Mayor Bouziga directed you to do this arrest and told you to -- I believe there's an allegation that there was false information in an affidavit submitted to the neutral magistrate judge. So it may be in your interest to say, "Mayor Bouziga told me to do it," without regard to the facts. Not that you would, but if it were in your interest, you understand that that would create a conflict between you and the Mayor; right?

**MICHELLE LAFONT:** Correct.

**THE COURT:** And you understand that that would reduce your potential exposure, but increase the Town's or the mayor's potential exposure?

**MICHELLE LAFONT:** (Nods head.)

**THE COURT:** So do you understand that there's potentially this argument or path that may be raised or that may not be raised if Mr. Detweiler is representing all of you?

**MICHELLE LAFONT:** Yes, ma'am.

**THE COURT:** Okay. And you also understand the Town's -- that you're indemnified for certain things, but not everything?

**MICHELLE LAFONT:** Yes, ma'am.

**THE COURT:** And you're going to go over with Mr. Detweiler the precise scope of the indemnification?

**MICHELLE LAFONT:** Yes, ma'am.

**THE COURT:** And same question about the decision-making on appeals and other matters, if you disagree with what the Town wants to do, you understand Mr. Detweiler may do what the Town wants to do rather than what you want to do?

**MICHELLE LAFONT:** Yes, ma'am.

**THE COURT:** And you're okay with that?

**MICHELLE LAFONT:** At this time, yes.

**THE COURT:** All right. And then finally, Mayor Bouziga, similar series of questions. You know, it may be in your interest to say, you know, to say that Chief Lafont did what she did without any input from you, you had nothing to do with it, and it's all Chief Lafont. You understand how that

could create a conflict between you and Chief Lafont?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** All right, and you understand that in this case that may be an argument that wouldn't be raised because that would -- that maybe Mr. Detweiler and Ms. Lafont think a different argument is a better path. Do you understand that?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** And you understand, with the same questions about indemnity, it's not a full indemnity. There are certain things that are indemnified. You understand that?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** And you're going to go over the precise scope of that indemnity with Mr. Detweiler?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** Same questions about appeals, you may want to appeal; the Town may not want to appeal. You understand that might be a conflict, and Mr. Detweiler may go with the Town's decision on whether to appeal or not?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** And you're okay with that?

**JOEY BOUZIGA:** Yes, ma'am.

**THE COURT:** Okay, all right. So after hearing all of my questions and listening to the comments, do you all still think Mr. Detweiler and you still want Mr. Detweiler to represent you, Officer Gaspard?

**TRISTIN GASPARD:** Yes, ma'am.
**THE COURT:** Chief Lafont?
**MICHELLE LAFONT:** Yes, ma'am.
**THE COURT:** Mayor Bouziga?
**JOEY BOUZIGA:** Yes, ma'am.
**THE COURT:** Town?
**BRYCE AUTIN:** Yes, ma'am.
**THE COURT:** Are you all now willing to waive any conflict that may exist between you and the Town or you and any of the other defendants, Officer Gaspard?
**TRISTIN GASPARD:** Yes, ma'am.
**THE COURT:** Chief Lafont?
**MICHELLE LAFONT:** Yes, ma'am.
**THE COURT:** Mayor Bouziga?
**JOEY BOUZIGA:** Yes, ma'am.
**THE COURT:** The Town?
**BRYCE AUTIN:** Yes, ma'am.
**THE COURT:** Okay, all right. Then based upon those questions and my colloquy, I'm satisfied that the defendants are knowingly waiving any potential conflict in the case and that they may do so and have done so in open court.
I am going to ask that Mr. Detweiler follow up with each of them to confirm the precise scope of the indemnification; so each defendant is fully aware of that.
And then what I'm going to ask is that this

transcript be transcribed, sent to Mr. Detweiler, and Mr. Detweiler have each of the defendants sign the transcript and file it into the record; so we have a clear record that there's been a knowing conflict waiver.

I would also like you to add to that that you have confirmed the scope and precise parameters of the indemnity so that each defendant, when they sign this document, will have had that explanation as well.

**MR. DETWEILER:** Yes, Your Honor.

**THE COURT:** It has not changed your position on waiver, okay?

**MR. DETWEILER:** Yes, Your Honor.

**THE COURT:** Okay. Well, with that, I thank you all for coming in. I don't have any further questions. I apologize for bringing you all in, but this is important. Because if, you know, something, as the trial progressed, if something came up and there was a conflict, it could be a very untenable position. Because in that position where you have conflicts arise, often the lawyer then has to step out entirely, and all new lawyers have to come in, and it would be very disruptive to the progress of the case. It could happen during trial, etcetera. It's important that we get these things done on the record sooner rather than later, okay. Thank you all for coming in.

Anything further, Mr. Most?

**MR. MOST:** No. The one thing I'd ask is I wonder if defense counsel could send us a copy of that indemnification policy. It's probably subject to the 26, FRCP 26 initial disclosures.

**MR. DETWEILER:** It's already been produced.

**MR. MOST:** It has?

**MR. DETWEILER:** Sure.

**THE COURT:** Mr. Detweiler, any further questions from you?

**MR. DETWEILER:** Nothing, Your Honor.

**THE COURT:** Well, thank you all again for coming in. I appreciate it. It's never pleasant having to come down to court. So I appreciate y'all taking the time out of your day, but it is important.

**MR. DETWEILER:** It's a rare opportunity these days.

**THE COURT:** All right.

**MR. DETWEILER:** Good seeing you in person.

**THE COURT:** Thank you all. Yes, I am live. I'm not AI. All right, thank you all. Y'all have a good day. That will conclude our proceeding.

(Whereupon this concludes the proceedings.)

**CERTIFICATE**

I, Alexis A. Vice, RPR, CRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

*/s/Alexis A. Vice, RPR, CRR*
Alexis A. Vice, RPR, CRR
Official Court Reporter