EXHIBIT
B

# LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY

# PUBLIC OFFICIALS' ERRORS AND OMISSIONS LIABILITY INDEMNITY AGREEMENT

**(This Agreement is Not Insurance)**

**(This Agreement is Not Governed by or Subject to**

**Title 22 of The Louisiana Revised Statutes)**

## CLAIMS MADE FORM

CONTENTS


| Section | | | Page |
|---|---|---|---|
| I. | Indemnity Agreement | | 1 |
| II. | Supplemental Payments | | 2 |
| III. | Indemnity Limitations | | 2 |
| IV. | Definitions | | 3 |
| V. | General Indemnity Conditions | | 4 |
| | 1. | Duties in the Event of an Error or Omission Claim or Suit | 4 |
| | 2. | Insurance or Other Indemnity Available to Participant | 4 |
| | 3. | Transfer of Right of Recovery Against Others to The Fund | 5 |
| | 4. | Cancellation | 5 |
| | 5. | Legal Action Against The Fund | 5 |
| | 6. | Inspection and Survey | 5 |
| | 7. | Amendments | 6 |
| | 8. | Transfer of Rights and Duties Under This Agreement | 6 |
| | 9. | Legal Immunity | 6 |
| | 10. | Interpretation, Controlling Law, and Venue | 6 |
| | 11. | Representations | 6 |
| | 12. | Unintentional Errors and Mistakes | 6 |
| | 13. | Direct Payments | 6 |
| | 14. | Bankruptcy | 6 |
| VI. | Extended Reporting Period | | 6 |


9/17/26

9/17/2026 9-23-26

# LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY
# PUBLIC OFFICIALS ERRORS AND OMISSIONS
# LIABILITY INDEMNITY AGREEMENT
# PROVIDED UNDER AUTHORITY OF L.A. R.S. 33:1341, *ET SEQ.*
# CLAIMS-MADE FORM
# THIS AGREEMENT IS NOT INSURANCE

IN RETURN FOR THE PAYMENT OF CONTRIBUTION(S), AND SUBJECT TO ALL THE TERMS OF THIS PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY INDEMNITY AGREEMENT, INCLUDING THE SCHEDULES AND ALL AMENDMENTS ("AGREEMENT"), THE LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY ("THE FUND") AGREES WITH THE NAMED PARTICIPANT TO PROVIDE INDEMNIFICATION ON A CLAIMS MADE BASIS AS STATED IN THIS AGREEMENT, SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS SET FORTH HEREIN.

Indemnity under this Agreement applies only if a Claim for Damages is first made in writing against any Participant during the Agreement Period stated in the Schedule.

With respect to the timing of a Claim or Claims:

1. A Claim seeking Damages covered under this Agreement will be deemed to have been made when written notice of such Claim is received by any Participant or by the Fund, whichever comes first.
2. All Claims for Damages because of an Error or Omission will be deemed to have been made at the time the first of those Claims is made against any Participant.
3. The indemnity under this Agreement does not apply to any Error or Omission that occurs before the retroactive date, if any, shown in the Schedule.

## SECTION I – INDEMNITY AGREEMENT

A. The Fund will indemnify a Participant for those sums that the Participant becomes legally obligated to pay as Damages because of an Error or Omission to which this Agreement applies. This Agreement applies only to Claims made during the Agreement Period for Damages caused by an Error or Omission. No other obligation or liability to indemnify a Participant for sums or perform acts or services is covered by this Agreement unless explicitly provided for under SECTION II - SUPPLEMENTAL PAYMENTS.

B. The Fund has the right, but not the obligation to defend the Participant in any Suit seeking those Damages. The Fund may in its discretion investigate any Error or Omission and settle any Claim or Suit that may result.

C. The Limit of Indemnity is the most indemnity the Fund will provide under this Agreement.

D. The Fund's payment of defense costs, including attorneys' fees, in the event it exercises the discretionary right to defend a Suit will end at any time that the Fund chooses, but in any event, upon the earliest of any of the following: (a) when the Fund has offered the Limit of Indemnity to either the claimant or the Participant and either the claimant or the Participant rejects the Fund's offer; (b) when the Fund has tendered the Limit of Indemnity in the payment of judgments or settlements; (c) when the Fund has exhausted the applicable Limit of Indemnity in the payment of judgments or settlements; or (d) at such time as the Fund determines that there are no damages at issue in the Suit to which this Agreement applies.

E. Damages, including claims expenses, caused by any one Error or Omission, which would otherwise be payable under this Agreement, will be reduced by the Participant Deductible, if any, shown in the Schedule(s) prior to the application of the Limit of Indemnity provision. To settle any Claim or Suit the Fund may pay all or part of any Participant Deductible shown in the Schedule(s). If this happens, the Participant must reimburse the Fund to the extent it paid the Participant Deductible.

**SECTION II – SUPPLEMENTAL PAYMENTS**

The Fund will provide indemnity for items listed below with respect to any Claim or Suit for which the Fund chooses to defend.

A. Premiums on appeal bonds in any Suit the Fund chooses to defend but only if the Fund chooses at its discretion to continue to defend on appeal.

B. All costs taxed against the Participant in a Suit the Fund chooses to defend.

C. All reasonable expenses incurred by the Participant at the Fund's request to assist the Fund in the investigation or defense of a Claim or Suit, including actual loss of earnings up to $100 a day because of time off from work.

D. Up to $250 for the cost of bail bonds required because of an Error or Omission. The Fund does not have to furnish these bonds.

E. Judicial interest awarded against the Participant on that part of the judgment, up to the Limit of Indemnity, for which the Fund provides indemnity, subject to the following: (a) in no case will the Fund pay judicial interest on any amount awarded that is over the Limit of Indemnity, and (b) if the Fund makes an offer to pay or indemnify the applicable Limit of Indemnity, the Fund will not pay or indemnify any pre-judgment interest accruing after the Fund makes an offer.

**SECTION III – INDEMNITY LIMITATIONS**

This Indemnity Agreement does not apply to:

A. Bonds, other than appeal bonds under SECTION II-SUPPLEMENTAL PAYMENTS, fines, penalties, punitive or exemplary damages, and legal expenses;

B. Claims or Suits seeking only injunctive or equitable relief;

C. Bodily injury or property damage;

D. Any dishonest, fraudulent, criminal or malicious act or omission of any Participant;

E. Claims or Damages that arise out of any acts or omissions that are expected or intended from the standpoint of any Participant. If any damage is expected or intended from the standpoint of a Participant, then all damage arising directly or indirectly out of the Error or Omission giving rise to said damage(s) is excluded from indemnification by the Fund. Notwithstanding the preceding language, dam- age resulting from, connected with, or arising out of any physical or verbal form or type of sexual activity; sexual statements (verbal or otherwise); sexual conduct; sexual misconduct or sexual harassment; retaliation; harassment; violation of the Police Officers' Bill of Rights, and all other acts that violate federal and/or state law prohibiting any form of discrimination shall be considered expected or intended from the standpoint of any Participant;

F. Claims or Damages arising out of, or related to the Participant's activities in a fiduciary capacity or as a trustee or in any similar capacity;

   1. Claims, Damages, or Disputes related to retirement systems and alleged non-compliance will not be afforded coverage, nor will defense costs be provided.

G. Claims or Damages arising out of, or related to, the rendering of or failure to render professional services by a member of the medical profession, or someone considered to be a health care provider;

H. Claims or Damages arising out of, or related to, inverse condemnation, adverse possession or dedication by adverse use;

I. Claims or Damages arising out of, or related to, the breach of any agreement or contract;

J. Claims or Damages arising out of, or related to, any obligation assumed by any Participant under any contract or agreement;

K. Claims or Damages arising out of, or related to, one or more of the following:

   1. False arrest, detention, imprisonment or malicious prosecution;
   2. Wrongful entry into or eviction of a person from a room, dwelling, or premises that the person occupies;
   3. The publication or utterance of a libel or slander or of other defamatory or disparaging material or a publication;
   4. Oral or written publication of material that violates a person's right of privacy;
   5. Misappropriation of advertising ideas or style of doing business;
   6. Infringement of copyright, title, patent, or slogan;
   7. Discrimination.

8. Assault and battery.

L. Claims or Damages arising out of, or related to, the Participant's advertising activities;

M. Claims or Damages arising out of, or related to, the operation of garbage and disposal sites, schools, airports, hospitals, clinics, nursing homes, rehabilitation facilities and other similar health care facilities, or gas and electric facilities;

N. Claims or Damages arising out of, or related to, pollution, materials defined and/or classified as hazardous under either federal or state law, and radioactive contamination or exposure;

O. Claims or Damages arising out of, or related to, the estimates of probable cost or cost estimate being exceeded or for faulty preparation of or related to bid specifications or plans, or the improper award of public bids.

P. Claims or Damages arising out of, or related to any obligation of the Participant under a workers' compensation, disability benefits or unemployment compensation law or any similar law;

Q. Claims or Damages arising out of, or related to:
   1. Any refusal to employ; or
   2. Any termination of employment; or
   3. Any coercion, demotion, retaliation, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practice, policy, act or omission; or
   4. Consequential damage as a result of (1), (2), or (3), above

   This limitation applies whether the Participant may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages.

R. Claims, Damages, or Disputes related to retirement systems and alleged non-compliance will not be afforded coverage, nor will defense costs be provided.

S. violation of the minimum standards applicable to any law enforcement officer during an investigation, including but not limited to those standards set forth in La.RS. 40:2531; or

T. Claims or Damages for which any Participant may be liable by reason of:
   1. Causing or contributing to the intoxication of any person;
   2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
   3. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

U. Claims or Damages arising out of or related to claims made by the United States pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 1260.

V. Claims or Damages arising out of, or related to the requirements, enforcement or breach of, or otherwise related to a settlement agreement or consent decree entered into between a Participant and the United States or the United States Department of Justice.

**SECTION IV – DEFINITIONS**

A. "Claim" means, and is limited to, a written demand for money to the Participant for Damages. "Claim" excludes such written demands to the extent it relates to, arises out of, or results in administrative or civil service proceedings.

B. "Contribution(s)" means that amount of money established by the Fund to be contributed to the Fund by the Participant.

C. "Coverage Territory" means the State of Louisiana, and other locations in the United States, but only to the extent indemnity would have been provided had the Error or Omission taken place in Louisiana.

D. "Damages" means money and does not include fines or penalties or any claims asking for only injunctive or equitable relief.

E. "Error or Omission" means any actual or alleged error or misstatement or act or omission or neglect or breach of duty including misfeasance and nonfeasance by the Participant in the discharge of their duties with the public entity.

F. All damages that are attributable directly or indirectly to one Error and Omission or to one series of similar Errors and Omissions will be added together and the total amount of such damages will be treated as one Error and Omission irrespective of the period of time or area over which such damage occurs.

G. "Limit of Indemnity" means the limit of indemnity shown in the Schedule. This limit remains the same regardless of the number of (a) covered Participants, (b) Claims made or Suits brought, (c) persons or organizations making Claims or bringing Suits, or (d) Indemnity Agreements issued to the Participant by the Fund, and is the most the Fund will indemnify for all damages resulting from any one Claim. All damages claimed by any person(s) or organization(s)

resulting from a series of related Errors and/or Omissions will be considered as one Claim.

Subject to the limitations in the definition of "Error and Omission," the Limit of Indemnity in this Agreement applies separately to each consecutive annual Agreement Period and to any remaining period of less than 12 months, starting with the beginning of the Agreement Period shown in the Schedule(s), unless the Agreement Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Indemnity.

H. "Participant" means the public entity shown as the Named Participant in the Schedule; any commission, board, authority, administrative department or other similar unit operated by or under the public entity's jurisdiction as a Participant; any duly elected or appointed official or member of a governing body or a public entity which is a Participant as outlined above, but only to the extent and while acting within the scope of his or her duties as such; any employees or authorized volunteers of the public entity but only while acting within the scope of his or her duties as such.

I. "Suit" means a civil proceeding in which money damages are alleged because of Damage to which this Agreement applies. Suit includes an arbitration proceeding alleging such Damages to which the Participant must submit or submit with the Fund's consent, but does not include administrative or civil service proceedings.

**SECTION V – GENERAL INDEMNITY CONDITIONS**

1. DUTIES IN THE EVENT OF AN ERROR OR OMISSION, CLAIM AND/OR SUIT
   A. If any Participant becomes aware of an Error or Omission that may result in a Claim, the Participant must notify the Fund in writing of the Error or Omission as soon as practicable. The notice should contain: (1) how, when and where the Error or Omission took place; (2) the names and addresses of any witnesses or injured persons; and (3) the nature and location of any injury or damage arising out of the Error or Omission;
   B. Notice of an Error or Omission is not notice of a Claim or Suit
   C. Notification of the Fund of a Claim or Suit is a material condition of this Indemnity Agreement, and strict compliance with the following notice requirements is a condition precedent for indemnification:
      (1)If a Claim is made, the Fund must immediately receive written notice from the Participant, but never more than ninety (90) days from the date on which the Claim is made; and If a Suit is filed, the Fund must be immediately notified in writing of the Suit, but never later than the statutory time for which an answer or other responsive pleadings to such Suit must be filed with the appropriate court.
   D. If a Claim is made or Suit is brought against the Participant, the Participant shall record the specifics of the Claim or Suit and the date received, and immediately forward to the Fund every demand, notice, summons or other process or legal papers received by the Participant or its representative(s) in connection with the Claim or Suit.
   E. The Participant shall cooperate with the Fund in the investigation, defense, including attending hearings and trials and securing and giving evidence and obtaining the attendance of witnesses, and settlement of the Claim(s) or Suit(s) and assist the Fund, upon its request, in the enforcement of any right against any person or organization which may be liable to the Participant because of damage to which this Agreement may also apply.
   F. No Participant will, except at the Participant's own cost, voluntarily make any payment, assume any obligation, or incur any expense, other than for first aid, without the Fund's written consent.
2. INSURANCE OR OTHER INDMENITY AVAILABLE TO PARTICIPANT
   If there is any collectible insurance or other indemnity available to a Participant (whether such insurance or indemnity is stated to be primary, contributing, excess or contingent) that covers Damages that are also indemnified by any part of this Agreement, the indemnity provided by this Agreement will apply in excess of, and shall not contribute with, such insurance or indemnity. This condition does not apply to any insurance policy or indemnity agreement purchased specifically (and which is so specified and which specifically

identifies this Agreement in such insurance policy or indemnity agreement) to apply in excess of this Agreement. If the Fund has issued an indemnity agreement to two or more municipalities who are participants in the LMRMA indemnity program who are involved in an Error or Omission, the maximum amount the Fund will pay is a single Limit of Liability regardless of the number of participants involved.

3. TRANSFER OF RIGHT OF RECOVERY AGAINST OTHERS TO THE FUND

If a Participant has rights to recover all or part of any payment the Fund has made or any amount the Fund has indemnified them for under this Agreement, those rights are transferred to the Fund and the Fund is subrogated to those rights. The Participant must do nothing to impair those subrogation rights and will bring suit or transfer those rights to the Fund and help the Fund enforce them at the Fund's request.

4. CANCELLATION
   a. The Named Participant shown in the Schedule(s) may cancel this Agreement by mailing or delivering to the Fund thirty (30) days advance written notice of cancellation.
   b. The Fund may cancel this Agreement by mailing or delivering to the Named Participant written notice of cancellation at least:
      (1) Ten (10) days before such cancellation if the Fund cancels for non-payment of Contributions; or
      (2) Thirty (30) days before the effective date of cancellation if the Fund cancels for any other reason.

      In the event this Agreement is canceled for non-payment of Contributions, the effective date of such cancellation shall be retroactive to the date on which such Contribution was due.
   c. The Fund will mail or deliver its notice to the Named Participant's last mailing address known to the Fund.
   d. Notice of cancellation will state the effective date of cancellation. The Agreement Period will end on that date.
   e. If this Agreement is cancelled, the Fund will send the Named Participant any Contribution refund due. If the Fund cancels the Agreement, the earned Contribution will be computed pro rata. If the Named Participant cancels the Agreement, the earned Contribution will be computed in accordance with the customary short rate table and procedure. The cancellation will be effective even if the Fund has not made or offered a refund.
   f. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. LEGAL ACTION AGAINST THE FUND

No person, entity, or organization has a right under this Agreement:

   a. To join the Fund as a party or otherwise bring the Fund into a Suit asking for damages from a Participant, or
   b. To sue the Fund on this Agreement unless they are the Named Participant and then only if all of the terms of the Agreement have been fully complied with. Only the Named Participant may sue the Fund to recover under this Agreement (and such right is not assignable or otherwise transferable or subject to legal or conventional subrogation to another) for any reason, including, but not limited to, suits on an Agreed Settlement or on a final judgment against a Participant obtained after an actual trial; but the Fund will not be liable for damages that are not payable under the terms of this Agreement or that are in excess of the applicable Limit(s) of Indemnity. An "Agreed Settlement" means a settlement and release of liability signed by the Fund and agreed to by the Fund in writing and signed by the Participant and/ or the Indemnitee and the claimant(s) or the claimant's legal representative(s).

6. INSPECTION AND SURVEY

The Fund has the right but is not obligated to:
   a. Make inspections and surveys at any time;
   b. Give the Named Participant reports on the conditions found; and
   c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to indemnification and the Contributions to be charged. The Fund does not make safety inspections. The Fund does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And the Fund does not warrant that conditions:

(1) Are safe or healthful; or
(2) Comply with laws, regulations, codes or standards.

This condition applies not only to the Fund, but also to any rating, advisory, rate service or similar organization which makes inspections, surveys, reports or recommendations for the Fund on the Named Participant's behalf arising from or otherwise related to this Agreement.

7. AMENDMENTS

This Agreement which includes the Schedule(s) and amendments contains all the agreements between the Fund and the Named Participant concerning the indemnity afforded. This Agreement's terms can be amended or waived only by written amendment issued by the Fund and made a part of this Agreement. If the Fund issues a written amendment to this Agreement, this Agreement is amended without further action by either party. The amendment will be sent to the notice address provided in this Agreement, and is effective on the date stated on the amendment unless the Named Participant cancels this Agreement by written notice received by the Fund within ten (10) days of the Named Participant's receipt of the written amendment. Such cancellation shall be retroactive to the effective date of the amendment.

8. TRANSFER OF RIGHTS AND DUTIES UNDER THIS AGREEMENT

A Participant's rights and duties under this Agreement may not be transferred or assigned without the Fund's written consent.

9. LEGAL IMMUNITY

As a public entity or official, a Participant may be entitled to legal immunity. The Fund may deny any claim or other obligations arising under this Agreement for this reason unless the Fund (a) receives a written request from the Named Participant to defend the Participant and provide indemnity; and (2) the Fund agrees in writing to defend the Participant. If the Fund denies a claim or obligation arising under the Agreement because of legal immunity, the Participant will not hold the Fund responsible unless the Fund has received such written request from the Participant, and the Fund has accepted such responsibility in writing.

10. INTERPRETATION, CONTROLLING LAW, AND VENUE

This Agreement will be governed by and interpreted (a) without regard to the part(ies) who authored or drafted it; (b) under the laws of the State of Louisiana; and (c) as an indemnity contract and not as an insurance policy. If any provision of this Agreement is deter- mined to be prohibited, illegal or void, the pro- vision is amended to comply with the minimum requirements of the law. The invalidity of any provision does not invalidate the remainder of the Agreement. All legal matters related to the interpretation of this Agreement, and the parties' respective rights and obligations, shall be determined exclusively in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

11. REPRESENTATIONS

By accepting this Agreement, the Named Participant agrees:

a. The statements in the Schedule(s) are accurate and complete;
b. Those statements in the Schedule(s) are based upon representations the Named Participant made to the Fund; and
c. The Fund has issued this Agreement in reliance upon the Named Participant's representations.

12. UNINTENTIONAL ERRORS AND MISTAKES

Any error, misstatement or mistake in information given by the Named Participant to the Fund, will not invalidate the indemnity provided by this Agreement unless it was intentional. However, the Fund is entitled to Contributions based upon the correct information.

13. DIRECT PAYMENTS

Whenever the Fund agrees to indemnify a Participant, the Fund has the right but not the obligation to pay the party or parties to whom the Participant is obligated, or to whom a Participant's indemnitee is obligated to, instead of paying the indemnity payment to the Participant or the Participant's indemnitee

14. BANKRUPTCY

Bankruptcy or insolvency of the Participant will not relieve the Fund of its indemnity obligations under this Agreement.

**SECTION VI – EXTENDED REPORTING PERIOD**

A. The Fund may provide at its option, an extended claims reporting period only if:
   1. This Agreement is cancelled or not renewed for any reason except cancellation or non-renewal for nonpayment of Contributions; or

2. The Fund replaces this Agreement with another indemnity agreement that applies to damage on other than a claims-made basis.

B. If the Fund provides an extended claims reporting period:
1. A Claim first made during the extended claims reporting period will be deemed to have been made on the last day of the Agreement Period provided that the Claim is for damages because of an Error or Omission that occurred during, but before the end of, the Agreement Period.
2. The extended claim reporting period will not reinstate or increase the Limit of Indemnity or extend the Agreement Period.

C. The extended claims reporting period will be 180 days, starting with the end of the Agreement Period, if no insurance the Participant purchases, or indemnity the Participant obtains, to replace this indemnity applies to the Claim or would apply but for the exhaustion of its applicable Limits of Indemnity.
1. If provided, this extended claims reporting period may not be cancelled; and
2. The extended claims reporting period will not take effect unless the additional Contributions are paid when due. If that Contribution is paid when due, the extended claims reporting period may not be cancelled.
3. In the event the extended claims reporting period is provided, the indemnity provided thereunder will be excess over any other collectible indemnity or insurance available to the Participant, whose Agreement Period begins or continues after the extended claims reporting period is provided.