**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DAWN PIERCE,** | * | **CIVIL ACTION NO. 2:25-cv-02178** |
| | * | |
| | * | |
| **VERSUS** | * | **SECTION: C** |
| | * | |
| | * | |
| **TOWN OF GOLDEN MEADOW, MAYOR JOEY BOUZIGA, POLICE CHIEF MICHELLE LAFONT, and OFFICER TRISTIN GASPARD,** | * | **MAGISTRATE: 2** |
| | * | |

*************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, come Defendants, Town of Golden Meadow ("Golden Meadow"), Mayor Joey Bouziga ("Mayor Bouziga"), Police Chief Michelle Lafont (Chief Lafont") and Officer Tristan Gaspard ("Officer Gaspard")[1], who respectfully submit this motion for summary judgment pursuant to Fed.R.Civ.P. 56 on all claims asserted in Plaintiff's Complaint and contend that the record establishes that there is no genuine dispute as to any material fact as Plaintiff failed to establish that these Defendants are liable to the Plaintiff for the relief sought. In addition, Mayor Bouziga, Chief Lafont and Officer Gaspard are entitled to the protections of qualified immunity. Therefore, for these reasons and the additional reasons set forth herein in support of this motion and the attached exhibits, all of Plaintiff's claims against the Defendants pursuant to federal and/or Louisiana state law must be dismissed with prejudice as a matter of law and at Plaintiff's cost.

## I. Plaintiff's Claims

1 All claims asserted by Plaintiff against Mayor Bouziga and Officer Gaspard were dismissed without prejudice on September 21, 2026 (Doc. 37). They are included in this motion in an effort to seek dismissal of all claims against them with prejudice.

Plaintiff, Dawn Pierce ("Pierce"), sued the Defendants collectively for various alleged violations of her rights under federal and Louisiana state law stemming from Plaintiff's July 8, 2025 arrest by the Lafourche Parish Sheriff's Office ("LPSO") for violation of La. R.S. 14:283.2 – Nonconsensual disclosure of a private image, pursuant to an arrest warrant applied for by Chief Lafont and issued by Judge Rebecca Robicheaux ("Judge Robicheaux") of the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana on July 8, 2025.

All of Plaintiff's causes of action are premised upon her allegation that there was no probable cause to arrest her on July 8, 2025 for violation of La. R.S. 14:283.2 and that Chief Lafont intentionally and maliciously fabricated the warrant application submitted to Judge Robicheaux and did so with the intent to violate Plaintiff's constitutional rights under federal and Louisiana state law and to intentionally and maliciously cause Plaintiff harm.

Plaintiff raises causes of action for the wrongful arrest and false imprisonment of Plaintiff, which allegedly deprived her of her First Amendment right to free speech, deprived her of her Fourth Amendment right to be free from false arrest, false imprisonment, and from unlawful search and seizure; and that Chief Lafont engaged in a conspiracy to falsely arrest and imprison Plaintiff all with the malicious intent to cause her harm.

Plaintiff also raises causes of action under Louisiana law for violation of her rights under the Louisiana Constitution, assault and battery stemming from the arrest and detention, negligence and negligent infliction of distress, intentional infliction of emotional distress, false imprisonment, abuse of process, vicarious liability and indemnity and seeks declaratory relief, compensatory damages, special damages, costs, attorney's fees, interest and such other and further relief

Plaintiff also sued Golden Meadow for *Monell* type municipal violations claiming that municipal liability attached to Chief Lafont's deliberate choice to lie under oath by submitting

false statements in a warrant application seeking an arrest warrant under an inapplicable felony statute and the deliberate choice to have Officer Gaspard arrest Plaintiff using the warrant obtained through perjury.

The Defendants deny all claims and submit that Plaintiff's Complaint fails to raise any viable cause of action against the Defendants, because the indisputable facts regarding Chief Lafont's investigation, Chief Lafont's warrant application and the warrant issued by Judge Robicheaux, an independent intermediary, and the legal arrest pursuant to the warrant by the LPSO establish as a matter of law that there was legal probable cause for the arrest of Plaintiff, Dawn Pierce on July 8, 2025. In addition, there is no evidence to support any of the Plaintiff's claims that any actions taken by Chief Lafont were malicious, willful and/or knowingly taken with the intent to harm Pierce or deprive her of any of her rights under federal or state law. Chief Lafont further submits that her actions at all times on July 8, 2025 were objectively reasonable under the circumstances known to her at the time, her actions were at all times supported by legal probable cause, and therefore, she is entitled to the protections of Qualified Immunity and summary judgment in her favor.

In addition, Mayor Bouziga and Officer Gaspard did nothing actionable and did not cause any actionable harm to Pierce, therefore they are entitled at the very least to the protections of Qualified Immunity and summary judgment in their favor dismissing all claims against them with prejudice.

## II. Statement of Indisputable Material Facts

In support of this Motion for Summary Judgment, the Defendants filed a Statement of Indisputable Material Facts supported by various exhibits that establish that the Plaintiff, Pierce, was legally arrested with probable cause supported by an arrest warrant issued by District Judge

Robicheaux, and therefore was legally arrested and detained on July 8, 2025 for violation of La. R.S. 14:283.2- Nonconsensual disclosure of a private image.

Plaintiff sued Chief Lafont, Mayor Bouziga and Officer Gaspard for discretionary actions and/or inactions that they allegedly took as public officials employed by Golden Meadow. Plaintiff makes very specific conclusory allegations that each of the individual Defendants intentionally and maliciously acted and conspired together to violate Plaintiff's constitutional rights by causing and contributing to the illegal arrest and detention of the Plaintiff, thus causing all of the alleged causes of actionable harm under federal and Louisiana state law.

Defendants submit that there is no credible record evidence to support Plaintiff's allegations and the Statement of Indisputable Facts and Exhibits support summary judgment. In summary, it is indisputable that on July 8, 2025 Chief Lafont received a complaint from Amber Sibley and Chief Lafont's investigation revealed that Dawn Pierce had obtained various photos of Amber Sibley that had been posted to a private subscriber account without Amber Sibley's permission; that Dawn Pierce posted those private photos of Amber Sibley publicly on Facebook without Amber Sibley's permission; that two of the photos of Amber Sibley posted to Facebook without Amber Sibley's permission were private photos which appeared to both Chief Lafont and Amber Sibley to depict Amber Sibley's nipple; that as a result of her investigation on July 8, 2025 which included the statements from Amber Sibley and review of the photos provided by Amber Sibley- two of which depicted Amber Sibley's nipple, Chief Lafont reasonably believed and relied upon the complaint and information obtained from Amber Sibley and reasonably perceived from her review of the photos depicting Amber Sibley's nipple that had been posted publicly to Facebook without Amber Sibley's permission that she had probable cause sufficient to arrest Dawn Pierce for violation of La. R.S. 14:283.2; and, therefore, on July 8, 2025, Chief Lafont chose to

apply for an arrest warrant, which was reviewed, signed and executed by Judge Robicheaux on July 8, 2025.

It is further indisputable that Dawn Pierce was then legally arrested by the LSPO pursuant to that legally issued arrest warrant on July 8, 2025; that Dawn Pierce was not physically or emotionally harmed in any way by that legal arrest; and that no one from the neighborhood was outside and witnessed the arrest or Dawn Pierce being transported from the scene of the arrest. It is further indisputable that the actions and/or inactions of Chief Lafont during the investigation and/or in the decision to apply for an arrest warrant and to ask Officer Gaspard to have the LPSO arrest Dawn Pierce pursuant to that arrest warrant were objectively reasonable under the circumstances known to Chief Lafont at the time.

In addition, it is indisputable that there is no evidence to establish that any false or misleading information was intentionally placed in the warrant application by Chief Lafont to intentionally deceive Judge Robicheaux or to intentionally create probable cause where it was known that there was none. To the contrary, the record evidence establishes that on July 8, 2025 Chief Lafont acted at all times herein in good faith and reasonably believed that there was sufficient probable cause to arrest Dawn Pierce for violation of La. R.S. 14:283.2 based upon her investigation, her perception of the photos provided and identified by Amber Sibley as being private images that depicted Amber Sibley's nipple and were posted publicly by Dawn Pierce to Facebook without Amber Sibley's permission.

Based upon the record evidence established by the attached Statement of Indisputable Facts and the supporting exhibits, the Defendants respectfully move this Honorable Court for dismissal of all of Plaintiff's claims with prejudice and judgment in their favor.

## III. Law & Argument

### a. Federal Rules of Civil Procedure Rule 56 Standard

The United States Supreme Court has addressed the standard for summary judgment as set forth in Federal Rules of Civil Procedure Rule 56(c), as follows:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

After the moving party has met this initial burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Rule 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, the mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant. *Anderson,* 477 U.S. at 251-52, 106 S.Ct. at 2511.

### b. False Arrest

To prevail on a false arrest claim, plaintiff must show that the officer did not have probable cause to make an arrest. *Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021); *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004).

Moreover, evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest - probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013). In fact, an officer's own testimony regarding the occurrence of an arrestable violation can by itself support a finding of probable cause, even in the face of the plaintiff's denial of that violation. *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009).

**c. Probable Cause**

Probable cause is a relatively low threshold - "something more than a bare suspicion, but need not reach the fifty percent mark." *U.S. v. Williams*, 836, Fed.Appx. 310, 312 (5th Cir. 2021); *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999).

It is well understood that probable cause is established where the facts and circumstances within an officer's knowledge and of which she has reasonable trustworthy information sufficient to warrant a woman of reasonable caution to believe that an offense has been or is being committed. *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019); *Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2000). In seeking an arrest warrant, a police officer is permitted to rely upon information provided by an eyewitness as long as the officer reasonably believes the witness is telling the truth. *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015)

It doesn't matter whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence. *Sam v. Richard*, 887 F.3d 710, 715 n.6 (5th Cir. 2018). Likewise, it doesn't matter if the arrestee was ever charged or convicted of the crime for which the officer arrests her. Rather, for plaintiff to prevail on a claim of either false arrest or illegal detention, the relevant actors must not be aware of facts constituting probable cause to arrest or

detain the person for any crime. *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015); *O'Dwyer v. Nelson*, 310 Fed.Appx. 741, 745 (5th Cir.2009).

Chief Lafont's belief that there was sufficient probable cause was based on the information known to Chief Lafont from her investigation, which revealed that Amber Sibley told Chief Lafont that Dawn Pierce obtained photos of Amber Sibley without Amber Sibley's permission; that Amber Sibley told Chief Lafont that the photos were private photos only available from her Only Fans subscriber account; that Amber Sibley told Chief Lafont that Dawn Pierce posted these photos on Facebook without Amber Sibley's permission; that Amber Sibley asked Dawn Pierce to take the photos off of Facebook and Dawn Pierce refused; that the photos posted on Facebook of Amber Sibley by Dawn Pierce without Amber Sibley's permission depicted her in lingerie and in two of the photos, it appeared to Chief Lafont that the lingerie was see through and Amber Sibley's nipple could be seen in two of the photos posted by Dawn Pierce on Facebook without Amber Sibley's permission. Therefore, Chief Lafont believed at the time, based on the information known to Chief Lafont and her perception of the two photos depicting Amber Sibley's nipple that there was sufficient probable cause to apply for an arrest warrant for the arrest of Dawn Pierce for violation of La. R.S. 14:283.2. (Ex. 1, ¶12; Ex. 2; Ex. 3; Ex. 4, p. 86-97; Ex. 5; Ex. 6; Ex. 7; Ex. 8; and Ex. 9)

Amber Sibley never told Chief Lafont that any of these photos, especially the two photos that Chief Lafont perceived to show Amber Sibley's nipple were available anywhere else to the public on the internet or on any website where the photos might be viewed without a subscriber account to persons over the age of 18. Amber Sibley never told Chief Lafont that these photos including the two photos that Chief Lafont perceived to show Amber Sibley's nipple were available to persons over the age of 18 on "X" or Twitter as suggested by Plaintiff's Counsel. (Ex.

1, ¶13; Ex. 6, p. 60, l. 5-25; and p. 61, l. 1-10; p. 64:19-25)

When Chief Lafont drafted the application and affidavit submitted for the Arrest Warrant, Chief Lafont did not intentionally choose to exclude information or intentionally include any information that was meant to deceive Judge Robicheaux or to falsely create probable cause where there was no probable cause. (Ex. 1, ¶14)

When Chief Lafont drafted the application and affidavit submitted for the Arrest Warrant, Chief Lafont acted at all times in good faith and included the information that Chief Lafont believed was relevant to the issue of probable cause developed through Chief Lafont's investigation and included information that Chief Lafont perceived to be accurate and correct to the best of her personal knowledge and based on her investigation of the complaint and information received from Amber Sibley. Chief Lafont believed that Amber Sibley was telling the truth and found no reason at that time to disbelieve the information that she provided. (Ex. 1, ¶15)

At the time that Chief Lafont received the complaint from Amber Sibley on July 8, 2025, Chief Lafont did not know Dawn Pierce; Chief Lafont had no prior knowledge of or contact with Dawn Pierce; and Chief Lafont did not apply for the arrest warrant or seek to have Dawn Pierce arrested for any malicious reason or to intentionally cause her any harm as alleged. (Ex. 1, ¶16) Chief Lafont conducted the entire investigation of Amber Sibley's complaint on July 8, 2025 by herself and Chief Lafont's decision to apply for and obtain the arrest warrant for Dawn Pierce was based upon Chief Lafont's investigation; Chief Lafont's review of the statute; Chief Lafont's good faith belief that the information provided to her by Amber Sibley was true, correct and complete; Chief Lafont's perception of the photos depicted in Exhibits A & B to her affidavit on July 8, 2025 and Chief Lafont's belief that Amber Sibley's nipple could be seen in the two photos; and Chief Lafont's good faith perception and belief that there was probable cause for the arrest of Dawn

Pierce for violation of La. R.S. 14:283.2. (Ex. 1, ¶18; Ex. 2; Ex. 3; Ex. 4, p. 86-97; Ex. 5; Ex. 6; Ex. 7; Ex. 8; and Ex. 9)

Amber Sibley agrees that one of the photos posted to Facebook by Dawn Pierce without Amber Sibley's permission, the photo of her with her hands over her head, Exhibit N to her deposition, shows her nipples and she circled them when asked to do so by Plaintiff's Counsel. (Ex. 10, p. 19, 15-19, p.20, l. 12-24; Ex. 12)

Amber Sibley testified that she remembers Ex. N to her deposition being part of the OnlyFans subscription content and does not recall posting this photo on Twitter because her nipples were showing. She further testified that she would not have made this photo public since she felt her nipples were showing but she is not 100% sure. She does not recall if this one was on Twitter. (Ex. 10, p. 55-56, Ex. 12)

Amber Sibley thinks she told Chief Lafont the pictures were on and came from OnlyFans, that people had to pay to see them; OnlyFans was a subscription website; she never gave permission to Dawn Pierce to post any of her photos; Amber Sibley was not even thinking of Twitter when she spoke to Chief Lafont. (Ex. 10, p. 60-61; Ex. 11; Ex. 12)

Amber Sibley does not believe she mentioned to Chief Lafont that the photos were available on Twitter 18 and over and only mentioned OnlyFans. (Ex. 10, p. 64, l. 19-25)

Dawn Pierce did not have Amber Sibley's permission to post any of the photos of Amber Sibley. (Ex. 13, p. 25)

Dawn Pierce's sons were not outside during her arrest and she did not see anyone else outside in the neighborhood as she was taken away. (Ex. 13. P. 35-36)

Dawn Pierce was taken to the Lafourche Parish Sheriff's Office substation in Cutoff to be booked. She was handcuffed to a bench until the officer came to take her finger prints, take her

picture and fill out paperwork. She was never placed in a cell and was released after about two hours after her husband secured her release through a bail bondsman. Nothing sticks out in her mind about the time at the substation or how she was treated and no trauma occurred. She was released to her husband and went home. While at the lockup it was not physically traumatic and she was not physically traumatized. (Ex. 13, p. 36-38, 48)

And finally, the Lafourche Parish District Attorney chose not to prosecute Plaintiff for the offense, but there was never a hearing or determination that probable cause for the arrest did not exist on Julu 8, 2025.

As a result of the foregoing, it is indisputable that on July 8, 2025, the probable cause for the arrest of Dawn Pierce for violation of La. R.S. 14:283.2 was legally established. (Ex. 1; Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9, Ex. 10; Ex. 11; Ex. 12; Ex. 14) Therefore, all of Plaintiff's claims for violations of free speech, false arrest, false imprisonment, illegal search and seizure, civil conspiracy, *Monell* liability, and violations under Louisiana state law stemming from Plaintiff's allegation that there was no probable cause for the arrest of Dawn Pierce must fail as a matter of law and be dismissed with prejudice.

**d. As to Chief Lafont**

The indisputable record evidence, including but not limited to the affidavit of Chief Lafont, the deposition testimony, the photos of Amber Sibley depicting her nipple as perceived by Amber and by Chief Lafont, the Arrest Warrant, and the body camera video footage of the arrest clearly establish that there was legal probable cause for the arrest of Dawn Pierce on July 8, 2025 for violation of La. R.S. 14:283.2. (Ex. 1; Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9, Ex. 10; Ex. 11; Ex. 12; Ex. 14) It is also indisputable that Dawn Pierce admits that she was not physically injured during her arrest by Sgt. Kreamer, she was only detained for two hours, was not placed in

a cell and sat on a bench at a Sheriff's Office substation, and the lockup was relatively quiet during her limited detention. (Ex. 13, p. 31-48) Therefore, Plaintiff cannot provide any competent summary judgment evidence to prove that the Defendant, Chief Lafont, acted in any way that caused Plaintiff any actionable harm under state or federal law for violation of her free speech, false arrest, false imprisonment, unlawful search and seizure, or any other offense. As such, all claims against Chief Lafont in her official and individual capacities must be dismissed with prejudice.

**e. As to Mayor Bouziga**

It is indisputable that Mayor Bouziga was not involved in any way with the investigation and decision to arrest Dawn Pierce, did not call Chief Lafont to order the arrest of Dawn Pierce, did not know Dawn Pierce and certainly had no role in causing any actionable harm to Dawn Pierce. Therefore, all claims against Mayor Bouziga must be dismissed from this matter with prejudice.

**f. As to Officer Gaspard**

The record evidence establishes that on July 8, 2025, Officer Gaspard was not involved in the investigation that led to the issuance of the arrest warrant for Pierce; was asked by Chief Lafont to and did arrange for the LPSO to make the arrest of Pierce pursuant to the warrant signed by Judge Robicheaux; went to Pierce's residence with LPSO Sgt. Michael Kreamer where he witnessed Sgt. Kraemer arrest Pierce; at the request of Sgt. Kraemer then transported Pierce to the a LPSO substation for booking, where he then transferred custody of Pierce to the LPSO personnel and left. As a result, Plaintiff cannot provide any competent summary judgment evidence to prove that Officer Gaspard acted in any way that caused Plaintiff any actionable harm under state or

federal law as alleged. Therefore, all claims against Officer Gaspard must be dismissed with prejudice.

**g. Qualified Immunity**

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights, which a reasonable person would have known. *Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012) Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Id.* In applying the qualified immunity analysis, individual liability under 1983 must be premised in each defendant's participation in the plaintiff's constitutional injury. *Berry v. Leslie*, 767 F.3d 1144, 1154 (11th Cir. 2014)

Qualified immunity questions should be resolved at the earliest stage in litigation. *Porter v. Epps*, 659 F.3d 440, 445 (5thCir. 2011) Qualified immunity is an immunity from suit, rather than a mere defense to liability, and like an absolute immunity, is effectively lost if a case is erroneously permitted to go to trial. *Scott v. Harris*, 550 U.S. 372, 376 (2007)

When a defendant asserts qualified immunity, a "heavy two-part burden" shifts to the plaintiff to establish (1) a violation of a constitutional right (2) that was clearly established; failure on either element is fatal to the plaintiff's claims. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) It is presumed that law enforcement officers are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs. *Id.* Both steps in the qualified immunity analysis are questions of law. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) To satisfy this burden, the plaintiff may not merely identify an abstract right; the contour of the right

must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Saucier v. Katz*, 533 U.S. 194 (2001)

"A public official performing a discretionary function is entitled to qualified immunity in a civil action for damages, provided his conduct does not 'violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.'"*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a defendant is entitled to qualified immunity, we decide whether facts alleged or shown by the plaintiff make out a violation of a constitutional right, and whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). If there is no violation at all in the Plaintiff's version of the facts, then the Defendant's conduct cannot constitute a violation of clearly established law. *Gentilello v. Rege*, 09-11216 (5th Cir. Dec. 1, 2010).

In *Salas v. Carpenter*, the United States Fifth Circuit stated, "[I]n this circuit, the qualified immunity defense involves a shifting burden of proof. Although we sometimes short-handedly refer to only one party's burden, the law is that both bear a burden. The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id.*; *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir.1987); *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1310 (5th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988). The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that

burden upon plaintiffs. In this case, Carpenter has claimed qualified immunity and established that he acted within his authority as sheriff. If plaintiffs have stated valid claims, they bear the burden of demonstrating that Carpenter's actions violated clearly established law." *Salas v. Carpenter*, 980 F.2d 299, (5th Cir. 1992)

The Statement of Indisputable Facts and the exhibits filed in support of this motion establish that on July 8, 2025 Chief Lafont acted reasonably under the circumstances known to her at all times and reasonably believed that there was sufficient probable cause to arrest Pierce, which was confirmed by Judge Robicheaux, an independent intermediary, when she signed and issued the arrest warrant for Pierce. Chief Lafont is therefore entitled to the protections of qualified immunity and dismissal of all of Plaintiff's claims under federal and/or state law with prejudice.

**h. As to Golden Meadow**

Plaintiff sued Golden Meadow for what appears to be an attempt at articulating *Monell* type violations and alleges that Chief Lafont and Mayor Bouziga are final policymakers and therefore, their alleged violations of Plaintiff's constitutional rights are sufficient to trigger and establish Monell liability against Golden Meadow. The Defendants disagree.

To hold Golden Meadow liable in this case for any *Monell* type violation, Plaintiff must first prove that a municipal officer or employee of Golden Meadow violated Plaintiff's constitutional rights. *Monell v. New York City Depart. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, in order to hold a municipality liable, the Court must conclude that the alleged unconstitutional acts committed by the municipal employee constituted an "official" policy of the City. *Monell, supra.*

In *Pembaur v. City of Cincinnati*, 106 S.Ct. 1292, 1300 (1986), the Court held:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy-maker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite faults on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation. *City of Oklahoma City v. Tuttle*, 105 S.Ct. 2427, 2436 (1985).

Therefore, to prove municipal liability, the Plaintiff must prove the municipality itself was a "moving force" behind the constitutional violation by the employee. *Kentucky v. Graham,* 105 S.Ct. 3099, 3105 (1985). That is, a Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of the County Commissioners v. Brown*, 1997 WL 201995 (U.S. S.Ct. April 28, 1997). This is because the "touchstone of the §1983 action against the government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell, supra*, 98 S.Ct. 2036.

There is no evidence to establish that Golden Meadow and/or Chief Lafont committed any constitutional violation that can be causally linked to some alleged injury suffered by the Plaintiff. Plaintiff admits she suffered no injury from her lawful arrest completed by LPSO Sgt. Kreamer. In addition, there is no evidence to establish that the Chief Lafont committed a constitutional violation that can be causally linked to Golden Meadow or that some custom, policy or practice of Golden Meadow was the moving force behind or caused any deprivation of the Plaintiff's civil rights. The record evidence establishes that Pierce was arrested by LPSO Sgt. Kraemer based upon legal probable cause as confirmed and decreed by Judge Robicheaux, an independent intermediary.

The record further establishes that Chief Lafont acted reasonably under the circumstances known to her on July 8, 2025 and Plaintiff admits that she was not harmed in any way as a result of the arrest.

As a result, Plaintiff cannot prove that any alleged violation of her constitutional rights by Chief Lafont was pursuant to some unknown official policy of the police department and/or Golden Meadow. In light of these indisputable facts, there is no basis for which to hold Golden Meadow liable under 42 U.S.C. §1983 or any other state or federal statute. As a result, the Plaintiff's purported *Monell* allegations against Golden Meadow must be dismissed with prejudice and at the Plaintiff's costs.

**i. False Arrest and False Imprisonment under Louisiana Law**

Plaintiff's claims for false arrest and false imprisonment under Louisiana law must fail as a matter of law, because Chief Lafont developed and established legal probable cause; Judge Robicheaux agreed and issued the arrest warrant, therefore, legal authority for the arrest was established by an independent intermediary. In Louisiana, a claim for false arrest requires the following elements: detention of the person and the unlawfulness of the detention. *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669 (La. 2006).

> False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977). Thus, if police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment. *Id.* Louisiana Code of Criminal Procedure Article 213 provides that a peace officer may arrest a person without a warrant when the peace officer "has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer," La.C.Cr.P. art. 213(3). Reasonable cause to arrest without a warrant is the equivalent of probable cause to obtain an arrest warrant. *State v. Powell*, 598 So.2d 454 (La.App.2d Cir.1992). Therefore, if there was probable cause to arrest, then there is no false arrest cause of action.

> ________ Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a person of average caution in the belief that the person to be arrested has committed or is committing an offense. *Id*. Mere suspicion will not justify an arrest, but proof sufficient to convict is not required. *Id.*

*Dyas v. Shreveport Police Dept.*, 136 So.3d 897 (La.App. 2014).

The Statement of Indisputable Facts and the exhibits filed in support of this motion establish that on July 8, 2025 Chief Lafont acted reasonably under the circumstances known to her at all times and reasonably believed that there was sufficient probable cause to arrest Pierce, which was confirmed by Judge Robicheaux, an independent intermediary, when she signed and issued the arrest warrant for Pierce. Therefore, Plaintiff's claims for false arrest and false imprisonment are impossible as a matter of law and must be dismissed with prejudice.

**j. Assault and Battery Under Louisiana Law**

Officer Gaspard did not arrest Pierce and certainly did not harm Pierce in any actionable way. The record evidence establishes that Officer Gaspard advised the LPSO of the arrest warrant issued for Pierce; then went with LPSO Sgt. Kreamer to Pierce's house and observed Sgt. Kraemer arrest Pierce pursuant to the legally issued arrest warrant. Sgt. Kraemer then asked Officer Gapsard to transport Pierce to a LPSO substation to be booked by LPSO personnel. Officer Gaspard transported Pierce to the substation as requested by Sgt. Kraemer, turned Pierce over to the custody of LPSO and left. Officer Gapsard did not harm Pierce in any way and the arrest by Sgt. Kraemer was pursuant to a legally issued arrest warrant. No assault or battery of Pierce ever occurred. Therefore, these claims must be dismissed with prejudice.

**k. Negligence and Negligent Infliction of Emotional Distress**

Pursuant to Louisiana statutory law and jurisprudence, a police officer is a person who has

been authorized and empowered by a governmental entity to perform duties, which relate to the governmental function of maintaining peace and order. *Herrera v. First Nat. Ins. Co. of America*, 15-1097 (La.App.1st Cir. 6/3/16), 194 So.3d 807, 815, *writ denied*, 16-1278 (La. 10/28/16), 208 So.3d 885. More specifically, a police officer's "permanent duties actually include the making of arrests, the performing of searches and seizures, or the execution of criminal warrants, and is responsible for the prevention or detection of crime or for the enforcement of the penal, traffic, or highway laws of this state." See, LSA-R.S. 40:2402(3)(a).

As such, the duty of a police officer arises from a social contract that confers upon him/her the authority to enforce the laws of the city and state within his jurisdiction and subject to the order of the officer's superiors. *Toomer v. Mizell*, 16-333 (La.App.1st Cir. 2/2/17), 2017 WL 679203, *4. The police officer's duty is to exercise this authority conferred upon him with respect and concern for the well-being of those he is employed to protect and serve. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606, 614.

Police officers are held to choosing a course of action that is reasonable under the circumstances. *Syrie v. Schilhab*, 96-1027 (La. 5/20/97), 693 So.2d 1173, 1177; *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So.2d 318, 326. Most importantly, the reasonableness of a particular action must be judged from the perspective of the reasonable police officer on the scene, not with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989); *Terry v. Ohio*, 392 U.S. 1, 22-27, 88 S.Ct. 1868, 1880-1883 (1968). Finally, an officer's actions need not be the "best" method of approach; instead, the standard of care requires choosing a course of action which is reasonable under the circumstances. *Mathieu*, 646 So.2d at 325.

Louisiana law does not recognize an independent tort of negligent infliction of emotional distress. *Moresi v. Dept. of Wildlife & Fisheries*, 567 So.2d 1081, 1095 (La.1990); *Gonzales v. Ochsner Clinic Foundation*, 14,873 (La.App.5th Cir. 5/14/15), 170 So.3d 1099, 1105; *Covington v. Howard*, 49,135 (La.App.3rd Cir. 9/13/14), 146 So.3d 933, 937. As such, except for the tort of intentional infliction of emotional distress, if a defendant's conduct is merely negligent and it causes only mental disturbance without a physical injury, the defendant is generally not liable for the emotional injury. *Moresi*, 567 at 1096.

The Statement of Indisputable Facts and the exhibits filed in support of this motion establish that on July 8, 2025 Chief Lafont acted reasonably under the circumstances known to her at all times and reasonably believed that there was sufficient probable cause to arrest Pierce, which was confirmed by Judge Robicheaux, an independent intermediary, when she signed and issued the arrest warrant for Pierce. Therefore, Plaintiff's claims for negligence or negligent infliction of emotional distress must be dismissed with prejudice.

**k. Intentional Infliction of Emotional Distress**

Louisiana recognizes a legally protected right to be free from serious, intentional invasions of mental and emotional tranquility. As such, the intentional infliction of emotional distress is a viable cause of action in Louisiana. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). However, in such cases, the defendant's conduct must be outrageous and she must have intended to cause emotional distress. In this vein, the Louisiana Supreme Court in *White* described that conduct which would give rise to recovery for such a claim as follows:

> One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*White*, 585 So.2d at 1209; *O'Conner v. Nelson*, 10-250 (La.App.5th Cir. 1/11/11), 60 S.3d 27, 33.

Accordingly, a plaintiff seeking recovery for intentional infliction of emotional distress must establish that:

1) the defendant's conduct was extreme and outrageous;
2) the emotional distress suffered by plaintiff was severe; and,
3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White*, 585 So.2d at 1209. See also, *Kim v. Kim*, 07-318 (La.App.5th Cir. 10/30/07), 970 So.2d 1158, 1165; *Alvarez v. Clasen*, 06-304 (La.App.5th Cir. 10/31/06), 946 So.2d 181, 184; *Almerico v. Dale*, 05-749 (La.App.5th Cir. 3/28/06), 927 So.2d 586, 592; *St. Germain v. Coulon*, 05-639 (La.App.5th Cir. 1/31/06), 922 So.2d 627, 630.

The threshold for a Plaintiff to establish "extreme and outrageous behavior" is quite high. Such extreme and outrageous conduct is defined as conduct so atrocious as to go beyond all possible bounds of decency and to be utterly intolerable to civilized society. *White*, 585 So.2d at 1209. In short, the conduct also must actually be intended to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like. *Id*., 585 So.2d at 1210. See also, *St. Germain*, 922 So.2d at 630-631.

In addition, the second prong of the *White* test requires that "[t]he distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental anguish or suffering is extreme." *White*, 585 So.2d at 1209.

As to the third prong of the test, the acts must be intentional in the sense that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to

follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of the act rather than to the act itself. *White*, 585 So.2d at 1208. "Substantially certain" in this sense has been interpreted to mean "nearly inevitable," "virtually sure," and "incapable of failing." *Landry v. Uniroyal Chem. Co.*, 653 So.2d 1199, 1203 (La.App. 1st Cir.1995). Furthermore, the "conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *White,* 585 So.2d at 1210.

Plaintiff alleges that Chief Lafont abused her position of power by having Plaintiff unlawfully arrested and imprisoned and that she desired to inflict severe emotional distress or was substantially certain that severe emotional distress would occur. These allegations are purely self-serving and conclusory and there is no proof that Chief Lafont ever intended to inflict any harm, severe emotional pain and/or distress on Plaintiff. In addition, Plaintiff testified that she suffered no harm during the arrest and during the two hours that she was detained by the LPSO seated on a bench.

The Statement of Indisputable Facts and the exhibits filed in support of this motion establish that on July 8, 2025 Chief Lafont acted reasonably under the circumstances known to her at all times and reasonably believed that there was sufficient probable cause to arrest Pierce, which was confirmed by Judge Robicheaux, an independent intermediary, when she signed and issued the arrest warrant for Pierce. Therefore, Plaintiff's claims for Intentional Infliction of Emotional Distress against Chief Lafont fail as a matter of law and must be dismissed with prejudice.

**k. False Imprisonment**

"The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Tabora v. City of Kenner*, 94-

613, p. 8 (La. App. 5 Cir. 1/8/95) 650 So.2d 319,322, writ denied, 95-0402 (La. 3/30/95), 651 So.2d 843." *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 690 (La. 2006)).

As argued previously, legal probable cause for the arrest of Pierce was established by the issued arrest warrant and as a result of Chief Lafont's good faith investigation of the complaint lodged against Plaintiff by Amber Sibley. Chief Lafont was objectively reasonable in her belief that probable cause existed for the arrest, probable cause was confirmed by the warrant issued by Judge Robicheaux, an independent intermediary, and therefore, Plaintiff's claims for false imprisonment against Chief Lafont fail as a matter of law and must be dismissed with prejudice.

**l. Abuse of Process**

"The tort of abuse of process involves the misuse of a process whereby a party attempts to obtain a result that is not proper under the law. *No Drama, LLC v. Caluda*, 2015-211, p. 5 (La.App. 5 Cir. 10/14/15), 177 So.3d 747, 751. The essential elements of an abuse of process claim are: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *Waguespack*, 99-2016 at p. 5, 768 So.2d at 290-91. In order to set forth a cause of action for abuse of process, a plaintiff must allege irregularity in the process itself. *Delcambre v. Mancuso*, 2018-833, pp. 7-8 (La.App. 3 Cir. 4/10/19), 268 So.3d 325, 331." *Foster v. Bias*, 2022 CA 0329 (La. Ct. App. 1 Cir. 12/22/22)

Plaintiff alleges that Mayor Bouziga committed abuse of process when he knowingly transmitted an order to Chief Lafont to seek a warrant using an inapplicable criminal code article to arrest Plaintiff. (Doc. 1, ¶186) There is absolutely no evidence to support this allegation. Therefore, this claim as to Mayor Bouziga must be dismissed with prejudice.

Plaintiff alleges that Chief Lafont committed an abuse of process when she knowingly lied under oath by making false statements in the warrant application to have Dawn Pierce arrested.

(Doc. 1, ¶187) To the contrary, as set forth in the Statement of Indisputable Facts, Chief Lafont's reasonable belief that there was sufficient probable cause to arrest Pierce on July 8, 2025 was based on her investigation, the statements of Amber Sibley, her perception of the photos of Amber Sibley that depicted Amber Sibley's nipple posted online publicly by Plaintiff without permission and her review and perception of the statute. There is no articulated allegation of and no evidence of an ulterior purpose and certainly no articulation of or evidence of a willful act in the use of the process not proper in the regular prosecution of the proceeding. Therefore, there is no evidence to establish a claim for abuse of process against Chief Lafont and this claim must be dismissed with prejudice.

**n. Qualified Immunity under Louisiana State Law**

Under Louisiana law, liability shall not be imposed on public officers or employees based on the exercise or performance or the failure to exercise or perform discretionary acts when such acts are within the course and scope of their lawful powers and duties. La.R.S. 9:2798.1 (B).

Government officials are entitled to qualified immunity when performing discretionary functions. *Jackson v. State of La., Dept. of Corrections*, 00-2882 (La.5/15/01), 785 So.2d 803, 808-810. The Louisiana Supreme Court has held that §9:2798.1 clearly and unambiguously applies to policymaking or discretionary acts when such acts are within the course and scope of lawful powers and duties. *Gregor v. Argenot Great Central Ins. Co.*, 02-1138 (La. 5/20/03), 851 So.2d 959, 967; *Herrera v. First National Ins. Co. of America*, 2015-1097 (La.App.1st Cir. 6/3/16), 194 So. 3d 807, 814. Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it. *Marxhall*, 2018 WL 4520245, *5 (unpublished); *Trantham v. City of Baker*, 10-1695 (La.App.1st Cir. 3/25/11), 2011 WL 1103628 (unpublished).

Chief Lafont acted reasonably at all times under the circumstances known to her at the time of her investigation and application for the arrest warrant of Plaintiff and with legal probable cause.

In considering the facts and circumstances presented to her, Chief Lafont made the purely discretionary decision to apply for an arrest warrant based on her reasonable belief that there was sufficient probable cause to arrest Pierce for violation of La. 14:283.2 on July 8, 2025. The probable cause that served as the basis of Chief Lafont's discretionary acts was confirmed by Judge Robicheaux, an independent intermediary, when she issued the arrest warrant. Therefore, Plaintiff cannot establish that Chief Lafont acted in any way that would prevent her from taking advantage of and invoking the protections of La.R.S. 9:2798.1. In addition, Plaintiff cannot establish that Mayor Bouziga or Officer Gaspard acted in any way that would prevent them from taking advantage of and invoking the protections of La.R.S. 9:2798.1. As such, Chief Lafont, Mayor Bouziga and Officer Gaspard respectfully moves this Honorable Court to declare that they are entitled to the protections of La.R.S. 9:2798.1 and order that all of the Plaintiff's claims against them under Louisiana state law must be dismissed with prejudice and at Plaintiff's cost.

**IV. Conclusion**

As set forth above, the record establishes that there is no material question of fact at issue as to whether Plaintiff can prove any allegation of wrongdoing against Chief Lafont or the other Defendants under federal and/or Louisiana state law. In addition, Chief Lafont, Mayor Bouziga and Officer Gaspard are entitled to qualified immunity under federal and state law. Therefore, the Defendants respectfully move for and pray that this Honorable Court, after all due proceedings are had, grant this motion for summary judgment and issue an order in their favor that all of Plaintiff's claims against Golden Meadow, Mayor Bouziga, Chief Lafont and Officer Gaspard be dismissed with prejudice and at the Plaintiff's costs.

Dated: October 29, 2026

Respectfully submitted,

NIELSEN & TREAS, L.L.C.

*/s/ Keith M. Detweiler*
Keith M. Detweiler, La. S.B. #20784
3838 N. Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
P: (504) 837-2500
F: (504) 603-0730
Email: kdetweiler@nt-lawfirm.com
*Counsel for Defendants, Town of Golden Meadow, Mayor Joey Bouziga, Chief Michelle Lafont and Officer Tristin Gaspard*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of October, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Keith M. Detweiler*
Keith M. Detweiler