**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DAWN PIERCE,<br><br>Plaintiff<br>v.<br><br>TOWN OF GOLDEN MEADOW, et al.<br><br>Defendants. | Case No. 25-cv-02178-WJC-DPC |

**Opposition to Defendants' Motion for Summary Judgment**

Defendant Chief Lafont arrested Plaintiff Dawn Pierce for resharing a third person's photos. The photos were already public, and did not show any nipples or genitalia. Ms. Pierce sued for false arrest.

Defendants have moved for summary judgment (R. Doc. 45) on a clear, simple theory: if Chief Lafont claims she had "a perception" of nipples in the photos, there can be no liability.

That theory is clear. It is simple. And it is wrong.[1]

Defendants' theory is legally wrong because even if the photos showed nipples, that would not be enough for probable cause. Per the text of the statute, the photos would also have to be private – and Chief Lafont testified that she knew the photos were public advertisements, rather than private photos.

Indeed, Defendants have consistently treated the photos as public. They produced them in response to a public records request, and they filed them into the open record of this Court. It is shocking that the Defendants *continue* to assert that it is a felony crime to publicly share the photos – while simultaneously sharing the photos publicly themselves.

---

[1] "For every complex problem there is an answer that is clear, simple, and wrong." *Isaac Indus., Inc. v. Venezuela*, 2022 U.S. Dist. LEXIS 221695, at *1 (S.D. Fla. Dec. 8, 2022), quoting H.L. Mencken.

Defendants' theory is also legally wrong because the U.S. Supreme Court has held that a Fourth Amendment claim like Plaintiff's is evaluated on an objective standard, rather than a subjective standard. For that reason, Chief Lafont's idiosyncratic "perception" of non-existent nipples is largely legally irrelevant. Under an objective standard, what matters is whether the photos actually were private and showed the requisite body parts.

And Defendants' theory is factually wrong. Three other law enforcement officers (including two who currently work for Chief Lafont's department) and the district attorneys office reviewed the photos, and all four agreed that there are no nipples visible. Some of them expressed concern that arresting someone based on those photos would be a "false arrest." And per *Scott v. Harris,* 550 U.S. 372 (2007), the Court need not take Chief Lafont's word for it: it can review the photos itself and see that there are no nipples present.

For those reasons and those described herein, the motion should be denied.

## DISCUSSION

### A. This Court should deny Defendants' motion because L.R. 56.1 requires a "concise statement" of facts, and Defendants provided nine pages of meandering narrative.

Local Rule 56.1 requires that a motion for summary judgment attach a "concise statement" of the material facts which the moving party contends present no genuine issue. Courts will sometimes deny motions for summary judgment that are supported by long, meandering narratives that are difficult to parse into discrete facts. *E.g., Pike v. Caldera,* 1999 U.S. Dist. LEXIS 13746 (S.D. Ind., Sept. 7, 1999) ("If a party seeks to present a narrative version of the facts, that should be done in the brief. . . . Submissions consisting of numbered *paragraphs*, rather than *sentences*, provide an immediate indication that the litigant has, in all likelihood, incorrectly applied the rule."); *Widmar v. Sun Chemical Corp.*, 11-c-1818 (N.D. Ill., Oct 16, 2012) (denying summary

judgment a moving party attached a lengthy statement of material facts in which many facts were long, multi-sentence narratives).

Here, Defendants' motion is supported by thirty-four numbered paragraphs of what it calls "indisputable" material facts. R. Doc. 45-1. These thirty-four paragraphs span nine pages, and many of them are long, multi-sentence narratives. *Id.* They contain items completely irrelevant to the legal issues, such as whether Plaintiff was washing a pot when she was arrested, whether Plaintiff helps her husband run a billboard business, whether her sons were inside or outside at the time of arrest, who contacted the bail bondsman, etc. *Id.* It is very difficult to separate the thirty-four paragraphs into discrete facts, or figure out which portions Defendants contend are actually material to their motion. For that reason, Defendants' motion does not comply with L.R. 56.1, and should be denied.

**B. This Court should deny Defendants' motion because it relies on supposed facts that are not even consistent with <u>Defendants'</u> testimony.**

In order to prevail on summary judgment, a party must show the absence of disputed, material facts. The core of Defendants' thirty-four paragraphs of proffered facts is the idea that Chief Lafont "believed" the photos were private and "perceived" that they showed nipples, and so there was probable cause to arrest Dawn Pierce under a revenge porn statute. R. Doc. 45-1.

But those "facts" are not consistent with even Chief Lafont's own testimony. The Chief admitted at deposition that she understood that the photos were <u>public advertisements</u>, not private intimate photos. R. Doc. 38-5 (Dep. of Lafont) at 57:10-19 ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.")

Furthermore, Chief Lafont swears she relied on Ms. Sibley's statements. R. Doc. 45-3 at ¶ 15 ("I believed that Amber Sibley was telling me the truth"). But Ms. Sibley testified that she told Chief Lafont that the photos were public, not private. R. Doc. 45-12 at 5 ("you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct."); *see also id.* at 33:15-34:18 ("Q If you flip through that police report, all these photos that you see in there were on the public, plus section of Twitter, correct? A Yes, sir.")

The motion should be denied because it relies on disputed facts.

**C. Defendants' motion should be denied because its facts section contains a range of statements that are contrary to the evidence.**

Defendants' brief contains a three-page section entitled "Statement of Indisputable Material Facts." R. Doc. 45-2 at 3-5. But the evidence developed during discovery shows that many facts in that section are false. For example, the brief asserts that "Chief Lafont's investigation revealed" the relevant photos to have "been posted to a private subscriber account" and that they were "private photos." *Id.* at 3. Not so. At deposition, Chief Lafont admitted she understood that Amber Sibley posted the "photos in public to sort of advertise and invite people to subscribe to her nude content." R. Doc. 38-5 (Dep. of Lafont) at 57:10-19. Chief Lafont also testified that the photos were "public posts by Amber Sibley." *Id.* at 56:9-15.

The brief also contends that Dawn Pierce was not "emotionally harmed in any way" by her arrest. R. Doc. 45-2 at 5. It is unclear how Defendants justify that assertion. At deposition, Ms. Pierce described the depression and anxiety her arrest has engendered, to the point where she is being treated by a psychiatrist for PTSD. R. Doc. 45-15 at 11.

Given that the motion substantially misrepresents the facts, it should be denied.

**D. Defendants' motion should be denied because it is premised on Chief Lafont's subjective "perception" of nipples, which is irrelevant to the objective analysis of a Fourth Amendment claim.**

Defense counsel's duty of candor to the court prevents him from saying the photos show nipples, given that they do not. For that reason, the motion repeatedly refers to Chief Lafont "perceiving" nipples or "believing" the photos showed nipples. *See* R. Doc. 45-2 at 4, 5, 8, 9, 11, 22, 23, 24. Chief Lafont's "perception" and "belief" would certainly be relevant if a Fourth Amendment claim were assessed on a subjective standard. But it is not; a Fourth Amendment claim is assessed on an objective standard. *Whren v. United States*, 517 U.S. 806 (1996) (noting that an arrest is legal when the "circumstances, viewed objectively, justify that action."), *citing Scott v. United States*, 436 U. S. 128, 138 (1978); *Mesa v. Prejean,* 543 F. 3d 264, 273 (5th Cir. 2008) ("Probable cause is an objective standard."); *Williams v. Divitoria*, 777 F. Supp. 1332, 1339 n.9 (E.D. La. 1991) ("When testing the legitimacy of an arrest for purposes of a false arrest claim, courts use an objective standard.").

To determine probable cause, courts compare the arrestee's actual conduct to the text of the relevant criminal statute; not the officer's "beliefs" about that conduct. *Club Retro, LLC v. Hilton*, 568 F. 3d 181, 205-206 (5th Cir. 2009) (comparing arrestee's conduct to R.S. 26:371(B) to determine if probable cause existed); *U.S. v. Granado*, 302 F. 3d 421, 423-424 (5th Cir. 2002) (comparing arrestee's conduct to text of Texas Transportation Code). Fundamentally, there is no probable cause if "the conduct complained of is not a criminally actionable offense." *Rogers v. Smith*, 20-cv-517, R. Doc. 195 at *13 (E.D. La., May 13, 2022). And so an officer's "incorrect belief" about a violation of law is insufficient for probable cause. *U.S. v. Granado*, 302 F. 3d 421, 423 (5th Cir. 2002); *see also U.S. v. Cole*, 444 F. 3d 688, 689 (5th Cir. 2006) ("Our research reveals

no case in this circuit which has relied on the good faith exception to justify a traffic stop when the police officer erroneously believed the conduct he observed was a traffic violation.").

Given the law, Chief Lafont's subjective belief that she can see nipples that are invisible to other people[2] is legally irrelevant given the Fourth Amendment standard. And her "perception" of nipples is also irrelevant for another reason. For there to be probable cause to arrest someone under R.S. 14:283.2 for sharing photos, the photos must *both* show specific body parts *and* be private photos. R.S. 14:283.2(A)("A person commits the offense of nonconsensual disclosure of a private image when all of the following occur . . .). Chief Lafont understood this. R. Doc. 38-5 at 19:17-21:15. But Chief Lafont testified multiple times that she knew the photos were <u>public</u>. R. Doc. 38-5 at 57:10-19, 56:9-15.[3] So even if the photos did show nipples, there still wouldn't be probable cause – because the other necessary criterion that the photos be private was not met.

Chief Lafont even admitted at deposition that "if Amber Sibley herself had put these photos up on the Internet, then it wouldn't be legal to arrest Dawn Pierce for sharing them somewhere else." *Id.* at 53:22-54:4. Compare that with Chief Lafont's own police report, which clearly states that Amber Sibley and her fiance posted the photos. R. Doc. 38-15 at 1 ("Amber . . . stated that she and her fiance made an OnlyFans webpage and posted pictures of her in negligees").

And with the sole exception of arresting Dawn Pierce, Defendants consistently have treated the photos as public. Prior to the filing of this lawsuit, they produced them in response to a public records request. R. Doc. 38-10 at 22:6-23:6. After the filing of the lawsuit, they filed the photos into

---

[2] R. Doc. 38-10 at 19 ("Q. And you can see nipples that three other officers cannot see? A. I did, yes, sir.")
[3] There were also abundant other indicia that the photos were public. Some of the photos had a button that said "Subscribe to see user's posts," and Chief Lafont testified that she understood that this indicated that the photos were "not private" – that they were instead "public posts by Amber Sibley." R. Doc. 38-5 at 56:1-15. Chief Lafont conceded that some of the posts had a button that said "Share this post with anyone, even if they aren't on [Twitter] yet," indicating further that these lingerie photos were not private. *Id.* at 58:5-13. Cf. R. Doc. 38-15 at 9.

the public record of the court, without any protective order or motion to seal. R. Doc. 45-4 and 45-5.[4]

So even if Chief Lafont's subjective perception of nipples were controlling, there still would have been no probable cause for the arrest – because the photos were not in any way private. And almost all of Defendants' motion hinges on the issue of probable cause. They argue that the probable cause issue is the determining factor for "all of Plaintiff's claims for violations of free speech, false arrest, false imprisonment, illegal search and seizure, civil conspiracy, Monell liability, and violations under Louisiana state law." R. Doc. 45-2 at 11. Given that their motion hinges on the presence of probable cause, and given that Chief Lafont's own testimony shows that there was not probable cause, the motion should be denied.

**E. The Court should deny the motion because the Fifth Circuit has held that when an arrest is based on conduct that does not meet a criminal statute's criteria, qualified immunity must be denied.**

Defendants' motion invokes qualified immunity on behalf of the individual defendants. R. Doc. 45-2 at 13. (The Town, however, is not eligible for that protection.) But Defendants do not actually engage in any qualified immunity analysis. Rather, they spend two pages stating generic legal propositions about qualified immunity and then add one conclusory sentence that the "Statement of Indisputable Facts and the exhibits filed in support" establish that Chief Lafont acted reasonably. *Id.* at 15.

Qualified immunity, however, should be denied here. The Fifth Circuit has held that when a person is arrested for conduct that does not meet the criteria of a criminal statute, qualified immunity must be denied. In *Bailey v. Iles,* 87 F. 4th 275 (5th Cir. 2023), the Fifth Circuit addressed

[4] Notably, Chief Lafont testified that even now, she will seek an arrest warrant for anyone who shares the photos. R. Doc. 38-10 at 16:19 to 17:17. Thus, if Chief Lafont's testimony is taken as serious and sincere, she will be seeking a warrant for the arrest of her own lawyer as well as the Town Attorney on felony charges.

a case in which a plaintiff was arrested for terrorizing, despite his conduct not matching the statute. The Fifth Circuit rejected the defendant's argument that "the law was not clearly established, and that he is therefore entitled to qualified immunity, because there is no Fifth Circuit precedent addressing warrantless arrests pursuant to the Louisiana terrorizing statute." *Id.* at 287. The court explained that the plaintiff did not "have to identify such a case to defeat qualified immunity" because it is beyond debate that an "arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment.'" *Id., citing Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). The Fifth Circuit concluded that because the plaintiff's conduct did not violate the text of the statute, there was no probable cause – and therefore no qualified immunity. *Id.*

So too in *Rogers v. Smith*, 2023 U.S. App. LEXIS 20871 (5th Cir. Aug. 9, 2023) (*per curiam, unpub.*). In that case, the trial court denied qualified immunity and granted summary judgment to plaintiff because what he had been arrested for could not have possibly violated the state's criminal defamation statute. The Fifth Circuit affirmed. And the Supreme Court denied certiorari. *Smith v. Rogers*, 144 S. Ct. 501 (2023).

So too here. Ms. Pierce's conduct failed to match multiple criteria of the criminal statute. R.S. 14:283.2(A) is explicit that a person "commits the offense of nonconsensual disclosure of a private image" only when "all of the following occur." The list that follows includes both (1) that the photos be private and also (2) that the photos show specified body parts or sexual conduct. The photos relevant here were neither private nor showed the specified body parts or sexual conduct. There was therefore no probable cause to arrest her. And under *Bailey* and *Rogers*, that should lead to the denial of qualified immunity. This Court should deny the motion.

**F. The Court should deny the motion because Plaintiff has established two *Monell* theories of the Town's liability.**

Defendants' brief makes the conclusory assertion that there is no basis to find that the Town is liable for Chief Lafont's constitutional violations under *Monell*. R. Doc. 45-2 at 15-17. But Defendants do not grapple with or even acknowledge the *Monell* theories that Plaintiff alleged in the complaint and then proved in discovery.

The first theory is an act of the final policymaker herself. In *Pembaur v. City of Cincinnati*, the Supreme Court held that where an "action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." 475 U.S. 469, 481-83 (1986). As a result, the Fifth Circuit has repeatedly held that the requirements of *Monell* are satisfied when the bad act is committed by the final policymaker themselves. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (recognizing that the "official policy" requirement is met "[w]here no 'official policy' was announced or promulgated but the action of the policymaker itself violated a constitutional right."). There is good reason for that rule: when "the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it . . . represents an act of official government 'policy' as that term is commonly understood." *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. App'x 958, 962 (5th Cir. 2020).

Here, Chief Lafont is the elected head of the Town's police department. R. Doc. 38-10 at 14:23-25. It is undisputed that Chief Lafont is the Town's final policymaker for police business. See R. Doc. 38-5 at 129:2-8 ("Q So you're the final policymaker for police business. Correct? . . . The Witness: Correct.") And it was Chief Lafont herself who conducted the investigation, sought the arrest warrant, and ordered the arrest of Ms. Pierce. As a result, the "act of the final policymaker" *Monell* theory is established.

The second proven *Monell* theory is ratification. "Ratification 'provides another way of holding a city liable under § 1983.'" *Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024), *quoting Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023). Specifically, the Supreme Court has held that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Notably, ratification requires "approval" and not "mere acquiescence." *Benfer, supra.*

Here, at its 30(b)(6) deposition, the Town confirmed that it approved of Chief Lafont's arrest of Dawn Pierce and the basis for it. R. Doc. 38-10 at 15:20-25 ("Q. Does the Town approve of Chief Lafont's arrest of Dawn Pierce? A. Yes, sir. Q. Does the Town approve of the basis for Chief Lafont's arrest of Dawn Pierce? A. Yes, sir.") As a result, the Town has ratified the Chief's conduct.

Given that the evidence establishes two *Monell* theories of the Town's liability for Chief Lafont's actions, the motion should be denied.

**G. The Court should deny the motion because Defendants do not address the exceptions to the independent intermediary doctrine.**

Under the independent intermediary doctrine, a warrant signed by a neutral magistrate will sometimes immunize an officer from liability for false arrest. Defendants' brief contains scattered references to an "independent intermediary" (R. Doc. 45-2 at 3, 15-16), but it is unclear whether they are seeking dismissal on that basis.

If they are, they are wrong. That doctrine does not immunize Defendants here because of the exceptions to the independent intermediary doctrine. For example, under *Franks v. Delaware*, 438 U.S. 154 (1978), a warrant will not immunize an officer if the officer provides false information or omits important information from the judge. And under *Messerschmidt v. Millender*, 565 U.S.

535, 547 (2012), a warrant will not immunize an officer if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."

Here, both exceptions apply. Chief Lafont provided false information to the judge that the images show Ms. Sibley in "see through negligees" and "see through underwear." R. Doc. 45-11. The images do not show that, as Chief Lafont admitted in her deposition. See R. Doc. 38-5 at 27:22-24 ("Q Okay. Because this is not a fully transparent underwear. Correct? A Correct.") *See also* R. Doc. 38-9 (Gaspard Dep.) at 23:7-9 ("Q So it's not see-through underwear. Right? A Correct."); 38-8 (Kreamer Dep.) at 34:4-12 ("Q Okay. But the underwear is not see -- you wouldn't describe it as see-through underwear, right? . . . THE WITNESS: I wouldn't describe that as see-through underwear; you're correct."). Chief Lafont also told the judge that the pictures were "private images." R. Doc. 45-11. They were not, as discussed above. And Chief Lafont also omitted crucial information: she withheld from the judge the fact that the images were "advertisements for Amber's business" – even though Chief Lafont knew that at the time. R. Doc. 38-5 at 98:2-17. Accordingly, the *Franks* exception applies here.

And no reasonable officer would have sought this warrant, given that the statute required both private photos and visible genitals or sex acts – and these photos were neither. That is corroborated by the fact that every other law enforcement officer who has testified in this case has been clear that they would not seek an arrest warrant based on these photos. Lt. Traigle of LPSO (the officer who Chief Lafont consulted) reviewed the images at deposition and testified that he would not "be comfortable" with one of his deputies executing an arrest based on those photos, because it "**might be a false arrest.**" R. Doc. 38-7 at 33:7-34:7. Same with Sgt. Tristin Gaspard, the GMPD officer who Chief Lafont directed to have Dawn arrested. At deposition, he reviewed the photos and did not see any intimate parts or sexual conduct as defined in that statute. R. Doc.

38-9 at 21:20-24:12. He testified that he would not have been able to arrest someone based on those photos. *Id.* at 25:24-26. And the same with Sgt. Kreamer, the LPSO officer who helped the arrest. At deposition, he reviewed the photos for the first time and did not see any intimate parts or sexual conduct as defined in that statute. R. Doc. 38-8 at 30:5-32:19. He testified he would not have been able to arrest anyone based on those photos. *Id.* at 30:15-24; 35:25-36:10. The district attorney's office agreed: their screening memorandum concluded that "these pictures do not show 'fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, or anus.' Also the nipples are not partially or fully exposed and cannot be seen thru transparent clothing." R. Doc. 47-2. Accordingly, the *Messerschmidt* exception applies here.

Given that multiple exceptions to the independent intermediary doctrine apply here, the motion should be denied.

**H. This Court should deny Defendants' motion regarding state law torts because Chief Lafont's testimony confirms there was no probable cause for arrest.**

Defendants also move for the dismissal of Plaintiff's state law tort claims of false arrest and imprisonment, assault and battery, negligence and NIED, IIED, and abuse of process. R. Doc. 45-2 at 17-24. For almost all of these, Defendants simply state the elements of the claim and then add a conclusory statement that Chief Lafont "acted reasonably" because she believed there was probable cause, and because a judge signed the warrant. But as described above, there could not have possibly been probable cause because Chief Lafont admitted the photos were public and because the photos do not show the requisite body parts. Defendants also do not address the exceptions to the independent intermediary doctrine, so the fact that the judge signed the warrant is in no way dispositive.

Regarding abuse of process, Defendants go a little further and suggest that there is no "evidence of an ulterior purpose" for Chief Lafont to lie in her warrant application. R. Doc. 45-2.

But there is. Initially, the Chief said she wasn't even sure if Ms. Pierce's actions were criminal. R. Doc. 38-5 at 70:12-15. The Chief initially found the matter "funny" and "a little annoying." *Id.* at 73:24-74:8. She and Sgt. Gaspard exchanged texts laughing about the facts and suggesting that Amber "needs to chill." R. Doc. 38-9 at 54:18-22. But then Ms. Sibley and her fiance kept calling about it, and they got the mayor to call Chief Lafont. R. Doc. 38-5 at 70:1-11. Ms. Sibley testified that Chief Lafont appeared to be growing "frustrated that people were kind of nagging her about this." R. Doc. 38-6 at 26:13-16. This evidence suggests that Chief Lafont obtained a bogus arrest warrant for Dawn Pierce based on a very human motive – the motive of getting annoying people to stop calling.

Regarding IIED, Chief Lafont may not have intended to cause Ms. Pierce severe emotional distress when she had her falsely arrested, but – as Defendants' brief concedes – intent is not necessary. It is sufficient that a tortfeasor knows that emotional distress is "substantially certain to follow from his conduct, whatever his desire may be as to that result." R. Doc. 45-2 at 21-22. And under Louisiana law, a "presumption exists to the effect that one presumes the consequences of his deliberate acts." *In re Haggerty*, 257 La. 1, 38-39, 241 So.2d 469, 482 (1970). Here, a reasonable jury could conclude that Chief Lafont was aware that severe emotional distress to Ms. Pierce would result from the Chief's choice to lie to a judge to get Ms. Pierce arrested for conduct that was not a crime. That is particularly so given the text messages in which Chief Lafont was joking with her colleagues about the issue, but then turned around and arrested Dawn Pierce. R. Doc. 38-9 at 54:18-22.

Regarding assault and battery, Ms. Pierce has plausible claims there. Because there was no legal basis to arrest her, there was no legal basis for officers to touch her without her consent. But

nevertheless, Ms. Pierce will withdraw those claims and consent to their dismissal. Otherwise, the motion should be denied.

## I. This Court should deny the motion because Defendants make no effort to show that any of the elements of 9:2798.1 are met.

Defendants assert immunity under La. R.S. 9:2798.1 (also known as "discretionary immunity.") R. Doc. 45-2 at 24-25. But Defendants do not explain, cite, or engage with the multi-step analysis that courts have set out for assessing a R.S. § 9:2798.1 defense.

R.S. 9:2798.1 bars liability for "policymaking or discretionary acts." The statute does not protect actions at "the operational level, but only confers immunity for policy decisions; *i.e.* decisions based on social, economic, or political concerns."[5] Thus, it protects "from liability only at the policy making or ministerial level, not at the operational level."[6] As such, there is a multi-part test for determining whether immunity applies. That test includes at least four steps:

1. A court should first determine whether the entity's actions or omissions were at the "operational level" or at the "policy making or ministerial level."[7]

2. Next, a court should determine whether the official "violated a statute, regulation, or policy specifically prescribing a mandatory course of action".[8]

3. If no mandatory duty was violated, "then the court must next determine whether the discretionary act was related to public policy considerations."[9]

4. If the first three steps are cleared, a court must then assess whether the entity's actions or omissions "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[10]

---

[5] *Saine v. City of Scott*, 819 So.2d 496 (La. App. 3 Cir.2002) (*citing Chaney v. Nat. R.R. Passenger Corp.*, 583 So.2d 926, 929 (La. App. 1 Cir.1991)).
[6] *Fowler v. Roberts*, 556 So.2d 1, 15 (La.1989) (on reh'g).
[7] *Id.*
[8] *Lockett v. New Orleans City*, 639 F.Supp.2d 710 (E.D. La., 2009), citing *Fowler v. Roberts*, 556 So.2d 1 (La.1989); *Watters v. Department of Social Services*, 15 So.3d 1128, 2009 WL 1709582 (La. App., 2009).
[9] *Id.*
[10] R.S. 9:2798.1(C)(2); *see McNeal v. LeBlanc*, 18-cv-736, R. Doc. 165 at *42 (M.D. La., Jan 30, 2025) (denying 9:2798.1 immunity when "a reasonable jury could find that [defendant official] acted recklessly").

Here, Defendants' argument fails on all four steps. First, arrests are classical operational-level actions. Second, Chief Lafont's actions violated a mandatory requirement: the constitutional requirement of probable cause for an arrest. Third, there is no indication that the arrest was related to broader public policy considerations; rather, it seems like Chief Lafont executed the arrest to get citizens and the mayor to stop nagging her. And fourth, a reasonable jury could certainly find that Chief Lafont's actions constituted reckless or flagrant misconduct, given that she had a woman arrested for conduct that was in no way a violation of the criminal statute.

Given that Defendants do not engage with – or even acknowledge – the multi-step analysis for R.S. 9:2798.1, the motion should be denied.

**J. Defendants' motion should be denied as to Gaspard and Bouziga because they offer no legal authority that non-parties can file motions for summary judgment.**

Generally, a non-party may not file a dispositive motion in a case they are not a party to. *See, e.g., Bridgeport Music, Inc. v. Smith,* 714 F. 3d 932, 940 (6th Cir. 2013) ("The general rule is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion.") For a non-party to file a dispositive motion, the process typically is to seek intervention under Rule 24, and then file the dispositive motion if intervention is granted.

Here, Defendants consented earlier in this case to the dismissal of defendants Joey Bouziga and Tristin Gaspard without prejudice, and this Court ordered those two defendants dismissed. R. Doc. 37. Bouziga and Gaspard are therefore not currently parties to this case. But they are included as moving parties for Defendants' summary judgment motion. R. Doc. 45-2 at 2. They explain that they "seek dismissal of all claims against them with prejudice." R. Doc. 45-2 at 2. They do not, however, offer any legal authority for how a dismissed, non-party can file a motion for summary judgment. Because Bouziga and Gaspard are not parties to this case, the motion should be denied as to them.

## CONCLUSION

For the reasons described above, this Court should deny Defendants' motion, with the sole exception of a consent dismissal of the claims for assault and battery.

Respectfully submitted,

*/s/ William Most*

HOPE PHELPS (La. Bar No. 37259)
WILLIAM MOST (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
*Counsel for Plaintiff, Dawn Pierce*