**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DAWN PIERCE,<br><br>Plaintiff<br>v.<br><br>TOWN OF GOLDEN MEADOW, et al.<br><br>Defendants. | ) | Case No. 25-cv-02178-WJC-DPC |

**Plaintiff's Response to Defendants' Material Facts, and Plaintiff's Additional Facts**

**General Objection to Defendants' Material Facts:** Local Rule 56.1 requires that a motion for summary judgment attach a "concise statement" of the material facts which the moving party contends present no genuine issue. Courts will sometimes deny or strike motions for summary judgment that are supported by long, meandering narratives that are difficult to parse into discrete facts. *E.g., Pike v. Caldera,* 1999 U.S. Dist. LEXIS 13746 (S.D. Ind., Sept. 7, 1999) ("If a party seeks to present a narrative version of the facts, that should be done in the brief. . . . Submissions consisting of numbered *paragraphs*, rather than *sentences*, provide an immediate indication that the litigant has, in all likelihood, incorrectly applied the rule."); *Widmar v. Sun Chemical Corp.*, 11-c-1818 (N.D. Ill., Oct 16, 2012) (denying summary judgment a moving party attached a lengthy statement of material facts in which many facts were long, multi-sentence narratives).

Here, Defendants' motion is supported by thirty-four numbered paragraphs of what it calls "indisputable facts." R. Doc. 45-1. These paragraphs span nine pages, and many of them are long, multi-sentence narratives. *Id.* They contain items completely irrelevant to the legal issues, such as whether Plaintiff was washing a pot when she was arrested, whether Plaintiff helps her husband run a billboard business, whether her sons were inside or outside at the time of arrest, who

contacted a bail bondsman, etc. *Id.* For that reason, Defendants' facts do not comply with L.R. 56.1, and should be struck. Without waiving that objection, Plaintiff answers as follows:

| | **Defendants' Material Fact** | **Plaintiff's Response** |
|---|---|---|
| **1** | At all times pertinent herein, Chief Michelle Lafont ("Chief Lafont") was and is still the duly elected Chief of Police for the Town of Golden Meadow, Louisiana. (Ex. 1, ¶1; Ex. 2, p. 13) | Admitted. |
| **2** | On July 8, 2025, Chief Lafont was on duty and received a call to handle a complaint called in by Amber Sibley claiming that photos from her online Only Fans account had been screenshotted and posted on Facebook. (Ex. 1, ¶2) | Admitted. |
| **3** | Chief Lafont called Amber Sibley who stated that she and her fiancé, Dylan Rouse, had made an Only Fans webpage which was a subscriber only private account and posted pictures of her in negligees. Amber Sibley further explained that someone who has an Only Fans account screen shotted pictures of her and sent them to Dawn Pierce without Amber Sibley's permission, then Dawn Pierce posted the photos to her Facebook page in retaliation against Amber Sibley and Dylan Rouse because she was mad at them. (Ex. 1, ¶3) | Admitted only that Sibley so stated; disputed to the extent it implies the photos at issue were private. And immaterial: based on her investigation, Chief Lafont testified that she understood the photos were <u>public</u>, not <u>private</u>. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.") |
| **4** | Amber Sibley explained that the Only Fans Account was a private subscriber account, the pictures of Amber Sibley posted by Dawn Pierce were obtained by Dawn Pierce from someone who had an account, the photos depicted Amber Sibley in revealing lingerie, Amber Sibley did not want the photos posted on Facebook, and Amber Sibley had not given Dawn Pierce permission to post any of the photos of Amber Sibley that Dawn Pierce posted on Facebook. (Ex. 1, ¶4) | Admitted only that Sibley so stated; disputed to the extent it implies the photos at issue were private. And immaterial. The statute forbids the sharing of private photos that show genitals or sexual conduct, which they did not. The statute does not criminalize re-posting against the subject's preferences generally. Regardless of what Amber said, Chief Lafont testified that she investigated and understood the photos were <u>public</u>, not <u>private</u>. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.") |

| | | |
|---|---|---|
| **5** | Chief Lafont reviewed the photos that Amber Sibley provided to Chief Lafont that Amber Sibley said had been taken from Amber Sibley's private Only Fans subscriber account and were posted on Facebook by Dawn Pierce without Amber Sibley's permission. Two of the photos of Amber Sibley dressed in a revealing bra and panties appeared to Chief Lafont to be "see through" to the point that portions of Amber Sibley's nipple could be seen in the two photos. The two photos of Amber Sibley wherein Chief Lafont perceived Amber Sibley to be dressed in a revealing bra and panties that appeared to Chief Lafont to be "see through" to the point that portions of Amber Sibley's nipple could be seen in the two photos are attached to Chief Lafont's affidavit as Exhibit "A" and "B." The same two photos were identified as Exhibit G, Exhibit M, Exhibit N and Exhibit ZP in the deposition of Chief Lafont. (Ex. 1, ¶5; Ex. 2; Ex. 3; Ex. 4, p. 24-39, 43-47, 53; Ex. 5; Ex. 6; Ex. 7; Ex. 8) | **Disputed and immaterial.** The photos were not taken from a "private Only Fans subscriber account." They were taken from public areas of Twitter and OnlyFans. And Ms. Sibley told Chief Lafont that. R. Doc. 45-12 at 5 ("Q Setting aside the question of whether there was a previous argument, it's accurate to say that you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct.")<br><br>And Chief Lafont subjectively understood they were public photos. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.")<br><br>Plaintiff also disputes that the lingerie was "see-through" or that there were any nipples visible in the photo. Every other officer who reviewed the photos said that there were no nipples visible. R. Doc. 38-7 (Traigle Dep.) at 25:4-26:1; R. Doc. 38-9 (Gaspard Dep.) at 21:20-24:12; R. Doc. 38-8 (Kreamer Dep.) at 30:5-32:19; R. Doc. 47-2 (DA Screening Action Form).<br><br>But ultimately, it is immaterial what Chief Lafont says she "perceived" – because the the Fourth Amendment claim is based on an objective standard. *Whren v. United States*, 517 U.S. 806 (1996). So even if Chief Lafont somehow "perceived" nipples that do not exist, that does not impact the legal analysis. |
| **6** | During the investigation, Chief Lafont was unsure of whether posting these photos, which depicted Amber Sibley dressed in a revealing bra and panties that appeared to Chief Lafont to be see through and | Admitted that Chief Lafont expressed that she was unsure whether Plaintiff's conduct violated any law. Admitted that she contacted Lt. Traigle, and that Lt. Traigle sent her the law. |

| | | |
|---|---|---|
| | that portions of Amber Sibley's nipple could be seen, that were reported by Amber Sibley to be obtained from Amber Sibley's subscriber account and given to Dawn Pierce without Amber Sibley's permission and posted to Facebook by Dawn Pierce without Amber Sibley's permission had violated any Louisiana laws. Therefore, Chief Lafont contacted Lt. Ray Traigle of the Lafourche Parish Sheriff's Office and explained the situation. Lt. Traigle advised Chief Lafont of and sent Chief Lafont a copy of Louisiana R.S. 14:283.2 via email. (Ex. 1, ¶6) | |
| **7** | Chief Lafont reviewed the statute and determined that based upon Chief Lafont's discussions with Amber Sibley and Chief Lafont's review of the photographs from Amber Sibley's subscriber account posted by Dawn Pierce without Amber Sibley's permission, that there was sufficient probable cause to believe that Dawn Pierce had violated La. R.S. 14:283.2 because Dawn Pierce, without permission from Amber Sibley, posted photos of Amber Sibley that Amber Sibley told Chief Lafont were available only on a private subscriber account, to Facebook that depicted Amber Sibley in lingerie that appeared to Chief Lafont to be see through to the point that Chief Lafont could see Amber Sibley's exposed nipple in two of the photos. (Ex. 1, ¶7) | **Disputed** that Sibley told Lafont that all the pictures were from a private subscriber account. According to Lafont, Sibley told her that some were private and some were public. R. Doc. 45-6 at 25 ("Q Okay. So Amber told you that some of these photos were private and some were public? A She said that some of them were under her subscribe page and some of them were not.")<br><br>And regardless of what Amber said, Chief Lafont testified that she investigated and understood the relevant photos were <u>public</u>, not <u>private</u>. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.")<br><br>And whether Lafont *thought* she could see through the lingerie to see nipples is irrelevant. A Fourth Amendment claim is based on an objective standard. *Whren v. United States*, 517 U.S. 806 (1996). So the relevant legal question is whether nipples were actually visible – not what Lafont subjectively imagined. |
| **8** | As a result, Chief Lafont drafted an Affidavit For Arrest Warrant in the Lafourche Parish online warrant system. The application was reviewed and approved by Judge Rebecca Robichaux of the 17th Judicial District Court for the Parish of Lafourche, | It is admitted that Judge Robichaux issued an arrest warrant based on Chief Lafont's false statements. |

| | | |
|---|---|---|
| | State of Louisiana, who determined that there was probable cause for the arrest of Dawn Pierce for violation of La. R.S. 14:283.2 and thereby issued a warrant for Dawn Pierce's arrest dated July 8, 2025. (Ex. 1, ¶8; Ex. 2; Ex. 3; Ex. 4, p. 86-97; Ex. 5; Ex. 6; Ex. 7; Ex. 8; and Ex. 9- warrant) | |
| **9** | Chief Lafont advised Golden Meadow Police Officer Tristin Gaspard, who was working the evening patrol shift in Golden Meadow on July 8, 2025, that an arrest warrant had been issued for Dawn Pierce, who resided in Lafourche Parish, and asked that he notify the Lafourche Parish Sheriff's Office of the warrant and ask if they would go to Dawn Pierce's residence to arrest her. (Ex. 1, ¶9) | Admitted. |
| **10** | Chief Lafont was notified later that evening that Officer Gaspard and Sgt. Michael Kraemer of the Lafourche Parish Sheriff's Office went to Dawn Pierce's residence where Dawn Pierce was arrested by Sgt. Kreamer pursuant the arrest warrant issued by Judge Robichaux. (Ex. 1, ¶10) | Admitted. |
| **11** | On July 8, 2025, Chief Lafont applied for the arrest warrant for Dawn Pierce to be arrested for violation of La. R.S. 14:283.2, because Chief Lafont believed at that time, based upon Chief Lafont's investigation, the information obtained from Amber Sibley and known to Chief Lafont at the time, and based upon Chief Lafont's perception of the images of Amber Sibley depicted in the photos showing Amber Sibley's nipple, that there was probable cause to arrest Dawn Pierce for violation of La. R.S. 14:283.2. (Ex. 1, ¶11; Ex. 2; Ex. 3; Ex. 4, p. 86-97; Ex. 5; Ex. 6; Ex. 7; Ex. 8; and Ex. 9) | Admitted that Chief Lafont applied for the arrest warrant on that date.<br>It is denied that Chief Lafont had a "perception" of nipples that did not exist in the photos.<br><br>In any case, whether Lafont thought she could see through the lingerie to see nipples is irrelevant. A Fourth Amendment claim is based on an objective standard. *Whren v. United States*, 517 U.S. 806 (1996). So the relevant legal question is whether nipples were actually visible – not what Lafont subjectively imagined. |
| **12** | Chief Lafont's belief that there was sufficient probable cause was based on the information known to Chief Lafont from her investigation which revealed that Amber Sibley told Chief Lafont that Dawn Pierce obtained photos of Amber Sibley without Amber Sibley's permission; that Amber Sibley told Chief Lafont that the photos were private photos only available from her Only Fans subscriber | **Disputed and immaterial.** The photos were not taken from a "private Only Fans subscriber account." They were taken from public areas of Twitter and OnlyFans. And Ms. Sibley told Chief Lafont that. R. Doc. 45-12 at 5 ("Q Setting aside the question of whether there was a previous argument, it's accurate to say that you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans |

| | | |
|---|---|---|
| | account; that Amber Sibley told Chief Lafont that Dawn Pierce posted these photos on Facebook without Amber Sibley's permission; that Amber Sibley asked Dawn Pierce to take the photos off of Facebook and Dawn Pierce refused; that the photos posted on Facebook of Amber Sibley by Dawn Pierce without Amber Sibley's permission depicted her in lingerie and in two of the photos, it appeared to Chief Lafont that the lingerie was see through and Amber Sibley's nipple could be seen in two of the photos posted by Dawn Pierce on Facebook without Amber Sibley's permission. Therefore, Chief Lafont believed at the time based on the information known to Chief Lafont and her perception of the two photos depicting Amber Sibley's nipple that there was sufficient probable cause to apply for an arrest warrant for the arrest of Dawn Pierce for violation of La. R.S. 14:283.2. (Ex. 1, ¶12; Ex. 2; Ex. 3; Ex. 4, p. 86-97; Ex. 5; Ex. 6; Ex. 7; Ex. 8; and Ex. 9) | lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct.")<br><br>And Chief Lafont subjectively understood they were public photos. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.")<br><br>It is denied that Chief Lafont had a "perception" of nipples that did not exist in the photos.<br><br>In any case, whether Lafont thought she could see through the lingerie to see nipples is irrelevant. A Fourth Amendment claim is based on an objective standard. *Whren v. United States*, 517 U.S. 806 (1996). So the relevant legal question is whether nipples were actually visible – not what Lafont subjectively imagined. |
| **13** | Amber Sibley never told Chief Lafont that any of these photos, especially the two photos that Chief Lafont perceived to show Amber Sibley's nipple were available anywhere else to the public on the internet or on any website where the photos might be viewed without a subscriber account to persons over the age of 18. Amber Sibley never told Chief Lafont that these photos including the two photos that Chief Lafont perceived to show Amber Sibley's nipple were available to persons over the age of 18 on "X" or Twitter as suggested by Plaintiff's Counsel. (Ex. 1, ¶13; Ex. 6, p. 60, l. 5-25; and p. 61, l. 1-10; p. 64:19-25) | **Disputed.** Ms. Sibley told Chief Lafont that the photos were public. R. Doc. 45-12 at 5 ("Q Setting aside the question of whether there was a previous argument, it's accurate to say that you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct.") |
| **14** | When Chief Lafont drafted the application and affidavit submitted for the Arrest Warrant, Chief Lafont did not intentionally choose to exclude information or intentionally include any information that was meant to deceive Judge Robicheaux or to | Immaterial: the *Franks* standard addresses falsehoods and material omissions, and can cover reckless misstatements. It does not turn on subjective, intentional deceit. *Franks v. Delaware*, 438 U.S. 154 (1978). |

| | | |
|---|---|---|
| | falsely create probable cause where there was no probable cause. (Ex. 1, ¶14) | A warrant will also not shield an officer from a suit where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). |
| **15** | When Chief Lafont drafted the application and affidavit submitted for the Arrest Warrant, Chief Lafont acted at all times in good faith and included the information that Chief Lafont believed was relevant to the issue of probable cause developed through Chief Lafont's investigation and included information that Chief Lafont perceived to be accurate and correct to the best of her personal knowledge and based on her investigation of the complaint and information received from Amber Sibley. Chief Lafont believed that Amber Sibley was telling the truth and found no reason at that time to disbelieve the information that she provided. (Ex. 1, ¶15) | **Disputed.** Chief Lafont's good faith is absolutely disputed.<br><br>She arrested Ms. Pierce for something the Chief wasn't even sure was a crime. R. Doc. 38-5 at 70:12-15 ("Q Right. So at that point you weren't even sure if what Dawn was accused of was even a crime. Correct? A Correct.")<br><br>She arrested Ms. Pierce under a private revenge porn statute for photos that Chief Lafont understood were <u>public advertisements</u> for Ms. Sibley's business. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.")<br><br>The Chief told a judge that Dawn had shared "private images of Amber in see through underwear," even though that was false. *Id.* at 27:22-24 ("Q Okay. Because this is not a fully transparent underwear. Correct? A Correct.")<br><br>And Chief Lafont may have believed that Amber Sibley was telling the truth – but Amber told Chief Lafont that the photos were public. R. Doc. 45-12 at 5. |
| **16** | At the time that Chief Lafont received the complaint from Amber Sibley on July 8, 2025, Chief Lafont did not know Dawn Pierce; Chief Lafont had no prior knowledge of or contact with Dawn Pierce; and Chief Lafont did not apply for the arrest warrant or seek to have Dawn Pierce arrested for any malicious | Admitted that the two did not know each other or have prior contact.<br><br>**Disputed** that Chief Lafont's intent was innocent. A reasonable jury could conclude that given Chief Lafont's falsehoods and choice to arrest Dawn over nipples that did not exist in the photos, Chief Lafont |

| | | |
|---|---|---|
| | reason or to intentionally cause her any harm as alleged. (Ex. 1, ¶16) | was acting intentionally to get Dylan and Amber to stop calling her. |
| **17** | During Chief Lafont's deposition that was held via Zoom teleconference and not in person, Plaintiff's Counsel showed Chief Lafont a number of images of Amber Sibley, including several different copies of the two photographs of Amber Sibley that Chief Lafont had identified as the photos of Amber Sibley that Chief Lafont believed revealed her nipple that served as the basis of Chief Lafont's decision to apply for and obtain the arrest warrant for Dawn Pierce. During the deposition, some of the various photos shown to Chief Lafont were not clearly visible at times and Plaintiff's Counsel wanted to know if at that time during the deposition whether Chief Lafont could see Amber Sibley's nipples. There were times during the deposition where the image shown to Chief Lafont on the laptop screen was not clearly visible or did not appear as it did to Chief Lafont on July 8, 2025, and at times during the deposition Chief Lafont could not see the exposed nipple in the photos as Chief Lafont had seen and perceived them on July 8, 2025 when Chief Lafont viewed actual printed out copies of the photos that Chief Lafont believed depicted Amber Sibley's exposed nipple and served the basis of Chief Lafont's belief that there was probable cause and Chief Lafont's decision to apply for the warrant. (Ex. 1, ¶17; Ex. 4, p. 24-47; Ex. 5; Ex. 6; Ex. 7; Ex. 8) | Admitted that the images were shown in a Zoom deposition.<br><br>**Disputed** that the photos were not clearly visible. When Chief Lafont expressed that the photos were hard to see, plaintiff's counsel zoomed in until Chief Lafont said she could see the nipples (that no one else can see). *E.g.*, R. Doc. 38-5 at 25:2-13 ("A It's hard to see on the screen, but I believe that was one of the pictures that I used to get my warrant. Q Sure. So I can zoom in as needed. So, do you see -- we can just take it one by one. So do you see any genitals in this photo? A Um, you -- yeah. Sort of. It's covered somewhat, but it's still the -- the material is clear to see through. Q So you can see Ms. Sibley's genitals in these photos? A I can see nipples.") |
| **18** | Chief Lafont conducted the entire investigation of Amber Sibley's complaint on July 8, 2025 by herself and Chief Lafont's decision to apply for and obtain the arrest warrant for Dawn Pierce was based upon Chief Lafont's investigation; Chief Lafont's review of the statute; Chief Lafont's good faith belief that the information provided to her by Amber Sibley was true, correct and complete; Chief Lafont's perception of the photos depicted in Exhibits A & B to her affidavit on July 8, 2025 and Chief Lafont's belief that Amber Sibley's nipple could be seen in the two photos; and Chief Lafont's good faith perception and belief that there was probable cause | Admitted that Chief Lafont conducted the investigation herself.<br><br>Chief Lafont may have believed that Amber Sibley was telling the truth – but Amber told Chief Lafont that the photos were public. R. Doc. 45-12 at 5.<br><br>**Disputed** that there was any basis for a good faith belief that there was probable cause. Chief Lafont admitted that the statute would only apply to private images. R. Doc. 38-5 at 20. And she also admitted that the images were public advertisements. R. Doc. 38-5 at 57:10-19 |

| | | |
|---|---|---|
| | for the arrest of Dawn Pierce for violation of La. R.S. 14:283.2. (Ex. 1, ¶18; Ex. 2; Ex. 3; Ex. 4, p. 86-97; Ex. 5; Ex. 6; Ex. 7; Ex. 8; and Ex. 9) | And whether Lafont thought she could see through the lingerie to see nipples is irrelevant. A Fourth Amendment claim is based on an objective standard. *Whren v. United States*, 517 U.S. 806 (1996). So the relevant legal question is whether nipples were actually visible – not what Lafont subjectively imagined. |
| **19** | Amber Sibley agrees that one of the photos posted to Facebook by Dawn Pierce without Amber Sibley's permission, the photo of her with her hands over her head, Exhibit N to her deposition, shows her nipples and she circled them when asked to do so by Plaintiff's Counsel. (Ex. 10, p. 19, 15-19, p.20, l. 12-24; Ex. 12) | Admitted that Ms. Sibley testified to that. |
| **20** | Amber Sibley testified that she remembers Ex. N to her deposition being part of the OnlyFans subscription content and does not recall posting this photo on Twitter because her nipples were showing. She further testified that she would not have made this photo public since she felt her nipples were showing but she is not 100% sure. She does not recall if this one was on Twitter. (Ex. 10, p. 55-56, Ex. 12) | Admitted that she testified that. But Ms. Sibley also told Chief Lafont that the photos were public. R. Doc. 45-12 at 5 ("Q Setting aside the question of whether there was a previous argument, it's accurate to say that you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct.") |
| **21** | Amber Sibley thinks she told Chief Lafont the pictures were on and came from OnlyFans, that people had to pay to see them; OnlyFans was a subscription website; she never gave permission to Dawn Pierce to post any of her photos; Amber Sibley was not even thinking of Twitter when she spoke to Chief Lafont. (Ex. 10, p. 60-61; Ex. 11; Ex. 12) | Admitted that she testified to that, but immaterial. Some photos were behind a paywall, but Chief Lafont conceded that the ones that were the basis for the arrest were public. R. Doc. 38-5 at 57:10-19. ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.") |
| **22** | Amber Sibley does not believe she mentioned to Chief Lafont that the photos were available on Twitter 18 and over and only mentioned OnlyFans. (Ex. 10, p. 64, l. 19-25) | Admitted that she testified to that. But also Ms. Sibley told Chief Lafont that the photos were public. R. Doc. 45-12 at 5 ("Q Setting aside the question of whether there was a previous argument, it's accurate to say that you and Dylan had a problem with Dawn |

| | | |
|---|---|---|
| | | taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct.") |
| **23** | Dawn Pierce doesn't know Chief Lafont personally and never has; has never had any contact with Chief Lafont, never had any problems with Chief Lafont and has not seen or spoken to Chief Lafont prior to July 8, 2025. (Ex. 13, p. 17-18) | Admitted. |
| **24** | Amber Sibley did not give Dawn Pierce permission to post any of the photos. (Ex. 13, p. 25) | Admitted, but not material: this is not an intellectual property case. |
| **25** | When Dawn Pierce went to Court on August 7, 2025 after her arrest, the District Attorney dismissed the charges but did not tell her why. (Ex. 13, p. 40-41) | Admitted. |
| **26** | Dawn Pierce is self employed and helps her husband run their billboard business since 2011. (Ex. 13, p. 10) Dawn Pierce was also employed part time at the time of her arrest by Working Solutions. She believed they might do a background check on her work anniversary, therefore she quit. However, Working Solutions never told her that she could not work there due to her arrest record and no other company or potential employer has told her she could not work because of her record. (Ex. 13, p. 12-13) | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |
| **27** | Dawn Pierce did not have Amber Sibley's permission to post any of the photos of Amber Sibley. (Ex. 13, p. 25) | Admitted, but not material: this is not an intellectual property case. |
| **28** | On July 8, 2025, Dawn Pierce was notified by Dylan Rouse that the police were coming to arrest her. She was in her driveway washing a pot when the officers showed up to arrest her. The officers told Dawn they had a warrant to arrest her. The officers were respectful and did not injure her in any way. Officer Gaspard placed her in his car and brought her to the police station. Dawn Pierce does not remember any conversations with Officer Gaspard other than him | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |

| | | |
|---|---|---|
| | going to the door to let her husband know what was happening. (Ex. 13, p. 31-36) | |
| **29** | Dawn Pierce's sons were not outside during her arrest and she did not see anyone else outside in the neighborhood as she was taken away. (Ex. 13. P. 35-36) | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |
| **30** | Dawn Pierce was taken to the Lafourche Parish Sheriff's Office substation in Cutoff to be booked. She was handcuffed to a bench until the officer came to take her finger prints, take her picture and fill out paperwork. She was never placed in a cell and was released after about two hours after her husband secured her release through a bail bondsman. Nothing sticks out in her mind about the time at the substation or how she was treated and no trauma occurred. She was released to her husband and went home. While at the lockup it was not physically traumatic and she was not physically traumatized. (Ex. 13, p. 36-38, 48) | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |
| **31** | Dawn Pierce had no further contact with anyone from Golden Meadow at the Sheriff's substation or when she got home after being released. The District Attorney dismissed the charges on August 7, 2025, she believes but did not tell her why. (Ex. 13, p. 39-41) | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |
| **32** | Dawn Pierce has never been told by a doctor that her A1C levels were caused by her arrest. (Ex. 13, p. 45-46) | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |
| **33** | The body camera footage from the camera worn by Officer Gaspard during Dawn Pierce's arrest establishes that Dawn Pierce was arrested by Sgt. Michael Kraemer of the Lafourche Parish Sheriff's Office on July 8, 2025 and that Dawn Pierce was not harmed or injured in any way and speaks for itself. (Ex. 14) | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |
| **34** | The camera footage from the dash camera from Officer Gaspard's police unit on July 8, 2025 | Admitted, but these facts do not appear to be relevant to any of the arguments in Defendants' motion. |

| | | |
|---|---|---|
| | confirms that no one came outside in the neighborhood during the arrest and speaks for itself. (Ex. 15) | |

| | **Plaintiff's Material Facts** | **Defendants' Response** |
|---|---|---|
| **1** | Chief Lafont understood the photos were public advertisements, not private photos.[1] | |
| **2** | Amber Sibley told Chief Lafont the photos were public.[2] | |
| **3** | The photos do not show any of the statutorily-required body parts or sexual conduct.[3] | |

Respectfully submitted,

*/s/ William Most*
HOPE PHELPS (La. Bar No. 37259)
WILLIAM MOST (La. Bar No. 36914)

[1] R. Doc. 38-5 (Dep. of Lafont) at 57:10-19 ("you understood that she was posting these lingerie photos in public to sort of advertise and invite people to subscribe to her nude content. Correct? . . . Yes, sir."); 56:9-15 ("Q Okay. So these are public posts by Amber Sibley. Correct? . . . As far as I can tell, yes.")

[2] R. Doc. 45-12 at 5 ("you and Dylan had a problem with Dawn taking your public Twitter and OnlyFans lingerie photos and putting them on Facebook, correct? . . . THE WITNESS: Absolutely. BY MR. MOST: Q And that's what you told the police chief of Golden Meadow, correct? A Correct."); *see also id.* at 33:15-34:18 ("Q If you flip through that police report, all these photos that you see in there were on the public, plus section of Twitter, correct? A Yes, sir.")

[3] Lt. Traigle of LPSO (the officer who Chief Lafont consulted) reviewed the images at deposition and testified that he would not "be comfortable" with one of his deputies executing an arrest based on those photos, because it "might be a false arrest" given the lack of the required body parts. R. Doc. 38-7 at 33:7-34:7. Same with Sgt. Tristin Gaspard, the GMPD officer who Chief Lafont directed to have Dawn arrested. At deposition, he reviewed the photos and did not see any intimate parts or sexual conduct as defined in that statute. R. Doc. 38-9 at 21:20-24:12. He testified that he would not have been able to arrest someone based on those photos. *Id.* at 25:24-26. And the same with Sgt. Kreamer, the LPSO officer who helped the arrest. At deposition, he reviewed the photos for the first time and did not see any intimate parts or sexual conduct as defined in that statute. R. Doc. 38-8 at 30:5-32:19. He testified he would not have been able to arrest anyone based on those photos. *Id.* at 30:15-24; 35:25-36:10. The district attorney's office agreed: their screening memorandum concluded that "these pictures do not show 'fully unclothed, partially unclothed, or transparently clothed genitals, pubic area, or anus.' Also the nipples are not partially or fully exposed and cannot be seen thru transparent clothing." R. Doc. 47-2.

Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com
*Counsel for Plaintiff, Dawn Pierce*